1  Michael C. Manning (#016255)
   Leslie E. O'Hara (#005923)
2  M. Elizabeth Nillen (#023862)
   Stefan M. Palys (#024752)
3  **STINSON MORRISON HECKER** LLP
   1850 North Central Avenue, Suite 2100
4  Phoenix, Arizona 85004-4584
   Tel: (602) 279-1600
5  Fax: (602) 240-6925
   Email:  mmanning@stinson.com
6  Attorneys for Plaintiffs

7

8                    **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF ARIZONA**

10
    GARY DONAHOE and              )    No.  10-CV-2756-PHX-JWS
11  CHERIE DONAHOE, husband and   )
    wife,                          )
12                                 )    **FIRST AMENDED COMPLAINT**
                  Plaintiffs,      )
13                                 )
    v.                             )    (Jury Trial Requested)
14                                 )
    SHERIFF JOSEPH ARPAIO and      )
15  AVA ARPAIO, husband and wife;  )
    ANDREW THOMAS and ANNE         )
16  THOMAS, husband and wife, LISA )
    AUBUCHON and PETER R.          )
17  PESTALOZZI, wife and husband,  )
    DEPUTY CHIEF DAVID             )
18  HENDERSHOTT and ANNA           )
    HENDERSHOTT, husband and wife, )
19  WILLIAM MONTGOMERY only in     )
    his official capacity as MARICOPA )
20  COUNTY ATTORNEY, MARICOPA      )
    COUNTY, a municipal entity; and )
21  JOHN DOES I-X; JANE DOES I-X;  )
    BLACK CORPORATIONS I-V; and    )
22  WHITE PARTNERSHIPS, I-V,       )
                                   )
23                Defendants.      )
                                   )
24  _____  )

25

26

1

# TABLE OF CONTENTS

2

JURISDICTIONAL ALLEGATIONS ..............................................................................3

FACTUAL BASIS FOR CLAIMS FOR RELIEF ........................................................8

    Judge Donahoe's Background ..................................................................................8

    The Genesis of the Attack On Judge Donahoe Was Thomas and Arpaio's Feud
    with the Board ......................................................................................................8

    The RICO Complaint .............................................................................................15

    The Criminal Complaint.........................................................................................16

    Thomas, Aubuchon, Arpaio, and Hendershott's Scheme Unwinds as Various
    Entities Reject Their Claims..................................................................................18

    Sheriff Arpaio's Additional Motives for Assaulting Judge Donahoe Without
    Probable Cause ..................................................................................................20

    MCAO's Independent Personnel Investigation of Aubuchon...................................22

    Unfounded Complaint Filed With The Commission on Judicial Conduct .................25

    Independent Federal and State Prosecutors Find The Thomas/Arpaio Court
    Tower - Public Corruption Investigations "Nearly Incomprehensible".....................26

    Thomas Continued His Defamatory Assault After Leaving Office ...........................27

    Aubuchon Continued Her Defamatory Conduct After Leaving MCAO ....................29

    Other Defamatory Conduct (In Official Capacity).....................................................30

    Arpaio, Aubuchon, Thomas, and Hendershott Have a Pattern, Custom, and
    Practice of Misusing Their Power by Investigating, Arresting, and Prosecuting
    Individuals Without Probable Cause for Improper and Unlawful Selfish
    Purposes, Including Political and Financial Gain .......................................................31

    Judge Donahoe and His Wife Have Suffered Damages as a Result
    of This Assault on His Reputation ...........................................................................34

COUNT I .......................................................................................................................34

    Violations of 42 U.S.C. § 1983:  Free Speech and Free Press, Law
    Enforcement Retaliatory Conduct, Abuse of Process, Malicious Prosecution,
    Defamation, and Abuse of Power (All Defendants) ..................................................34

COUNT II.......................................................................................................................36

    Violations of 42 U.S.C. § 1983:  Unconstitutional Policies, Customs, and
    Failure to Train (All Defendants)..............................................................................36

COUNT III .....................................................................................................................39

    Violation of 42 U.S.C. § 1983—Substantive Due Process (All Defendants).............39

COUNT IV .....................................................................................................................41

    Violation of 42 U.S.C. § 1983—Equal Protection (All Defendants)..........................41

COUNT V ......................................................................................................................43

Violations of Arizona Law: Abuse of Process and Malicious Prosecution (All Defendants).................................................................................43

COUNT VI ................................................................................................44

Violation of Arizona Law: Intentional Infliction of Emotional Distress (All Defendants).................................................................................44

COUNT VII ...............................................................................................45

Defamation, Libel, and/or False Light Invasion of Privacy (Arpaio, Hendershott, Thomas, and Aubuchon).............................................45

COUNT VIII ..............................................................................................46

Racketeering Violations under 18 U.S.C. § 1961, *et seq.* & A.R.S. § 13- 2301, *et seq.* (Thomas, Aubuchon, Arpaio, and Hendershott) ................46

COUNT IX .................................................................................................51

Negligence (All Defendants) ......................................................................51

COUNT X ..................................................................................................52

Gross Negligence (All Defendants) ............................................................52

COUNT XI .................................................................................................53

Intrusion of Seclusion/Invasion of Privacy (All Defendants) ...................53

COUNT XII ................................................................................................54

Conspiracy—(Arpaio, Aubuchon, Hendershott, and Thomas) ................54

JURY TRIAL .............................................................................................55

PRAYER FOR RELIEF .............................................................................55

Plaintiffs Gary Donahoe and Cherie Donahoe, for their Complaint against Defendants, hereby allege as follows:

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiffs have satisfied all the provisions of A.R.S. § 12-821.01 by timely serving a Notice of Claim more than sixty (60) days prior to the date of the filing of this Complaint.  Defendants denied the Notice of Claim by failing to respond.

2.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 1964, the United States Constitution, the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and other pendent statutory and state common laws.

3.      This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all of the parties are residents of Maricopa County, Arizona, and the events underlying this lawsuit occurred in Maricopa County.

## GENERAL ALLEGATIONS

5.      At all times material herein, Plaintiffs Gary Donahoe and Cherie Donahoe were a married couple residing in Maricopa County, Arizona (collectively "Plaintiffs," or "Judge Donahoe," or "Cherie" in the singular).

6.      At all times material herein, Defendant Joseph Arpaio ("Arpaio" or "Sheriff Arpaio") was the duly-elected Sheriff of Maricopa County and the head of the Maricopa County Sheriff's Office ("MCSO").

7.      Sheriff Arpaio, as head of the MCSO, has ultimate authority and responsibility for the MCSO and the actions of its officers and agents, and with the

authority and responsibility to establish policy, practices, customs, procedures, protocols, and training for the MCSO as the official and final policymaker for the County.

8.      Arpaio's actions and/or inactions constitute actions of Maricopa County, and the County is vicariously and directly liable for his wrongful conduct, as alleged herein.  Sheriff Arpaio is named in both his official and individual capacities.  As the elected Sheriff, Arpaio has official, vicarious, direct, individual, and/or supervisory liability for the MCSO, the County, and its officers, agents, and employees.

9.      Ava Arpaio is the spouse of Defendant Joe Arpaio and is so designated because the wrongful conduct of Defendant Arpaio was engaged in for the benefit of their marital community, thereby rendering his spouse and marital community liable for such conduct.

10.      With the exception of the times specifically referenced herein, at all times material herein, Defendant Andrew Thomas ("Thomas" or "County Attorney Thomas"), was the duly-elected County Attorney of Maricopa County and the head of the Maricopa County Attorney's Office ("MCAO").

11.      While Thomas was the head of the MCAO, Thomas had the ultimate authority and responsibility for the MCAO and the actions of its officers and agents, and the authority and responsibility to establish policy, practices, customs, procedures, protocols, and training for the MCAO as the official and final policymaker for the County.

12.      Thomas' actions and/or inactions constitute actions of Maricopa County, and the County is vicariously and directly liable for his wrongful conduct, as alleged herein.  County Attorney Thomas is named in both his official and individual capacities.  As the elected County Attorney, Thomas had official, vicarious, direct, individual,

and/or supervisory liability for the MCAO, the County, and its deputy and assistant attorneys, agents, and employees.

13.    Andrew Thomas is also named as a private citizen defendant for conduct he engaged in after he left the MCAO.

14.    Anne Thomas is the spouse of Defendant Andrew Thomas and is so designated because the wrongful conduct of Thomas both before and after he left office was engaged in for the benefit of their marital community, thereby rendering his spouse and marital community liable for such conduct.

15.    With the exception of the times specifically referenced herein, at all times material herein, Defendant Lisa Aubuchon ("Aubuchon" or "Deputy County Attorney Aubuchon") was a Deputy County Attorney of Maricopa County.

16.    Aubuchon's actions and/or inactions constitute actions of Maricopa County, and the County is vicariously and directly liable for her wrongful conduct, as alleged herein.

17.    Deputy County Attorney Aubuchon is named in both her official and individual capacities.

18.    Lisa Aubuchon is also named as a private citizen Defendant for conduct she engaged in after leaving the employ of the MCAO.

19.    Peter R. Pestalozzi is the spouse of Defendant Lisa Aubuchon and is so designated because the wrongful conduct of Defendant Aubuchon, both during and after her employment with the County, was engaged in for the benefit of their marital community, thereby rendering her spouse and marital community liable for such conduct.

20.    At all times material herein, Defendant David Hendershott ("Hendershott" or "Deputy Chief Hendershott") was the Deputy Chief of the MCSO.

21.     As Deputy Chief, Hendershott had the authority and responsibility to establish policy, practices, customs, procedures, protocols, and training for the MCSO as an official policymaker for the County.

22.     Hendershott's actions and/or inactions constitute actions of Maricopa County, and the County is vicariously and directly liable for his wrongful conduct, as alleged herein.

23.     As the Deputy Chief, Hendershott has official, vicarious, direct, individual, and/or supervisory liability for the MCSO, the County, and its officers, agents, and employees.

24.     Deputy County Attorney Hendershott is named in both his official and individual capacities.

25.     Anna Hendershott is the spouse of David Hendershott and is so designated because the wrongful conduct of Hendershott was engaged in for the benefit of their marital community, thereby rendering his spouse and marital community liable for such conduct.

26.     As used herein, the term " AATH Defendants" refers collectively to Arpaio, Aubuchon, Thomas, and Hendershott.

27.     Defendant William Montgomery ("Montgomery" or "County Attorney Montgomery") is the current head of the MCAO and is named as such as the proper representative of the MCAO, which is vicariously liable for the acts described herein.

28.     Montgomery took office on November 22, 2010, succeeding interim County Attorney Richard Romley who was appointed when Thomas resigned as County Attorney.  County Attorney Montgomery is named only in his official capacity.

29.     Montgomery is named as he is the current head of the MCAO.

30.     Defendant Maricopa County (the "County") is a public entity, formed and designated as such pursuant to Title 11, of the Arizona Revised Statutes, and (as such) it and its officers and divisions are subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its divisions, agents, officers, and employees, including (*inter alia*), Sheriff Joseph Arpaio, former County Attorney Andrew Thomas, former Deputy County Attorney Lisa Aubuchon, and Deputy Chief David Hendershott.

31.     At all times material herein, Defendants John Does I-X and Jane Does I-X (collectively "John Does") were officers, agents, and employees of Sheriff Arpaio, Thomas, and/or Maricopa County, acting within the scope of their employment and under color of law.   These defendants engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of Judge Donahoe's rights.   Their actions and/or inactions constitute actions of Sheriff Arpaio, Thomas, and/or Maricopa County.   Sheriff Arpaio, MCSO, Thomas, MCAO, and/or Maricopa County are vicariously and directly liable for their wrongful conduct.

32.     The true names, capacities, and relationships, whether individual, corporate, partnership, or otherwise of all John and Jane Doe Defendants, Black Corporations, and White Partnerships are unknown at the time of the filing of this Complaint, and are being designated pursuant to applicable law.   Plaintiffs further allege that all of the fictitiously named defendants were jointly responsible for the actions, events, and circumstances underlying this lawsuit, and that they proximately caused the damages stated in this Complaint.   Plaintiffs will amend the Complaint to name the unidentified individuals once they have identified, through discovery, the identities and acts, omissions, roles, and/or responsibilities of such defendants sufficient for Plaintiffs to discover the claims against them.

## FACTUAL BASIS FOR CLAIMS FOR RELIEF
### Judge Donahoe's Background

33.     At the time of the events complained of herein, Judge Donahoe served as Presiding Criminal Judge of the Maricopa County Superior Court.

34.     In 1989, Judge Donahoe was appointed a Commissioner of the Maricopa County Superior Court and served in both the civil and probate/mental health departments before becoming the Presiding Commissioner from 1992 to 1995.

35.     In 2000, Judge Donahoe was appointed a Judge of the Superior Court, where he has handled civil, probate, mental health, family court, criminal calendars, and a special assignment criminal calendar to assist with capital cases.

36.     Over the course of his more than 20-year career on the bench, Judge Donahoe earned and enjoyed an excellent reputation as a fair and impartial jurist, and a man of the utmost integrity—qualities for which he has been recognized by his peers and those who practice before him.

37.     For example, The Phoenix Chapter of the American Board of Trial Advocates named him "Judge of the Year" in 2004; the State Bar of Arizona gave him its "Award of Special Merit" in 2007; and the Public Lawyers' Section of the State Bar of Arizona awarded him their 2008 "Judicial Award of Excellence."

38.     Judge Donahoe's abilities and reputation earned him the appointment as the Presiding Criminal Judge for the Maricopa County Superior Court in 2009.

### The Genesis of the Attack On Judge Donahoe
### Was Thomas and Arpaio's Feud with the Board

39.     Donahoe became a victim of attacks by Thomas and Arpaio as an offshoot of Thomas and Arpaio's years-long feud with the Maricopa County Board of Supervisors ("BOS" or "Board").

40.     According to the investigatory report dated November 23, 2010, authored by John Gleason, the independent investigator appointed by the State Bar of Arizona to investigate Thomas and Aubuchon (the "Gleason Report"), Thomas and Arpaio's feud with the Board began as early as March 2006.

41.     Thomas and Arpaio's feud stems from the anti-immigration policies of then-County Attorney Thomas and Arpaio; budgetary constraints imposed by the Board on those offices, and fights over whether the MCAO was entitled to control certain litigation.

42.     These disagreements collided to create a perfect storm of antipathy and contention between and among these officials, which ultimately resulted in Thomas and Arpaio taking retaliatory actions against the Board, its employees, and other political opponents.

43.     In January 2007, Thomas and Arpaio jointly formed an enterprise known as the Maricopa Anti-Corruption Effort ("MACE") unit, comprised of employees of the MCSO and MCAO.

44.     The MACE unit's announced purpose was to fight government corruption.

45.     In fact, Thomas and Arpaio formed an association known as the MACE unit for the common purpose of engaging in a course of conduct to fight their political opponents and further the personal and political goals of the AATH Defendants through any means necessary.

46.     Arpaio participated in the MACE unit as the head of its investigatory operations on behalf of the MCSO.

47.     Thomas participated in the MACE unit as the head of its legal operations on behalf of the MCAO.

48.     Hendershott participated in the MACE unit as Arpaio's second-in-command concerning the MACE unit's investigatory operations on behalf of the MCSO.

49.     Aubuchon participated in the MACE unit as Thomas' second-in-command concerning the MACE unit's legal operations on behalf of the MCAO.

50.     Upon information and belief, it appears that Thomas and Hendershott hand-picked Aubuchon because of her known poor judgment and over-zealous prosecutorial style.

51.     The AATH Defendants controlled the MACE unit.

52.     The AATH Defendants repeatedly conspired at meetings of the MACE unit and elsewhere to retaliate against their political foes, as will be further detailed herein.

53.     Among the evidence of the on-going conspiracy to vanquish their political foes is a list of those the MACE unit was investigating at the behest of Arpaio, Hendershott, Thomas, and Aubuchon.

54.     The names on the List coincide with people that the various investigators described herein later determined to be the AATH Defendants' political foes.

55.     The MACE unit's activities continued from its formation in January 2007 to its termination in September 2010.

56.     Thomas and Arpaio came to view Stapley as a political and personal foe based on the disagreements delineated above, which Thomas and Arpaio viewed as a personal and political attack on themselves and their offices.

57.     Among other things, Thomas was angry that Stapley and the Board questioned his hiring of political friends as outside counsel, whose firms Thomas paid hundreds of thousands of dollars in county funds.

58.     Ultimately, the Board did curtail Thomas' ability to hire and pay these outside firms, it also set up a separate civil division, and the Board reduced Thomas' budget to fund the civil division it created.

59.     At around this same time the Board enacted system-wide budget cuts due to the reduced funds resulting from the nation-wide economic crisis.  The cuts included a portion of Arpaio's budget for the MCSO.

60.     Together, Thomas and Arpaio targeted a County project – they urged County management to scrap plans for the long-planned and saved-for downtown Criminal Court Tower ("Court Tower Project").

61.     The Court Tower Project was simply the Trojan Horse for Arpaio and Thomas's assault on their political enemies, *du jour*.  Both Thomas and Arpaio had previously endorsed and helped plan this project!

62.     There was no reason for the Defendants to start an investigation into the Court Tower Project.

63.     The Court Tower Project had been in the planning stages for 12 years, money had been put aside for its construction over that time, and the Board refused to scrap the project.

64.     These, and the other disagreements above, led Thomas, and his political ally Arpaio, and their right-hand persons Hendershott and Aubuchon, to view Stapley, the Board, and County management as enemies.

65.     In retaliation, the AATH Defendants conspired and resolved to destroy Stapley and their other political foes in January 2007 and at other MACE meetings thereafter, including (but not limited to) meetings on May 9, May 23, June 6, June 13, June 20, and June 27, 2007.

66.     Thomas and Arpaio directed the MACE unit to begin an investigation of Stapley in January 2007.

67.     Hendershott carried out Arpaio and Thomas' orders by directing the MACE unit's investigatory efforts to concoct a case against Stapley, aided by Aubuchon and Thomas' legal advice and investigatory help.

68.     The result was that in November 2008, Aubuchon (at Thomas' and Arpaio's direction) had Stapley indicted on 118 felony counts for alleged disclosure violations in materials he is required to file as an elected official.

69.     It was later concluded that the indictment was nothing but a personal and political attack on Stapley.  In fact, the Gleason Report determined that Thomas and Aubuchon's role in this matter violated a host of Arizona's Rules of Professional Conduct "ER" including ER 4.4, 1.7, 3.3, 8.4, and 3.6.

70.     In another retaliatory move, Thomas and Arpaio, aided by Hendershott and Aubuchon, launched a "criminal investigation" into the Board's approval of the Court Tower.

71.     Thomas issued an astoundingly broad Grand Jury Subpoena Duces Tecum and a Freedom of Information Act request seeking years worth of information about the project from the County for no other purpose than to burden the County and to further the AATH Defendants' personal interests.

72.     The Board and therefore the County had to expend hundreds of thousands of dollars responding to this subpoena and the MACE unit's other investigatory requests.

73.     Thomas sent letters to the members of the Board, individually, with the intent to threaten and intimidate them by claiming that he would prosecute them to

recover funds from them personally if they exercised their right (as a Board) to hire outside counsel to represent their interests.

74.     The Board hired Tom Irvine to represent its interests and he moved to quash the subpoena largely on the grounds that Thomas had conflicts in investigating the Board regarding the Court Tower after he had given it advice on the same topic.

75.     Thomas then announced that Irvine, too, was now part of their "criminal investigation."

76.     The hearing on Irvine's motion to quash the Grand Jury Subpoena was heard by Judge Donahoe, as Presiding Criminal Judge, and in February 2009 Judge Donahoe ruled that Thomas had a conflict in his dealings with the County in that he was now criminally investigating a client (the County and Board) that he had previously given legal advice to on the same topic.

77.     Judge Donahoe disqualified Thomas, quashed the Grand Jury Subpoena, denied Thomas's Motion to Disqualify Irvine, and his motion to assign the matter to an out-of-county judge.

78.     One month later, Judge Donahoe denied Thomas's request that Supervisor Stapley be held in criminal contempt of court for disclosing information relating to a Grand Jury by sharing the Judge's February 2009 ruling (which he learned of through his position as Supervisor) with his criminal defense attorney in the case brought against him by Thomas.

79.     Judge Donahoe declined to hold Supervisor Stapley in contempt, finding that his right to counsel in the criminal matter trumped any secrecy that should be accorded that ruling.

80.     Judge Donahoe also granted the Board's request to allow the ruling regarding Supervisor Stapley to be made public.

81.     In a desperate Motion for Reconsideration, Thomas alleged, for the first time, that a conflict existed that required Judge Donahoe to disqualify himself: he claimed that the Board's lawyers, Tom Irvine and Ed Novak, also represented the Superior Court in matters involving the Court Tower and that Judge Donahoe should have disclosed that conflict and disqualified himself.

82.     Judge Donahoe rightly denied the Motion for a number of reasons: as an employee of the State, he had no conflict with the County's project; he did not know, before the Motion for Reconsideration, that Mr. Irvine and Mr. Novak had any involvement with the Court Tower; he knew that Mr. Irvine did not represent him or his employer in the Court Tower matter; he had and has no interest in or involvement with the Court Tower project and played no role in its design, construction, or funding, nor had he ever discussed any aspect of the project with Mr. Irvine or Mr. Novak outside any court hearing.

83.     Thomas challenged Judge Donahoe's ruling at the Court of Appeals and later before the Supreme Court.  Both courts summarily declined to review the ruling.

84.     Judge Donahoe's rulings enraged the Defendants, and thus Judge Donahoe then became a personal and political foe.

85.     The AATH Defendants concluded amongst themselves that Judge Donahoe's rulings showed that he, too, must be conspiring with the Board and their other political foes to reign in the AATH Defendants' political power and reduce their funding.

86.     Having been disqualified, Thomas then sought to have appointed two Washington D.C. lawyers as Special Deputy County Attorneys for Maricopa County to pursue the Court Tower investigation against the Board.

87.     The Board objected, claiming that only it could authorize the appointments and the expenditure of County funds to pay the Special Prosecutors.

88.     Judge Donahoe was to hear this and other related motions the afternoon of December 9, 2009.

**The RICO Complaint**

89.     On December 1, 2009, Thomas and Arpaio, as plaintiffs, brought a federal civil racketeering suit against all members of the Board, Judge Donahoe, three other judges, County managers and private attorneys ("RICO Action").

90.     In a press release issued the day the RICO Action was filed Thomas and Arpaio called Judge Donahoe and the other RICO defendants "corrupt racketeers and criminals" who had swindled the public out of millions of dollars.

91.     These allegations are false, as the AATH Defendants knew at that time.

92.     A press release issued a few days later by Arpaio with the encouragement of Thomas, Aubuchon, and Hendershott echoed the same sentiments and claimed that Judge Donahoe had made a ruling adverse to an MCSO employee purely for political reasons … in other words that Judge Donahoe was dishonest and corrupt because the MCSO claimed his rulings were politically motivated.

93.     That, too, is false, as the AATH Defendants knew at that time.

94.     Though the RICO Action was ineptly drafted and largely incomprehensible, it alleged a broad-based conspiracy on the part of defendants in the RICO Action to illegally block criminal investigations and prosecutions of themselves, particularly with respect to the Court Tower Project and the Supervisor Stapley investigation.

95.     Arpaio alleged he had been corruptly deprived of civil legal services from the County Attorney's Office; Thomas claimed he had been deprived of the ability to practice law.

96.     Thomas and Arpaio did not act alone in filing the RICO Action: MCAO Attorney Aubuchon was integrally involved and was assigned to prosecute it.

97.     Hendershott also assisted in the RICO Action design and preparation.

98.     It was later determined that Arizona prosecutors lack the statutory authority to pursue the RICO Action.

### The Criminal Complaint

99.     Despite the pendency of the RICO Action, Judge Donahoe intended to proceed with a hearing scheduled for December 9, 2009.

100.    Before he could take the bench on December 9, 2009, to conduct a hearing (and likely issue a ruling) regarding Thomas's request to appoint Special Prosecutors (over the Board's objection), and fully anticipating that Judge Donahoe would deny their motion, the AATH Defendants devised a plan to force Judge Donahoe's removal from the case.

101.    The AATH Defendants had previously discussed a plan to file a direct criminal complaint against Judge Donahoe to force his recusal so he could not rule on the pending motion.

102.    In fact, the Gleason Report notes that at a meeting on December 8, 2009, Hendershott said that he had met with Thomas, Aubuchon, and Arpaio, and that it was Arpaio's idea to charge Judge Donahoe criminally.

103.    In furtherance of their conspiracy, members of the MACE unit met and conspired on December 8, 2009, at 3:30 p.m. and again at 5 p.m. to file the baseless direct criminal complaint against Judge Donahoe.

104.   Arpaio and Thomas, as heads of the MACE unit, had previously agreed to pursue the charges and directed the MACE unit to file them.

105.   Accordingly, Aubuchon, with the willing assistance and encouragement of Thomas, Hendershott, and Arpaio, filed and served a direct criminal complaint upon Judge Donahoe, falsely accusing him of three felonies: obstruction of justice, hindering prosecution, and bribery of a public official.

106.   The only "crime" committed by Judge Donahoe was his issuance of a ruling adverse to Arpaio and Thomas.

107.   This brazen and baseless assault on a sitting judge did for Thomas and Aubuchon what they had repeatedly been unable to previously do though other means, including some lawful, legitimate, and ethical processes: cause Judge Donahoe to recuse himself from taking any further action in the matter before him.

108.   The criminal complaint also provided a means for the AATH Defendants to exact revenge against Judge Donahoe for his adverse rulings.

109.   MCAO's press releases issued on the day the Criminal Complaint was filed confirms that the Criminal Complaint was filed to stop the hearing scheduled for that afternoon.

110.   In that press release, Arpaio and Thomas proclaimed to the public that Judge Donahoe was a criminal.

111.   In a press conference held later that day, while trying to explain how, under Arizona's bribery laws, the new courthouse project could be considered an inducement to judges, who, like Donahoe, were allegedly hampering his "investigation," Thomas embarrassingly sputtered:  "If I'm not explaining this well, I hope you'll help me."

112.   In truth, the criminal charges were brought only to retaliate against Judge Donahoe for past rulings and to prevent him from issuing rulings that would displease the AATH Defendants.

### Thomas, Aubuchon, Arpaio, and Hendershott's Scheme Unwinds as Various Entities Reject Their Claims

113.   In January of 2010, Thomas and Aubuchon empanelled a grand jury to use as one of their tools of intimidation.  Aubuchon and Hendershott "threw the book" at their political targets, including Judge Donahoe and others.  But, their "case" was, even to these lay grand jurors, muddled, political, and as "incomprehensible" as it was to the independent prosecutors that later reviewed their "case."  On March 3, 2010, at the conclusion of the presentations by Hendershott and Aubuchon, the grand jury rejected their "case" and voted to "end the inquiry."

114.   It is highly unusual for grand jurors to so summarily reject a prosecutor's presentation of evidence and urgings that the grand jurors indict their targets.

115.   The AATH Defendants knew that they had failed to make out a criminal case against Judge Donahoe to these lay grand jurors – even though the AATH Defendants controlled the grand jury and even though their "targets" were unrepresented, defenseless, and not allowed to appear before the grand jury.

116.   The AATH Defendants knew the grand jury's instruction to them to "end the inquiry" meant that their failure to obtain an indictment should have ended their crusade to assault Judge Donahoe and others.

117.   But, of course, the AATH Defendants continued, even after the grand jury voted to terminate their crusade, to publically portray Judge Donahoe as a criminal still under "criminal investigation."

118.   The RICO action was voluntarily dismissed by Thomas and Arpaio on March 11, 2010, after Judge Leonardo dismissed the indictment of Supervisor Wilcox in *State v. Wilcox*, CR-2010-005423-0001.

119.   In that ruling, Judge Leonardo noted that Thomas acted unethically, retaliated against those who disagreed with him, sought political advantage by prosecuting those who oppose him publicly and allied himself with Sheriff Arpaio who "misused the power of his office" by targeting opponents with criminal investigations.

120.   After Judge Leonardo's scathing indictment of the AATH Defendants' conduct in *State v. Wilcox*, Defendants filed a motion to voluntarily dismiss the Criminal Complaint on February 24, 2010, which was granted by the Court on March 11, 2010.  On March 11, 2010, they voluntarily dismissed the RICO action.

121.   The State Bar of Arizona's investigator, John Gleason, later concluded that the RICO Action and the direct complaint were filed in retaliation for Judge Donahoe's exercise of his First Amendment rights.

122.   In his report, Gleason explains that "Thomas and Aubuchon conspired with each other and with others to injure, oppress, threaten, or intimidate Judge Donahoe in the free exercise of his rights to freedom of speech" – ironically resulting in a violation of 18 U.S.C. § 241.

123.   The Gleason Report also found that Thomas and Aubuchon violated Arizona's criminal laws – A.R.S. §§ 13-303 and 13-2701 *et seq.* (relating to perjury) in filing the direct complaint.

124.   The probable cause order issued by the State Bar of Arizona charged that Thomas had committed these and other acts to intimidate and obtain personal political gain.

125.   The MCSO later concluded that the RICO Action was "nothing more than a vehicle to intimidate, retaliate and besmirch the reputations of judges, public officials and attorneys who had previously opposed positions taken by the Maricopa County Attorney's Office."

126.   An independent personnel investigation of Aubuchon, conducted by Katherine Baker, Esq., of Green & Baker, and authorized by Interim County Attorney Richard Romley (the "Baker Report"), likewise concludes that "[t]he Donahoe and RICO cases . . . appear to have been driven by the political needs of County Attorney Thomas and the Sheriff."

127.   The Baker Report also concludes that Thomas "wholly approved" of the decisions Aubuchon made concerning the cases at issue.

## Sheriff Arpaio's Additional Motives for Assaulting Judge Donahoe Without Probable Cause

128.   The Sheriff had other, more personal reasons, for waging war against Judge Donahoe.

129.   Some months before filing civil and criminal charges against Judge Donahoe, a violent sex offender who was in court for a hearing escaped from the Sheriff's custody during a lunch recess.

130.   Soon after the escape, the Sheriff allegedly implemented new security procedures, but failed to provide adequate staff to carry out these procedures in a timely fashion.

131.   The upshot was that criminal defendants in the Sheriff's custody were either perpetually being brought to court late for various hearings or were not appearing at all.  These delays affected attorneys, judges, jurors, and defendants.

132.   When the judges with criminal calendars complained, they were told there was no one available to bring the defendant to the courtroom.

133.   It fell to Judge Donahoe, as Presiding Criminal Judge, to try to resolve the problem.

134.   Judge Donahoe met repeatedly with MCSO personnel in an attempt to improve the inmate delivery system.

135.   The court administration made significant operational changes: consolidating divisions, reducing courtrooms, and limiting hearings to only certain days – all in an effort to assist the Sheriff in getting inmates to court on time.

136.   Nothing worked.  The MCSO continued to bring them late, if it brought them at all.

137.   The Sheriff has a statutory obligation to "attend all courts" and "obey lawful orders and directions issued by the judge."  A.R.S. § 11-441(A)(4).

138.   The Sheriff previously was directly ordered by Judge Anna Baca, former Criminal Department Presiding Judge, to adhere to the requirements of that statute.

139.   When the Sheriff failed to improve his inmate delivery performance, the criminal judges began issuing Orders to Show Cause why the Sheriff should not be held in contempt for his repeated refusals to bring the inmates to court on time.

140.   As Presiding Criminal Judge, Judge Donahoe held a hearing on the various OSCs and entered a contempt order against MCSO Deputy Chief Trombi (who admitted responsibility for getting inmates to court), along with monetary sanctions, for the repeated failures to deliver inmates to court.

141.   Of course, Arpaio took Judge Donahoe's Order as a personal affront.

142.   Judge Donahoe also handled the contempt charge brought against MCSO Deputy Stoddard – a courtroom deputy who improperly removed and read papers from a defense attorney's file in open court and had them copied.

143.    Judge Donahoe found MCSO Deputy Stoddard in contempt and ordered him to apologize to the defense attorney.

144.    Both the Trombi and Stoddard contempt findings were upheld on appeal, though some of the sanctions were overturned.

145.    Both of these actions by Judge Donahoe added fuel to the fire of enmity that had been raging between and among the Sheriff, County Attorney, the BOS, and finally the Superior Court, as evidenced by the MCSO press release issued on December 4, 2009, referenced above.  That enmity soon engulfed Judge Donahoe.

146.    When he was served with the Criminal Complaint, Judge Donahoe stopped hearing all cases in which the State was represented by the County Attorney because of the possible conflict.  As a result, his job as Presiding Criminal Judge was adversely affected and the load on the other judges was increased.  Because of this, Judge Donahoe stepped down as Presiding Judge – a position he thoroughly enjoyed and at which he excelled.

### MCAO's Independent Personnel Investigation of Aubuchon

147.    Richard Romley, who was appointed Interim County Attorney when Thomas resigned, authorized an independent personnel investigation of Aubuchon, which was conducted by Katherine Baker, Esq., of Green & Baker.

148.    The findings of that investigation led to Aubuchon's termination from the MCAO.  In the letter of termination, Paul Ahler, MCAO Chief Deputy, concluded that: "[T]he Federal RICO Complaint was nothing more than a vehicle to intimidate, retaliate and besmirch the reputations of judges, public officials and attorneys who had previously opposed positions taken by the Maricopa County Attorney's Office."

149.    The findings in the Baker Report and the Ahler Letter were upheld by the decision of Harold J. Merkow, an administrative law judge for the Maricopa County

1    Employee Merit System Commission (the "Merkow Decision").  The Merkow Decision

2    rejected Aubuchon's appeal of the findings contained in the Ahler Letter and Baker

3    Report.

4         150.    Chief Deputy Ahler concluded that the Complaint filed by Aubuchon did

5    not meet the requirements to state a RICO claim, that it was devoid of facts and that

6    there was no competent evidence to support its filing.

7         151.    Aubuchon filed the RICO Action, without evidentiary support, against the

8    recommendation of experienced Maricopa County Attorneys and outside legal counsel,

9    in contravention of Judge Donahoe's ruling prohibiting the MCAO from working on the

10   Court Tower Project, and despite her inexperience in RICO matters.

11        152.    In doing so, Aubuchon was found to have violated MCAO Procedures 1.2,

12   5.29, and 5.3, Merit Rule Section 15, Rule 9.03, ER 1.1, ER 1.4, and ER 3.1 relating to

13   incompetency, inefficiency, discourteous treatment of the public or fellow employees,

14   violation of policies/procedures, and violation of Code of Ethics.

15        153.    The Baker Report found that Aubuchon's and MCAO's continued

16   involvement in the Court Tower Project (particularly the RICO Action), after Judge

17   Donahoe ruled that the MCAO had a conflict of interest, was a clear violation of Judge

18   Donahoe's Order and a violation of MCAO Procedures 1.2, 5.29, 11.02 and 5.3, Merit

19   Rule Section 15, Rule 9.03, Rule 42, and ER 8.4, relating to incompetency, inefficiency,

20   neglect of duty, violation of policies/procedures, and violation of Code of Ethics.

21        154.    The Baker Report also concluded that the Criminal Complaint filed

22   against Judge Donahoe as well as the RICO action, lacked evidence and were filed

23   merely to further the vindictive impulses of Arpaio and Thomas.

24

25

26

155.   During her personnel investigation, Aubuchon admitted that her goal in filing the Criminal Complaint was to force Judge Donahoe to vacate the December 9, 2009 hearing.

156.   Yavapai County Attorney Sheila Polk reviewed the Criminal Complaint and the scant evidence produced which purported to support it, and concluded that moving forward with the Criminal Complaint would be improper and that charging a judge with crimes for ruling on motions "is beyond the realm…"

157.   Ms. Polk had never seen a criminal complaint based upon a report that was as lacking in evidence and meritless as in the Criminal Complaint filed by Aubuchon against Judge Donahoe.

158.   And, as the Baker Report concludes, "A reasonable prosecutor [in Aubuchon's position] would have stepped back and attempted to obtain an unbiased view of the matter before proceeding with criminal charges, and would have demanded some competent and compelling evidence." (p. 94)

159.   Although MCAO practice is to have high-profile cases (such as the Criminal Action) reviewed by experienced, senior managing attorneys, Aubuchon, of course and of necessity, bypassed this procedure.

160.   The Baker Report concluded that the filing of the Criminal Complaint violated MCAO Procedures 1.3, 6.1, MCAO Employee Procedure 1.2, 5.29, 11.02, 5.3, Merit Rule Section 15, and Rule 9.03, Rule 11, SCR 42, ER 3.1 and ER 3.5 relating to incompetency, inefficiency, neglect of duty, violation of policies/procedures, and violation of Code of Ethics.

161.   During the time Aubuchon was committing these infractions and the other ethical violations alleged herein, Thomas, her supervisor, was encouraging, approving, and ratifying her behavior on behalf of himself and the MCAO.

24

162.   As her supervisor and employer at the time, when concerns began to arise regarding Aubuchon's prosecutorial judgment, Thomas and the MCAO had the professional and ethical obligation to review her performance, but they failed to do so.

**Unfounded Complaint Filed With The Commission on Judicial Conduct**

163.   Even before the RICO and criminal complaint were filed against Judge Donahoe, Chief Deputy Hendershott of the MCSO filed a complaint against Judge Donahoe with the Commission on Judicial Conduct.

164.   Tellingly, the language in the judicial complaint filed by Hendershott closely mirrors that contained in the Probable Cause Statement that accompanied the criminal complaint filed by Thomas and Aubuchon.  It does so because the AATH Defendants worked on it together.

165.   Hendershott, Arpaio, MCSO personnel, with the aid and encouragement of Thomas and Aubuchon, released Hendershott's judicial conduct complaint to the media, resulting in its publication throughout Arizona through media outlets and the internet.

166.   Not content with merely naming the Judge in these unfounded and unethically brought actions, Hendershott disseminated Judge Donahoe's home address, phone number, and social security number on the internet when he announced the charges.   Hendershott did so with the knowledge and encouragement of Arpaio, Thomas, and Aubuchon.

167.   More chilling than this deliberate breach of security (and possible crime, *see* A.R.S. § 13-2401.4), the process server deliberately selected by the Sheriff and County Attorney to serve Judge Donahoe with the RICO complaint was a man who was ***prosecuted for threatening to kill Judge Donahoe in 1997!***

168.   These actions were taken against Judge Donahoe in retaliation for the exercise of his First Amendment rights in making rulings in the Court Tower investigation and to prevent him from making further rulings.

169.   The system of checks and balances between and among branches of government had broken down in the ugliest way:  no one was safe from the unbridled, unrestrained, and unprincipled power of Arpaio and MCSO to launch criminal investigations and the County Attorney to turn those investigations into political prosecutions; it was a cruel combination of tyranny with badges.

**Independent Federal and State Prosecutors Find The Thomas/Arpaio Court Tower - Public Corruption Investigations "Nearly Incomprehensible"**

170.   On March 10, 2010, Thomas and Arpaio referred the Supervisor Stapley matter and other related public corruption investigations regarding the Court Tower Project to the Public Integrity Section of the Department of Justice.

171.   This referral was done with great public fanfare and bluster meant to again publicly proclaim that the RICO Action defendants – including Judge Donahoe – were criminals and corrupt racketeers.

172.   The referral was also the contrived basis offered by Arpaio and Thomas for voluntarily dismissing the RICO Action, the criminal matter, and other alleged "corruption cases."

173.   Of course, the Public Integrity Section never agreed to act as the lackey for Arpaio and Thomas so it sent them to Dennis K. Burke, United States Attorney for the District of Arizona, for review.

174.   On October 22, 2010, U.S. Attorney Burke advised County Attorney Romley that he determined that "there is a total lack of evidence of the commission of any federal crimes by the individuals" in the nine matters, including the Court Tower

investigation out of which the RICO and criminal complaint against Judge Donahoe arose.

175.   U.S. Attorney Burke concluded that "in several instances, the evidence was so lacking as to make the theory of any liability nearly incomprehensible."

176.   Despite the lack of any evidence of any federal violations, U.S. Attorney Burke recommended that the nine matters be reviewed for violations of state statutes.

177.   Because of Maricopa County's conflict of interest in the matters, on October 27, 2010, County Attorney Romley requested Navajo County Attorney, Brad Carlyon, review the matters.

178.   On November 16, 2010, Navajo County Attorney Carlyon advised County Attorney Romley that he found no basis for any state law violations involving the nine matters, including the actions involving the Court Tower and Judge Donahoe.

**Thomas Continued His Defamatory Assault After Leaving Office**

179.   After leaving office for his unsuccessful run for Arizona Attorney General, Thomas, acting solely in his individual capacity and as a private citizen, made and/or released to the media several defamatory statements about Judge Donahoe and others.

180.   Among other things, Thomas issued several press releases and made various public comments reasserting the defamatory assault of the criminal and RICO charges against Judge Donahoe.

181.   As an example, on June 5, 2010, Thomas and Arpaio's representatives, made numerous statements on their behalf denigrating the Notices of Claim filed by County officials and employees, including Judge Donahoe: "Not only are these…claims not valid, they represent a preplanned, calculated effort to mock the Sheriff's Office."

182.   Further, on or about June 30, 2010, Thomas disseminated the first of a four-part article followed by a news release which was published by various media outlets throughout Arizona, in which he reiterated that all the allegations contained in the RICO Action and the Criminal Complaint had merit and announced that he, along with Arpaio, had recently released "new evidence" in support of the claims against Judge Donahoe.

183.   Thomas also accused various County officials, including Judge Donahoe, and County employees of "rigging the system so they can avoid going to court like anyone else and testifying under oath."

184.   In the second news release issued July 14, 2010, Thomas publicly referred to the Notices of Claim filed by Judge Donahoe and others as requests for "greedy, undeserved payouts" by judges and others who knowingly permit "blatant, self-dealing by government officials"!

185.   In this same news release, Thomas characterized the Notices of Claim filed by four Maricopa County Judges, including Judge Donahoe, as requests for County taxpayers "to reward them for their misbehavior as judges."

186.   He further alleged:  "Even more disturbing, the four judges who have filed claims ask to be rewarded financially for misconduct that led them to be properly sued and, in one case, prosecuted."

187.   More specifically, Thomas stated that Judge Donahoe issued decisions from the bench "to protect himself."

188.   Additionally, on July 21, 2010, Thomas released campaign fundraising literature sent through the U.S. Mail that was published in a least one media outlet, the *American Post-Gazette,* wherein Thomas touted that in his "fight against public corruption" he would address the County Board's efforts to pay Judge Donahoe, and

others, millions "in bailouts after being investigated and/or prosecuted for alleged public corruption."

189.    Again, Thomas accused County officials and employees of filing "bogus claims and lawsuits" and pronounced that he and Arpaio "want to take these matters to trial to get to the bottom of the alleged corruption in Maricopa County government." He knew better.

**Aubuchon Continued Her Defamatory Conduct After Leaving MCAO**

190.    After she was terminated from MCAO, Aubuchon, acting solely in her individual capacity and as a private citizen, made various public defamatory comments, reasserting the defamatory assaults of the spurious RICO charges against Judge Donahoe.

191.    For example, among other things, on or about November 23, 2010, Aubuchon stated that the RICO action filed against the various public officials, judges, and employees – including Judge Donahoe—was "justly filed," by which she was suggesting that Judge Donahoe and others were, in fact, criminals and corrupt racketeers.

192.    Additionally, in statements that were published in *The Arizona Republic* on November 23, 2010, Aubuchon continued to insist that she acted reasonably with respect to her investigations of various County officials and employees, which, of course, included the investigation and prosecution of Judge Donahoe.  Again, by upholding her own actions, Aubuchon was once more vouching for her allegations in the RICO Action and elsewhere that Judge Donahoe and others were corrupt racketeers and criminals.

193.    Moreover, during her suspension from MCAO, Aubuchon made various defamatory comments about Judge Donahoe and others.  For example, among other

things, during the Baker Investigation, Aubuchon, through her legal counsel, Barnett Lotstein, repeated the spurious statements of Arpaio and Thomas that the Notices of Claim filed by County officials and employees are "frivolous" and "are a greedy attempt at a payday and an attempt by these individuals to have their friends on the Board of Supervisors or County Administration settle these matters prior to litigation so that they not be subjected – so that the parties bringing them not be subjected to interrogation by deposition or discovery."

194.   Aubuchon authorized Lotstein to make these statements.   Indeed, throughout the various investigations described herein Aubuchon has maintained that her attacks on Judge Donahoe's honesty and integrity are true.

195.   Further, Aubuchon ratified these statements by not disavowing them after they were made, and by continuing to retain Lotstein despite making these statements.

**Other Defamatory Conduct (In Official Capacity)**

196.   Other defendants also made or released several defamatory statements, some of which are set forth herein.

197.   On December 4, 2009, in a press release orchestrated by Hendershott and issued by MCSO with the knowledge, consent/approval of Arpaio, Thomas, and Aubuchon, Arpaio falsely tried to portray Judge Donahoe as "soft on crime."

198.   Three days later, the *Phoenix New Times* exposed the falsity of Arpaio's accusations in its article titled "Arpaio's Office Blows Its Smear of Judge Gary Donahoe; Analysis of Sentencings Flawed."

199.   MCSO spokesperson, Lisa Allen, divulged to the *Phoenix New Times* that Thomas conducted the false and defamatory sentencing research.

200.   On June 22, 2010, in a press release issued by MCSO, Arpaio and Thomas (in Thomas' capacity as a private citizen) blustered that the Notices of Claim filed by

the County officials, employees, and judges were "bogus" and "absurd" and that he looked forward to "proving their corruption case in civil court."

201.   At that same time, Arpaio and Thomas stated that "some of these same individuals abused the powers of their public offices to shut down criminal investigations and prosecutions and/or otherwise improperly deny us such an opportunity for examination under oath.  That abuse of power will now be remedied in another forum."

202.   Further, Arpaio announced in his release that he was tired "…of the false rhetoric claiming that evidence did not exist to justify the Court Tower investigation and the filing of criminal charges against Retired Judge Gary Donahoe," and that new details concerning these matters would be revealed to the public.  He knew better.

203.   On or about July 10, 2010, Hendershott, Arpaio, Thomas (in Thomas' capacity as a private citizen), Aubuchon, and MCSO caused to be published in the *American Post-Gazette* an email between Hendershott and County Risk Manager Peter Crowley wherein Hendershott bombastically accused the County of recklessly considering settlement of "frivolous" claims filed by various County officials and employees.  They all knew better.

204.   On August 13, 2010, in statements to the *Arizona Republic*, Hendershott continued to maintain that their "nearly incomprehensible" rants of the Criminal Complaint and the RICO Actions had "merit."  He knew better, too.

**Arpaio, Aubuchon, Thomas, and Hendershott Have a Pattern, Custom, and Practice of Misusing Their Power by Investigating, Arresting, and Prosecuting Individuals Without Probable Cause for Improper and Unlawful Selfish Purposes, Including Political and Financial Gain**

205.   This is far from the first time the AATH Defendants have abused their authority for unconstitutional and improper motives and to obtain financial, political,

and other gain or to retaliate against those that dared to disagree or disappoint them. They have a custom, pattern, and practice of targeting, investigating, arresting, and/or prosecuting individuals without probable cause and for purely political or retributive motives.

206.   Last Spring, Tucson judge, John Leonardo, disqualified Thomas from prosecuting Supervisor Wilcox in *State v. Wilcox,* because of obvious conflicts of interest and then dismissed the indictment against her.

207.   In that ruling, Judge Leonardo noted that Thomas acted unethically, retaliated against those who disagreed with him, sought political advantage by prosecuting those who oppose him politically, and allied himself with Sheriff Arpaio, who "misused the power of his office" by targeting opponents with criminal investigations.

208.   These damning findings by Judge Leonardo memorialized what most people knew:  that the AATH Defendants had mounted their destructive assault on Judge Donahoe (and others) to retaliate, intimidate, and punish him for ruling against them.

209.   Arpaio and Thomas brought a RICO Action in early December 2009 against Supervisor Stapley, Wilcox, Judge Donahoe, and other members of the judiciary, County management and others arising out of the Court Tower Project.  The RICO Complaint was a sophomoric rant.   All but its vindictive purpose was incomprehensible.   This case, too, was voluntarily dismissed after Judge Leonardo exposed the meritlessness of their mischief.

210.   Days after filing their RICO Complaint, Thomas and Aubuchon filed the criminal complaint against Judge Gary Donahoe discussed herein—again based on

1    groundless allegations involving the Court Tower Project.  It too, was later voluntarily
2    dismissed.

3        211.    In October 2007, Arpaio and the MCSO arrested Michael Lacey and Jim
4    Larkin, the Executive Editor and Chief Executive Officer, respectively, of *The Phoenix*
5    *New Times* on meritless misdemeanor charges, in violation of the constitutional rights of
6    Mr. Lacey and Mr. Larkin, for the sole and improper purpose of Arpaio's and the
7    MCSO's own personal and political gain, and in an attempt to silence *The Phoenix New*
8    *Times* as a critic.

9        212.    Then, one month later, in November 2007, the legal director of the
10    American Civil Liberties Union of Arizona ("ACLU"), Daniel Pochoda, was arrested by
11    the MCSO after identifying himself as being with the ACLU.  Arpaio disapproved of
12    the ACLU because it had filed lawsuits against him.  Mr. Pochoda was attending a
13    demonstration as a legal observer in front of a Phoenix furniture store.  Mr. Pochoda
14    was arrested that day on a misdemeanor charge of trespassing, which rarely leads to
15    anything more than a simple summons or "ticket" to appear in court.  Mr. Pochoda, a
16    constitutional law expert with more than 35 years experience, was hauled off to jail and
17    detained for nearly 12 hours!  A Maricopa County Justice of the Peace later ruled that
18    that Mr. Pochoda did not engage in any unlawful behavior prior to his arrest by MCSO
19    deputies.

20        213.    In 2007, Arpaio arrested Chandler Police Sergeant Thomas Lovejoy,
21    without probable cause, for animal cruelty, and insisted that a reluctant MCAO
22    prosecute the case after Sgt. Lovejoy's K-9 partner, Bandit, died from heat exhaustion
23    in the back of his SUV.  He was quickly acquitted on the charge after a bench trial.

24        214.    These and other instances of targeting, investigating, arresting, and
25    prosecuting individuals without probable cause and in violation of the Constitution

26

demonstrate the AATH Defendants' pattern and practice of investigating, arresting, and prosecuting individuals solely for the improper purposes of achieving personal and political gain or political retaliation and retribution.

### Judge Donahoe and His Wife Have Suffered Damages as a Result of This Assault on His Reputation

215.   As the result of Defendants' conduct as alleged herein, including the publication of his home address, Judge Donahoe fears greatly for the safety of his family and himself.  As a judge, he has sentenced hundreds of people to prison.  With his home address made public by the Sheriff, and his office, Judge Donahoe now fears that one of these people may seek revenge against him and his family.  He is seriously considering a move from his home of 23 years.

216.   As a further result of Defendants' conduct as alleged herein, Judge Donahoe's reputation has been tarnished and he has lost professional/judicial opportunities, including but not limited to having to step down as the Presiding Judge of the Maricopa County Superior Court.

217.   In addition to the damage to his reputation, Judge Donahoe has suffered emotional distress and adverse physical maladies and manifestations.   He has also incurred over $220,000 in attorneys' fees to defend against civil and criminal charges.

218.   As a result of the investigation, arrest, and prosecution of Judge Donahoe, his wife, Cherie Donahoe, has suffered humiliation, anguish, mental and physical maladies and manifestations.

### COUNT I

### Violations of 42 U.S.C. § 1983:  Free Speech and Free Press, Law Enforcement Retaliatory Conduct, Abuse of Process, Malicious Prosecution, Defamation, and Abuse of Power (All Defendants)

219.   Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

34

220.   At all times material hereto, all Defendants were acting under color of law and in their capacity as officials and agents of Maricopa County.

221.   The wrongful conduct of Defendants alleged in this Complaint constitutes violations of the United States Constitution, including, but not limited to, Amendments I, IV, V, and XIV, in that Judge Donahoe was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to law enforcement retaliatory conduct, invasion of privacy, malicious and selective prosecution, defamation, and was criminally and civilly charged without proper cause, with an unconstitutional motive and malice, and without equal protection or due process in an attempt to chill his free speech, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

222.   As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Judge Donahoe's constitutional rights were violated and he has suffered harm and has been injured.

223.   The wrongful conduct of these Defendants as alleged in this Complaint was undertaken with malice and/or with improper and unconstitutional motives in an attempt to interfere with conduct protected by the Constitution.  Judge Donahoe was investigated, prosecuted, intimidated, harassed, and retaliated against by or at the behest of Defendants for improper unconstitutional motives, was treated differently than others similarly situated, and was subjected to improper abuse of process and power for improper motives, without proper or probable cause, and with malice.

224.   Judge Donahoe was subjected to Defendants' wrongful and unconstitutional conduct as alleged herein in a particularly egregious, and conscience-shocking manner.

225.    The acts and omissions of the AATH Defendants acting in their individual capacities and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

226.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Arpaio, Hendershott, Thomas, and Aubuchon to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

### COUNT II

### Violations of 42 U.S.C. § 1983:  Unconstitutional Policies, Customs, and Failure to Train (All Defendants)

227.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein

228.    Sheriff Arpaio is an official policymaker for the MCSO and Maricopa County.  Sheriff Arpaio has the authority and responsibility to establish policy for the MCSO and Maricopa County, and to properly supervise and train the officers, agents, and employees of the MCSO.  His actions are the actions of the County.

229.    Chief Deputy Hendershott is an official policymaker for the MCSO and Maricopa County.  Sheriff Arpaio has delegated to him the authority and responsibility to establish policy for the MCSO and Maricopa County, and to properly supervise and train the officers, agents, and employees of the MCSO.  His actions are the actions of the County.

230.    Former County Attorney Thomas was a policymaker for the MCAO and Maricopa County.  At all material times he had the authority and responsibility to establish policy for the MCAO and Maricopa County, and to properly supervise and train the attorneys, agents, and employees of the MCAO.  His actions were the actions of the Maricopa County.

36

231.   At all times material hereto, the AATH Defendants were acting under color of law and in their capacity as officials and agents of Maricopa County.

232.   The AATH Defendants are named in their official capacity, as well as their individual capacity, pursuant to 42 U.S.C. § 1983 supervisory and direct liability, for their conduct as alleged herein.

233.   At all material times, the AATH Defendants and Maricopa County have oversight and supervisory responsibility over the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control, and the proper screening, hiring, training, retaining, and supervision of the officers, employees, and agents investigating, processing, handling, and managing such criminal investigations and prosecutions.

234.   As alleged herein, the AATH Defendants, and Maricopa County, independently and in concert with one another and through their official policymakers, violated Judge Donahoe's constitutional rights and were deliberately and callously indifferent to Judge Donahoe in training (or failing to train) their officers, agents, and employees in (among other things and without limitation): The appropriate, lawful and constitutional policies, procedures, and protocols for investigating, processing, handling, and managing civil and/or criminal investigations and prosecutions in their control; and for adopting policies and procedures to ensure due process and equal protection for those subject to investigation and prosecution.

235.   As alleged herein, the AATH Defendants and Maricopa County, independently and in concert with one another and through their official policymakers, were deliberately and callously indifferent to Judge Donahoe through fostering, encouraging and knowingly accepting formal and informal policies, procedures,

practices, or customs condoning indifference to the rights of the subjects of civil and/or criminal investigations and prosecutions under their control.

236. As alleged herein, the AATH Defendants and Maricopa County, independently and in concert with one another and through their official policymakers, knew and should have known that unconstitutional policies, practices, customs, and training existed with respect to the screening, hiring, training, retaining, and supervision of officers, employees, and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control, yet failed to properly address them and/or failed to establish and implement appropriate policies, procedures, protocols, and training to remedy them.

237. As alleged herein, the AATH Defendants and Maricopa County, independently and in concert with one another and through their official policymakers, permitted the implementation of inappropriate, unconstitutional, *de facto* policies which:  Authorized, approved, condoned, and/or ratified unconstitutional civil and/or criminal investigatory and prosecutorial practices, and failed to adequately train and supervise their personnel in these and other relevant areas.

238. The wrongful conduct of the AATH Defendants and Maricopa County as alleged in this Complaint constitutes violations of Title 42 U.S.C. § 1983, in that they deprived Judge Donahoe of the rights, privileges, and immunities secured to him by the Constitution and laws of the United States and their wrongful conduct was the moving force behind the violations of Judge Donahoe's rights by their agents, employees, officers, and personnel.

239. The wrongful conduct of the AATH Defendants and Maricopa County alleged herein constitutes violations of the United States Constitution, including but not

38

limited to Amendments I, IV, V, and XIV, in that Judge Donahoe was subjected to retaliatory conduct by law enforcement, invasion of privacy, and was sued civilly and criminally with no evidence to support the charges, with an unconstitutional motive, and without probable cause, equal protection or due process in an attempt to chill Plaintiff's free speech, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

240.    As the direct and proximate result of the AATH Defendants and Maricopa County's wrongful conduct, Judge Donahoe's constitutional rights were violated and he has suffered harm and has been injured.

241.    The acts and omissions of the AATH Defendants acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

242.    As a result, punitive damages in an amount to be determined by a jury should be awarded against the AATH Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT III

## Violation of 42 U.S.C. § 1983—Substantive Due Process (All Defendants)

243.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

244.    Defendants' conduct as alleged herein violates the laws of the United States and the State of Arizona:

245.    Among other things, Defendants' conduct constitutes:

a.      Obstruction, in violation of A.R.S. § 13-2402;

b.      Perjury, in violation of A.R.S. §§ 13-303 and 13-2701 *et seq.;*

c.      Conspiracy against Rights, in violation of 18 U.S.C. § 241;

39

d.   Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242; and

e.   Extortion in violation of A.R.S. § 13-1804 and 18 U.S.C. §§ 1961(1)(A) and 1962(c) and (d).

246.   At all times material hereto, all Defendants were acting under color of law and in their capacity as officials and agents of Maricopa County.

247.   The wrongful conduct of Defendants alleged herein also constitutes violations of the United States Constitution, including but not limited to Amendments I, IV, V, and XIV, in that Judge Donahoe was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to retaliatory conduct, invasion of privacy, malicious and selective prosecution, and was sued civilly and criminally without proper cause, with an unconstitutional motive and malice, and without equal protection or due process in an attempt to chill Plaintiff's free speech, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

248.   As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Judge Donahoe's constitutional rights were violated and he has suffered harm and has been injured.

249.   The wrongful conduct of the Defendants as alleged herein was undertaken with malice and/or with improper and unconstitutional motives.

250.   In its totality, Defendants' entire course of conduct against Judge Donahoe, as set forth in the preceding allegations of the Complaint was arbitrary, irrational, extreme, outrageous, unjustified by any governmental interest, beyond all possible realms of decency; it also shocks the conscience and constitutes a gross abuse of governmental authority.

251.   The acts and omissions of the AATH Defendants acting in their individual capacities and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

252.   As a result, punitive damages in an amount to be determined by a jury should be awarded against the AATH Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT IV

### Violation of 42 U.S.C. § 1983—Equal Protection (All Defendants)

253.   Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

254.   At all times material hereto, all Defendants were acting under color of law and in their capacity as officials and agents of Maricopa County.

255.   The wrongful conduct of Defendants alleged herein constitutes violations of the United States Constitution, including but not limited to Amendments I, IV, V, and XIV, in that Judge Donahoe was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to law enforcement retaliatory conduct, invasion of privacy, malicious and selective prosecution, and was prosecuted civilly and criminally without proper cause, with an unconstitutional motive and malice, and without equal protection or due process in an attempt to chill Plaintiff's free speech, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

256.   Defendants treated Judge Donahoe, as a class of one, differently from others similarly situated.

257.   Upon information and belief, no other Maricopa County Judge has ever been treated in such a manner.

41

258.    There is no rational basis for the difference in Defendants' treatment of Judge Donahoe from others similarly situated.

259.    Defendants' engaged in their conduct for an impermissible motive and with malice due to the Defendants' animus of Judge Donahoe.

260.    Defendants acted with bad faith intent to injure Judge Donahoe.

261.    Defendants singled out Judge Donahoe with the impermissible motive of attempting to chill his free speech, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

262.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Judge Donahoe's constitutional rights were violated and he has suffered harm and has been injured.

263.    The wrongful conduct of these Defendants as alleged herein was undertaken with malice and/or with improper and unconstitutional motives in an attempt to interfere with conduct protected by the Constitution.   Judge Donahoe was investigated, prosecuted civilly and criminally, intimidated, harassed, and coerced by or at the behest of Defendants for improper unconstitutional motives, was treated differently than others similarly situated, and was subjected to improper abuse of process and power for improper motives, without proper or probable cause, and with malice.

264.    Judge Donahoe was subjected to Defendants' wrongful and unconstitutional conduct as alleged herein in a particularly egregious, conscience-shocking manner.

265.    The acts and omissions of Sheriff Arpaio, Hendershott, Thomas, and Aubuchon acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

42

266.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Arpaio, Hendershott, Thomas, and Aubuchon to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT V

### Violations of Arizona Law: Abuse of Process and Malicious Prosecution (All Defendants)

267.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

268.    By authorizing, initiating, instigating, conducting, acquiescing, and/or participating in the decision to investigate and prosecute a RICO Action and a criminal action against Judge Donahoe, which investigations and prosecutions Defendants knew were not based on probable cause or proper cause and were brought with malice, Defendants willfully used, threatened to use, agreed or failed to object to the use of process or procedure to accomplish an ulterior purpose for which the process or procedure was not designed, namely to improperly punish, retaliate against, humiliate and discredit a duly-elected County judge who issued judicial rulings adverse to them, in violation of his Constitutional rights, as alleged herein.

269.    The RICO Action terminated in favor of Judge Donahoe, as did the direct criminal complaint.

270.    As a direct and proximate result of Defendants' abuse of process and malicious prosecution, Plaintiffs sustained damages and suffered harm in an amount to be proven at trial.

271.    The acts and omissions of Sheriff Arpaio, Hendershott, Thomas, and Aubuchon acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

43

1
2

### COUNT VI

### Violation of Arizona Law: Intentional Infliction of Emotional Distress
### (All Defendants)

3
4

272.   Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

5
6
7
8
9

273.   Defendants' acts and/or omissions, including such things as (among others and without limitation) their vindictive, retaliatory, extortionate, defamatory, threatening, intimidating under the color of state law, and invasive conduct, constituted extreme and outrageous conduct that inflicted emotional distress and physical injury and/or harm upon Judge Donahoe and his wife.

10
11

274.   Defendants' acts and omissions were extreme, outrageous, and beyond all possible realms of decency and shock the conscience.

12
13
14
15

275.   Defendants' acts and omissions were intentionally aimed at causing Judge Donahoe and his wife extreme emotional distress and/or physical injury and/or harm and were done in reckless disregard of the near certainty that emotional distress and physical injury and/or harm would result from their conduct.

16
17

276.   Defendants' acts and omissions constitute negligent, reckless, and/or intentional infliction of emotional distress.

18
19
20
21

277.   As a direct and proximate cause of Defendants' intentional, reckless, and/or negligent infliction of emotional distress, Judge Donahoe and his wife have suffered severe emotional distress, adverse physical maladies and manifestations, and physical injury and/or harm in an amount to be determined by trial.

22
23
24

278.   The acts and omissions of Sheriff Arpaio, Hendershott, Thomas, and Aubuchon acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

25
26

44

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT VII

### Defamation, Libel, and/or False Light Invasion of Privacy
### (Arpaio, Hendershott, Thomas, and Aubuchon)

279.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

280.    As alleged herein, Defendants made and/or released statements to the press regarding Judge Donahoe and the merits of criminal and RICO investigations and charges even after their voluntary dismissal of the actions.  And, in the case of Thomas and Aubuchon, certain statements were made after leaving office and/or County employment.

281.    Defendants' statements made and/or released to the media as alleged herein were knowingly false, defamatory, and disparaging.

282.    Defendants are responsible for the publication of the false and misleading statements in various media outlets throughout Arizona.

283.    Defendants caused the false and defamatory statements to be published to Arizona citizens with knowledge of their falsity and/or with reckless disregard as to their truth or falsity.

284.    Defendants' false and defamatory statements were directed to the honesty, integrity, and reputation of Judge Donahoe constituting defamation *per se*.

285.    As a direct and approximate result of Defendants' false and defamatory statements, Judge Donahoe has been damaged in an amount to be proven at trial.

286.    As a direct and proximate result of the conduct described in this Complaint, Judge Donahoe suffered irreparable harm, including damage to his reputation and good name, suffered severe emotional distress, adverse physical maladies and manifestations, and physical injury and/or harm.

287. The acts and omissions of Sheriff Arpaio, Hendershott, Aubuchon, and Thomas acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiff's rights.

288. Thomas' and Aubuchon's conduct, which was performed in their capacity as private citizens, after they left the MCAO, was done with an intent to harm Plaintiffs and in conscious disregard of causing significant harm to Plaintiffs. Thomas and Aubuchon acted deliberately, overtly, and dishonestly. Thomas and Aubuchon's motives were so improper and their conduct so oppressive, outrageous, and intolerable that punitive damages are warranted.

289. The acts and omissions of Thomas and Aubuchon acting in their capacity as private citizens as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

290. As a direct and proximate result, punitive damages in an amount to be determined by a jury should be awarded against the AATH Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT VIII

### Racketeering Violations under 18 U.S.C. § 1961, *et seq.* & A.R.S. § 13- 2301, *et seq.* (Thomas, Aubuchon, Arpaio, and Hendershott)

291. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

292. The AATH Defendants were participants in an enterprise known as the MACE unit, and their participation was on-going throughout the MACE unit's existence.

46

293.    The AATH Defendants likewise repeatedly conspired, as set forth above, in furtherance of the MACE unit's activities against their political and personal foes.

294.    The MACE unit engaged in a pattern of extortion in violation of 18 U.S.C. §§ 1961(1)(A) and 1962(c) and (d), including, but not limited to, the following:

a.    Threatening to publicly investigate and prosecute the Board to induce the Board from refraining from cutting the MCAO or MCSO budgets, by eliminating the Court Tower Project in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore also in violation of 18 U.S.C. § 1962;

b.    The AATH Defendants threatened Stapley employee Susan Schuerman by sending MCSO officers to interview and intimidate her by threatening to prosecute her if she did not fabricate evidence that the Defendants could use against Stapley, in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore also in violation of 18 U.S.C. § 1962;

c.    The Defendants threatened Deputy County Manager Sandra Wilson in an attempt to bludgeon her into preventing the Board from cutting MCAO or MCSO funding and demanding the County eliminate a portion of the Court Tower project in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore also in violation of 18 U.S.C. § 1962;

d.    Threatening County employee Stephen Wetzel by sending MCSO deputies who threatened to charge Mr. Wetzel if he did not provide information that the AATH Defendants could use against the Board relating to a "bug sweep" of certain county buildings in violation of

47

A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore is also a violation of 18 U.S.C. § 1962;

e.   MACE member Larry Black physically threatened Frank Munnell to try to intimidate Munnell into not cooperating with an Arizona Attorney General's investigation into election law violations relating to the Sheriff's Command Association Fund, in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore in violation of 18 U.S.C. § 1962;

f.   David Hendershott likewise threatened negative employment actions against Munnell if he cooperated with a Federal Bureau of Investigations investigation of the MCSO, in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. §§ 1512 and 1513, 18 U.S.C. § 1961(1)(A) and therefore is also a violation of 18 U.S.C. § 1962;

g.   The AATH Defendants caused letters to be sent to potential witnesses concerning an investigation into Aubuchon and Thomas' conduct threatening to prosecute the potential witnesses if they cooperated with the investigation in violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore in violation of 18 U.S.C. § 1962;

h.   As is relevant to Judge Donahoe's claims, the Defendants made thinly-veiled threats that bad things would happen to Judge Donahoe if he did not recuse himself or rule in their favor.  The AATH Defendants conveyed their threats through a series of increasingly dramatic acts [filing of a judicial misconduct complaint against him, and then naming him as a defendant in the

RICO Action].   When that did not work, the AATH Defendants had him served with the RICO Action at home by a process server who had previously been prosecuted for threatening to kill Judge Donahoe.   Then the AATH Defendants filed the direct criminal complaint against him.   The implication was clear: if Donahoe did not get out of the AATH Defendants' way, they would continue to escalate their actions against him.   All the while, the AATH Defendants continued to make increasingly negative statements about Judge Donahoe in the press.   This is a violation of A.R.S. § 13-1804(A)(7), 18 U.S.C. § 1961(1)(A) and therefore in violation of 18 U.S.C. § 1962.

295.   The foregoing also constitute violations of Arizona's RICO statute, in particular A.R.S. §§ 13-2308 and 13-2312 because the AATH Defendants engaged in the proscribed conduct for personal financial gain in the form of continued receipt of salary, funding of their budgets, appearance fees by virtue of the offices they held, and campaign contributions to retain those offices.

296.   The MACE unit's actions affected interstate commerce for the reasons set forth above; because, upon information and belief, the AATH Defendants themselves funded the MACE unit's operations using money obtained from the federal government's own RICO fund; and because their victims spent hundreds of thousands of dollars in attorneys' fees – including payments to multi-state law firms – to defend against the spurious charges and investigations brought against them by MACE.

297.   The AATH Defendants also established the Sheriff's Command Association Fund ("SCA Fund") and informed MCSO employees that its purpose was to defend the MCSO employees from perceived media attacks.   Under this guise, the

49

AATH Defendants obtained contributions to the SCA Fund in excess of $100,000.  In fact, the SCA Fund was used to make an earmarked donation to the Arizona Republican Party to trash Arpaio's and Thomas' respective campaign opponents to ensure they maintained power.  The fraud on the MCSO employees was in violation of A.R.S. § 13-2310.

298.    Each of the AATH Defendants participated in the MACE unit in violation of 18 U.S.C. § 1962(c) and conspired to have the MACE unit commit the violations alleged herein, in violation of 18 U.S.C. § 1962(d).  Their participation and conspiracy also violated A.R.S. § 13-2308.

299.    As a direct and proximate result of the AATH Defendants' violations of 18 U.S.C. § 1962(c), and (d), Judge Donahoe incurred several hundred thousand dollars in fees defending himself against spurious criminal charges, and has sustained damages to his livelihood and reputation in an amount to be proven at trial.

300.    As set forth in detail in this Complaint, AATH Defendants have engaged in this pattern of unlawful activity in order to obtain political, retaliatory, or retributive gains that have resulted in harm and injury to Judge Donahoe and others.

301.    The AATH Defendants' acts and omissions as alleged herein constitute violations of 18 U.S.C. § 1861, *et seq*. and A.R.S. § 12-2301, *et seq*.

302.    Pursuant to 18 U.S.C. § 1964(c) and A.R.S. § 12-2314.01, Judge Donahoe is entitled to an award of treble damages.

303.    Pursuant to 18 U.S.C. § 1964(c) and A.R.S. § 13-2314.01, Judge Donahoe is entitled to an award of his reasonable attorneys' fees and costs.

# COUNT IX
## Negligence (All Defendants)

304.    Plaintiffs reallege and fully incorporate the allegations set forth in each of the preceding paragraphs of this Complaint.

305.    Defendants have both statutory and common law duties of care to Judge Donahoe and all citizens when performing the functions of their positions.  Defendants owe a duty of care to Judge Donahoe with respect to conducting criminal and/or civil investigations and prosecutions.

306.    Defendants are legally responsible for the management of the civil and/or criminal investigation system in Maricopa County, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control.  Their responsibility includes making certain that such policies, procedures, and protocols satisfy all federal and state standards.

307.    Defendants are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control.  This responsibility includes making certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

308.    Defendants breached their duties owed to Judge Donahoe, as alleged in this Complaint, by (*inter alia*), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility

51

for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.

309.    Defendants' breaches of their duties owed to Judge Donahoe directly and proximately caused Plaintiffs to suffer damages in an amount to be proven at trial.

310.    The acts and omissions of Sheriff Arpaio, Hendershott, Thomas, and Aubuchon acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

## COUNT X
### Gross Negligence (All Defendants)

311.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

312.    Defendants have both statutory and common law duties of care to Judge Donahoe and all citizens when performing the functions of their positions, including the duty of care with respect to conducting criminal and/or civil investigations and prosecutions.

313.    Defendants are legally responsible for the management of the civil and/or criminal investigation system in Maricopa County, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.   Their responsibility includes making certain that such policies, procedures, and protocols satisfy all federal and state standards.

314.    Defendants are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control.   This responsibility includes making

52

certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

315.    Defendants were grossly negligent in breaching their duties owed to Judge Donahoe, as alleged in this Complaint, by (*inter alia*), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control.

316.    Defendants' breached their duties with actual or constructive knowledge, or with reckless disregard that their acts and/or omissions would result in harm to Judge Donahoe.

317.    Defendants' gross negligence directly and proximately caused Plaintiffs damages in an amount to be proven at trial.

318.    The acts and omissions of Sheriff Arpaio, Hendershott, Aubuchon, and Thomas acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

## COUNT XI
### Intrusion of Seclusion/Invasion of Privacy (All Defendants)

319.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

320.    As alleged herein, Defendants intentionally released the address of Judge Donahoe's personal residence on the internet and to a process server who had been previously prosecuted for threatening to kill Judge Donahoe.

321.   By their reprehensible conduct, Defendants intended to cause emotional distress and physical injury and harm to Judge Donahoe and his family, without justification.

322.   As a direct and proximate result of the conduct described herein, Judge Donahoe suffered irreparable harm, including damage to his and his family' sense of safety and privacy, emotional distress, and physical injury and/or harm.

323.   The individual Defendants' conduct was done with a conscious intent to harm Judge Donahoe or with reckless disregard to the possibility that such harm would result.  Defendants acted deliberately, overtly, and dishonestly.

324.   The acts and omissions of Sheriff Arpaio, Hendershott, Thomas, and Aubuchon, acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

## COUNT XII
### Conspiracy—(Arpaio, Aubuchon, Hendershott, and Thomas)

325.   Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

326.   The wrongful conduct of the AATH Defendants, as alleged herein, was undertaken pursuant to an agreement or meeting of the minds among the AATH Defendants to act in concert to violate Judge Donahoe's constitutional rights, chill his free speech and retaliate against his exercise thereof, prohibit anticipated judicial rulings, and to intimidate, harass, and exact revenge for prior judicial conduct.

327.   During at least part of the time in which the acts of conspiracy were engaged in, the AATH Defendants were acting outside the course and scope of their employment because they were acting solely to further their own personal and political interests in a manner that was actually detrimental to their respective employers.

54

328.   The AATH Defendants' acts and/or omissions as alleged herein to defame, pursue and conduct the criminal and RICO "investigations" and prosecutions of Judge Donahoe, were undertaken pursuant to a conspiracy among the AATH Defendants to cause injury to Judge Donahoe and to violate Judge Donahoe's constitutional rights.

329.   As a direct and proximate cause of the AATH Defendants' conspiracy, Judge Donahoe was damaged as set forth herein and his constitutional rights were violated.

330.   The acts and omissions of the AATH Defendants in furtherance of their conspiracy, acting in their official capacities and under color of law, were malicious and/or in reckless disregard of Judge Donahoe's rights.

331.   The acts and omissions of the AATH Defendants acting in their individual capacity and under color of law as alleged herein, were to further their personal and political agendas and were malicious, punitive, and in reckless disregard of Judge Donahoe's rights.

332.   As a result, punitive damages in an amount to be determined by a jury should be awarded against the AATH Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

### **JURY TRIAL**

333.   Plaintiffs hereby request a trial by jury.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for damages for judgment, jointly and severally, against Defendants as follows:

(a)     General damages in an amount to be proven at trial;

(b)   Punitive damages in an amount deemed just and reasonable as to the causes of action alleged herein;

(c)   Costs and attorneys' fees against all Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

(d)   Treble damages and attorneys' fees against all Defendants as to the causes of action alleged under 18 U.S.C. § 1961, *et seq*. and A.R.S. § 13-2301, *et seq*.

(e)   The costs of litigation;

(f)   All remedies provided by 42 U.S.C. § 1983, 18 U.S.C. § 1961, *et seq*., and A.R.S. § 13-2301, *et seq*.; and

(g)   Such other and further relief which may seem just and reasonable under the circumstances.

RESPECTFULLY SUBMITTED this 11th day of April, 2011.

**STINSON MORRISON HECKER LLP**

By:   s/ Michael C. Manning
Michael C. Manning
Leslie E. O'Hara
M. Elizabeth Nillen
Stefan M. Palys
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for Plaintiffs

56

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2011, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to the following ECF participants:

Daryl A. Audilett, Esq.
KIMBLE, NELSON, AUDILETT & KASTNER, PC
335 N. Wilmot, Suite 500
Tucson, AZ  85711-2635
*Attorneys for Defendants Arpaio*

Donald Wilson, Esq.
BROENING, OBERG, WOODS & WILSON, PC
1122 E. Jefferson
Phoenix, Arizona 85036
*Attorneys for Defendants Thomas*

James P. Mueller, Esq.
MUELLER & DRURY, P.C.
8110 E. Cactus Road, Suite 100
Scottsdale, AZ  85260
*Attorneys for Defendants Aubuchon and Pestalozzi*

Barry Markson, Esq.
THOMAS THOMAS & MARKSON P.C.
2700 N. Central Avenue, Suite 800
Phoenix, AZ  85006
*Attorneys for Defendants Hendershott*

Victoria L. Orze, Esq.
HINSHAW & CULBERTSON, LLP
3200 N. Central Avenue, Suite 800
Phoenix, AZ  85012
*Attorneys for Defendant William Montgomery*

Steven A. LaMar, Esq.
BEER & TOONE, P.C.
76 E. Mitchell Drive
Phoenix, AZ  85006
*Attorneys for Defendant Maricopa County*

By:   s/ Kathleen Kaupke