1   **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   Gary Donahoe and Cherie Donahoe,        )   Lead No. CV10-2756-PHX-NVW
    husband and wife,                       )
10                                          )   **Consolidated with:**
                 Plaintiffs,                )
11                                          )
                                            )
12  v.                                      )
                                            )
13                                          )
    Sheriff Joseph Arpaio and Ava           )
14  Arpaio, husband and wife; et al.,       )
                                            )
15              Defendants.                 )
                                            )
16  Susan Schuerman,                        )   No. CV10-2757-PHX-NVW
                                            )
17               Plaintiff,                 )
                                            )
18  v.                                      )
                                            )
19                                          )
    Sheriff Joseph Arpaio and Ava           )
20  Arpaio, husband and wife; et al.,       )
                                            )
21              Defendants.                 )
22  Sandra Wilson and Paul Wilson,          )   No. CV10-2758-PHX-NVW
    husband and wife,                       )
23                                          )
                 Plaintiffs,                )
24                                          )
                                            )
25  v.                                      )
                                            )
26  Sheriff Joseph Arpaio and Ava           )
    Arpaio, husband and wife; et al.,       )
27                                          )
                Defendants.                 )
28

| | |
|---|---|
| Conley D. Wolfswinkel, a single man; et al., ) ) ) | No. CV11-0116-PHX-NVW |

Conley D. Wolfswinkel, a single man; et al., )
)
Plaintiffs, )
)
v. )
)
Joseph Arpaio and Ava Arpaio, )
husband and wife; et al., )
)
Defendants. )

No. CV11-0116-PHX-NVW

Stephen Wetzel and Nancy Wetzel, )
husband and wife, )
)
Plaintiffs, )
)
v. )
)
Sheriff Joseph Arpaio and Ava )
Arpaio, husband and wife; et al., )
)
Defendants. )

No. CV11-0262-PHX-NVW

Mary Rose and Earl Wilcox, wife and )
husband, )
)
Plaintiffs, )
)
v. )
)
Sheriff Joseph Arpaio and Ava )
Arpaio, husband and wife; et al.; )
)
Defendants. )

No. CV11-0473-PHX-NVW

Donald T. Stapley, Jr. And Kathleen )
Stapley, husband and wife, )
)
Plaintiffs, )
)
v. )
)
Sherrif Joseph Arpaio and Ava )
Arpaio, husband and wife, et al., )
)
Defendants )

No. CV11-0902-PHX-NVW

| | |
|---|---|
| Barbara Mundell and Anna Baca, | )   No. CV11-1921-PHX-NVW |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | )   **ORDER** |
| Maricopa County, body politic of the State of Arizona, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court are multiple related complaints and motions in this consolidated matter.[1]  Defendants have filed or joined in various motions to dismiss, strike, or request a more definite statement.  For the reasons stated below, the Court will dismiss the pending Donahoe, Schuerman, Wilson, Wetzel, Wilcox, Stapley, and Mundell and Baca complaints.  Plaintiffs will be given leave to file amended complaints by November 21, 2011.

## I.   Background

### A.   Donahoe, Schuerman, Wilson, Wetzel, Wilcox, and Stapley Complaints

These actions arise from widely reported controversies between members of the Maricopa County Sheriff's Office and County Attorney's office and members of the Maricopa County Board of Supervisors, Maricopa County staff members, and judges of the Maricopa County Superior Court.  At all relevant times, Wilcox and Stapley were members of the Maricopa County Board of Supervisors.  Donahoe was the presiding criminal judge for the Maricopa County Superior Court.  Wilson was Deputy County Manager.  Schuerman was Stapley's Deputy Administrator, and Wetzel was the Chief Information Officer for Maricopa

---

[1]In total, there are thirty-one pending motions: twenty-three filed in the lead case, Donahoe (Docs. 82-98, 112, 138, 140, 142, 144-45, CV10-2756); five filed in the Wilcox case (Docs. 14, 17, 18, 21, 22, CV11-0473); and three filed in the Wolfswinkel case (Docs. 20, 23, 26, CV11-0116).

County.  Arpaio was the Maricopa County Sheriff and head of the Maricopa County Sheriff's Office, and Hendershott was the Deputy Chief.  Thomas was the County Attorney for Maricopa County and Aubuchon was a Deputy County Attorney.

Plaintiffs' claims all relate generally to Defendants' allegedly unlawful actions of pursuing, over a period of several years, various civil lawsuits, criminal prosecutions, and investigations against Plaintiffs.  The complaints allege a variety of counts, including abuse of process, malicious prosecution, intentional and negligent infliction of emotional distress, defamation, libel, false light invasion of privacy, negligence, gross negligence, racketeering, and various violations of the Arizona Constitution.  The complaints also raise several claims under 42 U.S.C. §1983, including law enforcement retaliatory conduct, abuse of process, abuse of power, unconstitutional policies, customs, and failure to train, equal protection and substantive due process violations, and conspiracy to violate constitutional rights.  Further elaboration of the details underlying the various complaints is not necessary at this stage in the proceedings.  Due to the repetitive nature of many of the claims raised in the complaints and the general scope of the motions, Plaintiffs and Defendants will often be referred to collectively in this order.

### B.    Wolfswinkel Complaint

The facts underlying the Wolfswinkel complaint, while tangentially connected to the disputes between the other parties in this consolidated matter, relate to one specific incident. The Wolfswinkel Plaintiffs,[2] referred to throughout this order collectively, allege that Defendants orchestrated an unlawful search and seizure of their business (collectively "W Holdings") on January 22, 2009.  Plaintiffs allege that Arpaio and Thomas "made the policy decision to fabricate a claim of misconduct in W Holdings' dealings with Stapley[] in order

_____

[2]References to "Plaintiffs" in this section refer only to the Wolfswinkel Plaintiffs.

to garner media coverage that would assist in their political war against Stapley and [the Maricopa County Board of Supervisors]." (Doc. 1 at 9, CV11-0116.) Pursuant to this policy, Plaintiffs contend that Hendershott and Aubuchon collaborated with detectives Roshetko and Halverson to prepare a search warrant and affidavit for the search of W Holdings' offices, ostensibly to uncover information related to unlawful dealings between Plaintiffs and Stapley. Plaintiffs further allege that Arpaio and Thomas publicized the search warrant and affidavit, leading to the release of Conley, Brandon, and Ashton Wolfswinkel's birth dates and social security numbers.

Plaintiffs contend that their business dealings with Stapley were all legitimate, that Stapley properly recused himself from any matters before the Board involving Plaintiffs, and that there is no evidence supporting any allegation that Plaintiffs were involved in fraudulent schemes with or bribery of Stapley. Rather, Plaintiffs charge Defendants with intentionally fabricating the claims against them and pursuing the search warrant and conducting the search even though they knew there was no probable cause to justify these actions. (*Id.* at 6, 9.) Plaintiffs allege that the search and seizure of their offices and negative publicity stemming from the search disrupted their business and caused significant emotional distress and financial loss. Plaintiffs claim violations of their rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, including "the right to be free from unreasonable search and seizure, and the rights to freedom of speech, assembly and association by virtue of falsely and publicly accusing [Plaintiffs] of illegal conduct and association with Stapley." (*Id.* at 12.) They seek redress under 42 U.S.C. §1983. (*Id.*)

**C.   Procedural Background**

The Court heard oral argument on all of the pending motions on September 2, 2011 (Doc. 224, CV10-2756). At the hearing, some Plaintiffs withdrew or conceded some of the causes of action raised in their complaints, including claims for gross negligence, negligent

infliction of emotional distress, and substantive due process, as well as the "pattern of unlawful activity" claim in the Stapley complaint and the Arizona constitutional freedom of religion claim in the Wilcox complaint.

## II.   Legal Standard

### A.   Rule 8, Federal Rules of Civil Procedure

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint having the factual elements of a cause of action present but scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a). *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988). A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). "Something labeled a complaint . . . , yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180. A complaint that is "argumentative, prolix, replete with redundancy . . . [and] consists largely of immaterial background information" is subject to dismissal. *Id.* at 1177.

### B.   Rule 12(b)(6), Federal Rules of Civil Procedure

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  The principle that allegations in a complaint are accepted as true does not apply to legal conclusions or conclusory factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct.  *Id.*  ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).

## III.   Analysis

### A.   Donahoe, Schuerman, Wilson, Wetzel, Wilcox, and Stapley Complaints

Because of the overlapping nature of the claims and the various motions to dismiss, and because all of the complaints (except the Wolfswinkels') will be dismissed under Rule 8 with leave to amend, for ease of reference Plaintiffs and Defendants will often be referred to generally in the discussion below.

#### 1.   Motions to Dismiss Under Fed. R. Civ. P. 8

Defendants have moved to dismiss Plaintiffs' complaints on the basis of Rule 8.[3] Defendants claim that all of the complaints should be dismissed for failing to comply with Rule 8 because the complaints are overly long, contain immaterial, argumentative,

---

[3] Defendant Arpaio has filed motions to dismiss only on the basis of Rule 8, not Rule 12(b)(6).  He has alternatively request a more definite statement or that the complaints be stricken.  Defendant Hendershott has joined in Arpaio's motions. Because the complaints will be dismissed for failure to comply with Rule 8, Arpaio's requests to strike or for a more definite statement need not be addressed.  The remaining Defendants have moved to dismiss on the basis of Rule 8, as well as Rule 12(b)(6).  The Rule 12(b)(6) motions will be discussed in the following section.

conclusory, and inflammatory material, and fail to sufficiently put Defendants on notice of the specific claims against them because the complaints do not identify which factual allegations support which causes of action. The Court will treat all of the arguments raised in support of dismissing Plaintiffs' complaints on the basis of Rule 8 collectively here.

The Donahoe, Schuerman, Wilson, Wetzel,Wilcox, and Stapley complaints do not comply with the pleading requirements laid out in the Federal Rules of Civil Procedure. The complaints contain inflammatory language that serves no proper purpose. While the events giving rise to the causes of action took place over a number of years and involved multiple actors, and a certain amount of detail is thus required to explain the circumstances underlying the complaints sufficiently, the complaints should only include information that is directly relevant to the specific causes of action raised.

Further, some of the charges raised in the complaints may be inherently inflammatory; however, the pleading process is not to be compromised by the inclusion of immaterial facts or accusations. In their current form, the complaints all contain material that is inappropriate in a complaint. For example, many of the complaints quote extensively from newspaper articles or list detailed biographical information about the parties that are too far removed from any of the causes of action in Plaintiffs' complaints. A complaint should contain a short and plain statement, using simple, concise, and direct allegations which establish Plaintiffs' right to relief. *See* Fed. R. Civ. P. 8. The pleading process is not an opportunity for the parties to pursue other objectives or to indulge in general disparagement of other parties. Lengthy, irrelevant narrative material is not justified, exceeds the privileges of court pleadings, and should not be included in any future pleadings. The parties are admonished that future pleadings shall be limited to concise recitations of relevant facts and law. Language that is irrelevant, inflammatory, or included for an improper purpose will be stricken from future pleadings. *See McHenry*, 84 F.3d at 1177. Having sustained

Defendants' objections, the Court will view with skepticism any future challenge to the amended complaints that they do not say enough.

Finally, perhaps the most significant deficiency in the complaints is that they fail to connect the facts asserted with the specific causes of action and specific defendants listed. Most of the complaints contain long narratives alleging a multitude of wrongdoings, but then merely list the causes of action without specifying which particular facts support each claim. Simply asserting that all of the previously stated facts and allegations are incorporated into each cause of action is insufficient notice to each defendant of each claim asserted against that defendant. Without specifically linking particular actions to particular alleged violations of Plaintiffs' rights, it is impossible to determine what alleged wrongdoing each Defendant is being charged with and why Plaintiffs are entitled to relief. In their amended complaints Plaintiffs shall clearly establish within separately labeled causes of action which factual allegations are linked to which causes of action by referring to specific paragraphs in the complaint or otherwise. This will allow Defendants to frame proper responses and the Court to assess the sufficiency of the claims asserted.

For these reasons, Defendants' motions to dismiss these complaints for failing to comply with Rule 8 will be granted. Plaintiffs will be given leave to file amended complaints by November 21, 2011.

Further, on the Court's own motion, the Mundell and Baca Second Amended Complaint (Doc. 1-1, CV11-1921) will also be dismissed under Rule 8, with leave to amend by November 21, 2011.

## 2.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Although all of the complaints (except Wolfswinkels') will be dismissed for failing to comply with Rule 8, some Defendants have also requested dismissal of certain of Plaintiffs' claims under Rule 12(b)(6). Because amended complaints will be filed, many of

the challenges to the complaints need not be addressed at this time.[4]  However, some can be addressed now.

### i.    Thomas and Aubuchon: Absolute Prosecutorial Immunity

Both Thomas and Aubuchon[5] have moved to dismiss Plaintiffs' complaints on the grounds that, as prosecutors, their actions are absolutely protected by the doctrine of prosecutorial immunity.  This immunity enables prosecutors to "function independently and effectively without fear of intimidation or harassment." *Lacey v. Maricopa County*, 649 F.3d 1118, 1126 (9th Cir. 2011).  Absolute immunity is afforded to prosecutors to "reflect the [dual] concern[s] that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*

However, absolute immunity does not attach to every action taken by a prosecutor. *See Forrester v. White*, 484 U.S. 219, 227 (1988) (absolute immunity "is justified ... by the functions it protects and serves, not by the person to whom it attaches").  Prosecutors are absolutely immune from suit only when they are engaged in "prosecutorial acts[.]" *Lacey*, 649 F.3d at 1127.  Prosecutorial acts are those that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984 (1976).  Where a  prosecutor is not acting as "'an officer of the court, . . . but is instead engag[ing]

---

[4]For example, some Plaintiffs have included a count for defamation. (*See, e.g.*, Doc. 35, CV10-2757, at 35.)  However, these counts fail to specifically identify which particular statements made by which particular defendants are alleged to be defamatory.  In any future claim for defamation, Plaintiffs must identify in their count for defamation the exact defamatory statements alleged, and which party made the statements.

[5]Maricopa County has also asserted the immunity of its officers as support for its various motions to dismiss. (*See*, *e.g.*, Doc. 140, CV10-2756.)

in other . . . investigative or administrative tasks[,]" he has no absolute immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S. Ct. 855 (2009) (quoting *Imbler*, 424 U.S. at 43). Where a prosecutor is "'performing investigatory or administrative functions, or is essentially functioning as a police officer or detective[,]'" he is entitled only to qualified immunity for his actions. *Lacey*, 649 F.3d at 1127 (quoting *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Thus, "the nature of the function performed" determines whether absolute immunity attaches to a particular activity. *Forrester*, 484 U.S. at 229. "While the distinction between the roles of 'prosecutor' and 'investigator' [or administrator] is not always clear,'" case law marks many of the boundaries. *Lacey*, 649 F.3d at 1127 (quoting *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 711 (9th Cir. 2010)). For example, it is well established that certain prosecutorial functions, such as the "decision to initiate a prosecution[,]" *Van de Kamp*, 129 S. Ct. at 860, are intimately associated with the judicial phase of the criminal process and thus entitled to absolute immunity. Further, absolute immunity attaches to "the types of activities . . . which [] necessarily require legal knowledge and the exercise of related discretion." *Id.* at 862. However, "investigatory acts" such as "'evidence gathering and witness interviewing . . . [which are] normally performed by a detective or police officer" are not entitled to absolute immunity. *Lacey*, 649 F.3d at 1127 (quoting *Cousins*, 568 F.3d at 1068)

Here, Plaintiffs' complaints will be dismissed for failing to comply with Rule 8, in large part because the complaints do not sufficiently link specific alleged wrongdoing by Aubuchon and Thomas to particular causes of action. Rather, the broad sweep of the complaints seem to charge Thomas and Aubuchon with wrongdoing on the basis of a number of activities, some of which are clearly prosecutorial and others of which may be more

investigative, administrative, or otherwise not "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Therefore, the Court cannot yet say what conduct is absolutely privileged and what is not.

Nonetheless, the Court can identify some activities at either end of the spectrum to which immunity clearly does or does not attach. For example, the complaints allege wrongdoing with respect to the decision to bring of criminal charges against some of the Plaintiffs. (*See, e.g.*, Doc. 1, CV11-0902.) Because the decision to initiate and pursue a criminal prosecution is prosecutorial and protected by absolutely immunity, *see Imbler*, 424 U.S. at 430, claims based on that would have to be dismissed. Similarly, nothing in the case law presented suggests that absolute prosecutorial immunity would extend to a prosecutor's initiation of civil racketeering proceedings; rather, absolute immunity is tied specifically to acts which are "intimately associated with the judicial phase of the *criminal process*." *Id.* (emphasis added). Defendants' motions to dismiss Plaintiffs' claims which are based on Thomas and Aubuchon's actions related to filing the federal civil racketeering complaint are therefore unsupported.

For the Court to determine whether conduct by Thomas or Aubuchon is entitled to absolute immunity, the amended complaints must allege which exact conduct by Thomas and Aubuchon forms the basis for which specific causes of action. Similarly, any future motions to dismiss based on absolute prosecutorial immunity must identify the exact conduct to which absolute immunity purportedly attaches.

### ii.    Maricopa County: Liability for Actions of County Officials

Maricopa County has moved to dismiss several of Plaintiffs' claims on the basis that it is "not liable for the wrongful acts of County officials arising from the exercise of their statutory duties." (*E.g.*, Doc. 82 at 1). The County argues that it "does not have express or implied discretion over the officers of the County, including the Sheriff and the County

Attorney, or their respective offices[,]" and that the only discretion the County has over these officers is fiscal. (*Id.* at 6). *See* A.R.S. §§ 11-441, 11-532. Accordingly, the County argues that it cannot be vicariously liable for the actions of the Sheriff and the County Attorney since they "arose from duties imposed by law and not the County." (Doc. 82 at 6.)

The County relies on *Fridena v. Maricopa County*, 18 Ariz. App. 527, 504 P.2d 58 (Ariz. App. 1972), and its progeny for the proposition that it is not liable for actions taken by County officers under a statutory mandate. In *Fridena*, the Arizona Court of Appeals held the County could not be liable for a deputy sheriff's tortious conduct in serving and executing a writ of restitution. The court noted that the Arizona Supreme Court had "never been called upon to determine whether a county is automatically liable for every tort committed by its deputies[.]" *Id.* at 530. It further acknowledged that the "County exercises supervision of the official conduct of the Sheriff" since the Sheriff is a county officer. *Id.* However, citing *Moore v. Maricopa County*, 11 Ariz. App. 505, 466 P.2d 56 (Ariz. App. 1970), wherein the court "found no tort liability as to Maricopa County in the operation of a jail . . . for the reason that the County had no right to control[,]" *Fridena*, 504 P.2d at 62, and the American Jurisprudence treatise on municipal law and tort liability, the court held that "in the instant case, the County, having no right of control over the Sheriff or his deputies in service of the writ of restitution, is not liable under the doctrine of Respondeat superior for the Sheriff's torts." *Id.* Several decisions have applied *Fridena* to find that a county was not liable for actions of its officers under the doctrine of respondeat superior where the officers' duties were imposed by law and not the county. *See*, *e.g.*, *Yamamoto v. Santa Cruz Cty. Bd. Of Sup'rs*, 124 Ariz. 538, 540 (Ariz. App. 1979); *Hernandez v. Maricopa Cty.*, 138 Ariz. 143, 146 (Ariz. App. 1983); *Dimmig v. Pima Cty.*, 2009 WL 3465744, at *1 (Ariz. App. 2009).

The Arizona Supreme Court has not addressed whether the *Fridena* line of cases is

correct. While federal courts must follow the decisions of a state's highest court on questions of that state's law, *see Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 154 (9th Cir. 1992), where "the state's highest court has not decided an issue, the task of the federal courts is to predict how the state court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986).  In so predicting, federal courts consider intermediate appellate state court decisions. *Id.*  However, because federal courts "must take into account 'all available data,' the decision of a [state] intermediate appellate court is not controlling." *Davis v. Spier*, 2008 WL 1746165, at *7 (D. Ariz. 2008) (citing  *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1135 (E.D. Cal. 2007) (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982)) and 19 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4507, at 141 (1996) ("[T]o give state [intermediate] court decisions more binding effect . . . would undermine the ability . . . to ensure that the outcome . . . be substantially the same as it would be if tried in a state court and subjected to that system's appellate process.")).

Because Plaintiffs' complaints will be dismissed on other grounds, the Court need not now decide the correctness of *Fridena*.  The issue here is not whether Maricopa County taxpayers will have to pay any judgment ultimately entered against the County's officers – they will.  Rather, the issue here is which entities or individuals are properly named as Defendants in this action.  It is clear that Plaintiffs may sue the Sheriff and the former County Attorney and be paid from county funds.  *See* A.R.S. § 11-444(b) ("The board shall . . . set apart from the expense fund of the county a sum sufficient to pay the estimated traveling and *other expenses of the sheriff* during the month.") (emphasis added) and A.R.S. § 11-444(c) ("If the sum so paid over is insufficient to pay the expenses incurred during the month, the excess shall be allowed and paid as other claims against the county.").

What is less clear is whether *Fridena* correctly holds that judgment may not be

entered against the County even though by statute the County must pay any adjudicated liability. *Id.* Dismissing the County on the basis of *Fridena* does not seem well-connected to the County's actual legal obligations to pay for judgments against its officers. In light of the absence of controlling state court authority, it is open to doubt whether *Fridena* is correct.

In any amended complaints, Plaintiffs may choose to restate their claims against Maricopa County, and the County may re-urge its position under *Fridena* in a future motion. Plaintiffs have all sued proper defendants for recovery of county funds on the state law claims– the Sheriff and the former County Attorney–so it will achieve nothing but run up attorney fees for them to fight over whether they may also sue the County. And it will achieve nothing but run up attorney fees for the County to fight over it either. Nonetheless, the Court will decide the question if it is required in the future.

## B.     Wolfswinkel Complaint[6]

The three motions filed with respect to the Wolfswinkel complaint are considered separately. (Docs. 20, 23, 26, CV11-0116.) Thomas and Aubuchon have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on the basis of absolute prosecutorial immunity. Hendershott and Aubuchon have moved to dismiss the Wolfswinkel Complaint under Fed. R. Civ. P. 12(b)(6) on the basis of qualified immunity. Hendershott and Aubuchon have also moved to dismiss the complaint under Fed. R. Civ. P. 8 for failure to plead with enough specificity.

### 1.     Motions Under Fed. R. Civ. P. 8

Hendershott and Aubuchon argue that the Wolfswinkel complaint does not allege enough facts against them specifically to put them on notice of their alleged wrongdoing. Rather, they contend that Plaintiffs' allegations focus on the claimed wrongdoings of

---

[6] References to Plaintiffs in this section refer to solely to the Wolfswinkel Plaintiffs.

Thomas, Arpaio, Halverson, and Roshetko, but do not sufficiently state Hendershott or Aubuchon's roles in the allegedly unlawful search and seizure of Plaintiffs' property.

The Ninth Circuit recently clarified the pleading requirements in the context of a motion to dismiss, noting that "the allegations in a complaint...must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it[,]" and that the "allegations must be sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011). Plaintiffs' complaint is sufficiently well-pled; it puts Hendershott and Aubuchon on fair notice of the nature of the claims against them, and the allegations against them are plausible.

With respect to Hendershott and Aubuchon, Plaintiffs allege in paragraph thirty-four of their complaint that "Arpaio and Thomas were aided, assisted, and abetted in the execution of [the previously enumerated unlawful] policies, practices, and customs by Hendershott in his role as Deputy Chief of the Sheriff's Office and by Aubuchon in her role as Deputy County Attorney."   (Doc. 1 at 5, ¶ 34, CV11-0116.)   Further, Plaintiffs allege that Hendershott and Aubuchon were involved with Thomas and Arpaio's decision "to fabricate a claim of misconduct in W Holdings' dealings with Stapley[] in order to garner media coverage that would assist in [Thomas and Arpaio's] political war against Stapley and [the Maricopa County Board of Supervisors." (*Id.* at 9, ¶¶ 61-62.)   Finally, Plaintiffs specifically allege that Hendershott and Aubuchon collaborated with Roshetko and Halverson in preparing the invalid search warrant and affidavit. (*Id.* at 9, ¶ 65.)

While Plaintiffs may not have pled numerous specific instances of wrongdoing by Hendershott and Aubuchon, they have sufficiently alleged that Hendershott and Aubuchon assisted and abetted Arpaio and Thomas's decision to allegedly fabricate and pursue claims against Plaintiffs, which form the basis of the complaint.  Because Plaintiffs have alleged that

- 16 -

Hendershott and Aubuchon were intimately involved with both the decision-making process by Arpaio and Thomas and the specific actions undertaken by Halverson and Roshetko, it is plausible that Hendershott and Aubuchon did take specific actions related to the investigation targeting Plaintiffs and the search of their offices. *See Starr*, 633 F.3d at 1205 ("Rule 8(a) 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations.") (quoting *Twombly*, 550 U.S. at 556). Accordingly, Hendershott and Aubuchon's motions to dismiss the Wolfswinkel complaint on the basis of Rule 8 (Docs. 20, 26, CV11-0116) will be denied.

## 2.    Motions Under Fed. R. Civ. P. 12(b)(6)

Aubuchon and Thomas have also moved to dismiss Plaintiffs' complaint on the grounds that they are immune from suit. To survive qualified or absolute immunity at this stage of the proceeding, a complaint must simply allege enough facts to state a claim that is plausible on its face and outside of immunity.

### i.    Absolute Immunity

As discussed above in Section III(A)(2)(i), absolute prosecutorial immunity attaches only to those actions taken by a prosecutor that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Where a prosecutor undertakes "administrative duties and...investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[,]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993), those activities are not entitled to absolute immunity. Rather, when a prosecutor "'functions as an administrator, rather than as an officer of the court' he is entitled only to qualified immunity." *Id.* at 273.

In this instance, taking the well-pled facts of the complaint as true, the Court must determine whether Thomas and Aubuchon's involvement in the pursuit of a search warrant

that they knew was not supported by probable cause, and directing a search be conducted on that invalid warrant, is entitled to absolute prosecutorial immunity.  Several cases are instructive.  In *Burns*, the United States Supreme Court considered whether a prosecutor's action of giving advice to the police was so "closely associated with the judicial process" as to warrant absolute immunity.  500 U.S. at 495.  The prosecutor had advised police officers that they had probable cause to arrest a person suspected of committing a shooting.  *Id.* at 483.  The court found that "the prosecutorial function of giving legal advice to the police" was not protected by absolute immunity.  *Id.* at 496.

In *Buckley*, the court rejected absolute immunity for a prosecutor's pre-indictment fabrication of evidence.  509 U.S. at 272-76.  The court noted that "the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial...after a decision to seek an indictment has been made" constitutes immune prosecutorial activity.  *Id.* at 273. However, the prosecutor was not entitled to absolute immunity in actions taken related to determining whether a footprint found at the scene of a crime matched the petitioner's footprint.  *Id.* at 275.  The court gave weight to the fact that the prosecutors did "not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings" at the time they undertook their activity.  *Id.* at 274.  As such, the prosecutors' "mission ... was entirely investigative in character" and they were accordingly not entitled to absolute immunity.  *Id.*  Of note, the court added that "if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.'" *Id.* at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608-09 (7th Cir. 1973)).

Plaintiffs have sufficiently alleged that Thomas and Aubuchon took actions which are not entitled to absolute immunity.  In allegedly conspiring to pursue a search warrant without probable cause for a search where no criminal proceedings were pending, Thomas and

Aubuchon were functioning more like police officers or detectives than prosecutors. The actions alleged which underlie the complaint here are much more similar in character to the "weapons raid" hypothetical in *Buckley* than to activity closely associated with the judicial process. *Id.* at 273. Ordering a search of an office without probable cause is not simply related to "the professional evaluation of the evidence assembled by the police[.]" *Id.* Rather, as pled, the decision to obtain a search warrant and conduct a search was at best out of a general hope of finding evidence of a crime. Such a task is investigative in nature and expressly forbidden by the Fourth Amendment. Indeed, no criminal charges were pending against Plaintiffs or ever brought against them. Nor did the pending charges against Stapley relate to this search.

The actions alleged are thus "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]" *Id.* at 268. As such, Plaintiffs have sufficiently alleged that Thomas and Aubuchon's activities are beyond the protection of absolute immunity. Similarly, to the extent Plaintiffs allege that Thomas and Aubuchon's role in the events was in advising detectives on procuring a search warrant, such advising is also not entitled to absolute immunity. *See Burns*, 500 U.S. at 496. Accordingly, Thomas and Aubuchon's motions to dismiss the Wolfswinkel complaint on the basis of absolute prosecutorial immunity (Docs. 20, 23, CV11-0116) will be denied.

### ii.    Qualified Immunity

Under the doctrine of qualified immunity, most government officials "are not subject to damages liability for the performance of the discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley*, 509 U.S. at 268 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, to escape qualified immunity at the pleadings stage, a plaintiff need only plead "facts showing (1) that the official violated a statutory or

constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 ( 2011) (quoting *Harlow*, 437 U.S. at 818).

Here Plaintiffs allege that Hendershott and Aubuchon participated in obtaining and ordering the execution of a search warrant that they knew was not supported by probable cause. The right to be free from unreasonable searches and seizures is a clearly established constitutional right. *See* U.S. Const. amend. IV. Conducting a search on a warrant that is known to lack probable cause is a clear violation of that constitutional right. *See Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010) (noting that "a search or seizure pursuant to an invalid warrant constitutes an invasion of the constitutional rights of the subject of the search"). Additionally, prior cases have rejected claims for qualified immunity where an officer has sought a warrant knowing there was no probable cause to support it, or intentionally misrepresenting the facts in order to procure a warrant. *See, e.g.*, *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) ("[N]o reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant.").

Although Plaintiffs do not allege that Hendershott and Aubuchon actually conducted the search of Plaintiffs' office or obtained the warrant themselves, Plaintiffs have sufficiently alleged in their complaint that Hendershott and Aubuchon acted dishonestly with regard to the basis for probable cause in seeking a warrant. (Doc. 1 at ¶ 64-67.) Indeed, Plaintiffs allege that the warrant to search their business was obtained in spite of Hendershott and Aubuchon's knowledge that there was no probable cause to support such an action, and that the detectives who presented false and misleading information to the judge did so in collaboration with Hendershott and Aubuchon in order to obtain the search warrant. (*Id.*) Whether Hendershott and Aubuchon will be found to have actually participated in the alleged

events in such a way remains to be seen, but at this stage in the proceedings Plaintiffs have alleged sufficient facts to allow the case to move forward.

For these reasons, Hendershott and Aubuchon's motions to dismiss the complaint on the basis that their actions were protected by qualified immunity (Docs. 20, 26, CV11-0116) will be denied.  The Wolfswinkel matter shall proceed on the currently pending complaint.

Additionally, Aubuchon's other assertions that the Wolfswinkel complaint fails to state a plausible claim for relief are summary and insufficient.  Her challenges to the complaint on these grounds will also be denied.

## IV.   Leave to Amend

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Plaintiffs – with the exception of the Wolfswinkel Plaintiffs, whose complaint will not be dismissed – will be given an opportunity to amend their complaints to make clear their allegations.  Plaintiffs are warned that if their amended complaints fail to comply with the Court's instructions in this order, their actions may be dismissed.  *See McHenry*, 84 F.3d at 1177 (affirming dismissal with prejudice of prolix, argumentative, and redundant amended complaint that did not comply with Rule 8(a)); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of amended complaint that was "equally as verbose, confusing, and conclusory as the initial complaint"); *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (affirming dismissal without leave to amend of second complaint that was "so verbose, confused and redundant that its true substance, if any, [was] well disguised").]

Plaintiffs' time to amend will be extended to November 21, 2011.  Defendants shall file their answers or responsive pleadings by December 15, 2011.  If Defendants choose to file further motions to dismiss, each Defendant shall respond to all of Plaintiffs' complaints collectively in one motion.  If further motions to dismiss are filed, Plaintiffs shall file their

responses by January 13, 2012.  Each Plaintiff shall similarly respond to all arguments raised in Defendants' motions  collectively in one responsive brief.  Defendants' reply briefs shall be filed by January 27, 2012.

Because of the need to process these eight consolidated cases in unison, the Court is not disposed to extend this scheduled.  The parties are encouraged, as they have been before, to pursue alternative dispute resolution, but the case will no longer be delayed for that reason.

**IT IS THEREFORE ORDERED** that the following motions filed in **Donahoe et al. v. Arpaio et al. (CV10-2756)** are **GRANTED**:

**Doc. 87** - Motion to Dismiss Party Sheriff Joseph and Ava Arpaio from Stephen Wetzel and Nancy Wetzel's First Amended Complaint

**Doc. 88** - Motion to Dismiss Party Ann and Andrew Thomas from the Donahoe Plaintiffs' First Amended Complaint for Violation of Rule 8

**Doc. 89** - Motion to Dismiss Party Ann and Andrew Thomas from the Schuerman Plaintiff's First Amended Complaint for Violation of Rule 8

**Doc. 90** - Motion to Dismiss Party Sheriff Joseph and Ava Arpaio from Sandra Wilson and Paul Wilson's First Amended Complaint

**Doc. 91** - Motion to Dismiss Party Sheriff Joseph and Ava Arpaio from Susan Scherman's First Amended Complaint

**Doc. 92** - Motion to Dismiss Party Ann and Andrew Thomas from the Wetzel Plaintiffs' First Amended Complaint for Violation of Rule 8

**Doc. 93** - Motion to Dismiss Party Ann and Andrew Thomas from the Wilson Plaintiffs' First Amended Complaint for Violation of Rule 8

**Doc. 94** - Motion to Dismiss Party Sheriff Joseph and Ava Arpaio from Gary Donahoe and Cherie Donahoe's First Amended Complaint

**Doc. 138** - Motion to Dismiss Party Sheriff Joseph and Ava Arpaio from Donald

Stapley and Kathleen Stapley's First Amended Complaint

**Doc. 144** - Motion to Dismiss Party Ann and Andrew Thomas re the Stapley Plaintiffs' First Amended Complaint for Violation of Rule 8

**IT IS FURTHER ORDERED** that the following motions filed in **Donahoe et al. v. Arpaio et al. (CV10-2756)** are **DENIED**:

**Doc. 82** - Motion to Dismiss Counts/Claims: III, V, VIII, IX, X and XII of Plaintiffs Gary and Cherie Donahoe's First Amended Complaint

**Doc. 83** - Motion to Dismiss Counts/Claims: III, V, VIII, IX, X and XI of Plaintiff Susan Schuerman's First Amended Complaint

**Doc. 84** - Motion to Dismiss Counts/Claims: III, VI and VII of Plaintiffs Stephen and Nancy Wetzel's First Amended Complaint

**Doc. 85** - Motion to Dismiss Counts/Claims: III, V, VI, VIII, IX, X and XI of Plaintiffs Sandra and Paul Wilson's First Amended Complaint

**Doc. 86** - Motion to Dismiss Party Lisa Aubuchon and Peter Pestalozzi of Plaintiffs' First Amended Complaint

**Doc. 95** - Motion to Dismiss Counts/Claims: Counts I-VI, VII-X, and XII of the Donahoe Plaintiffs First Amended Complaint for Failure to State a Claim Pursuant to Rule 12(B)(6)

**Doc. 96** - Motion to Dismiss Counts/Claims: Counts I-VI and VIII-XI of the Schuerman Plaintiffs First Amended Complaint for Failure to State a Claim Pursuant to Rule 12(B)(6)

**Doc. 97** - Motion to Dismiss Counts/Claims: Counts I-IV and VI-VII of the Wetzel Plaintiffs First Amended Complaint for Failure to State a Claim Pursuant to Rule 12(B)(6)

**Doc. 98** - Motion to Dismiss Counts/Claims: Counts I-VI and VIII-XI of the Wilson Plaintiffs First Amended Complaint for Failure to State a Claim Pursuant to Rule 12(B)(6)

**Doc. 112** - Motion to Dismiss Party Lisa Aubuchon and Peter R. Pestalozzi of Plaintiffs' First Amended Complaint

**Doc. 140** - Motion to Dismiss Counts/Claims: 1-14

**Doc. 142** - Motion to Dismiss Party Lisa Aubuchon and Peter pestalozzi of Stapley's First Amended Complaint

**Doc. 145** - Motion to Dismiss Counts/Claims: 1-4 and 6-18 of the Stapley First Amended Complaint

**IT IS FURTHER ORDERED** that the following motions filed in **Wilcox v. Arpaio et al. (CV11-0473)** are **GRANTED**:

**Doc. 17** - Motion to Dismiss Party Andrew and Ann Thomas for Violation of Rule 8

**IT IS FURTHER ORDERED** that the following motions filed in **Wilcox v. Arpaio et al. (CV11-0473)** are **DENIED**:

**Doc. 14** - Motion to Dismiss Party Lisa Aubuchon, Peter R. Pestalozzi

**Doc. 18** - Motion to Dismiss Counts/Claims: One-Three; Five-Twelve Based on Absolute Prosecutorial Immunity

**Doc. 21** - Motion to Dismiss Counts/Claims by Maricopa County

**Doc. 22** - Motion for More Definite Statement by Maricopa County

**IT IS FURTHER ORDERED** that the following motions filed in **Wolfswinkel et al. v. Arpaio et al. (CV11-0116)** are **DENIED**:

**Doc. 20** - Motion to Dismiss Party Lisa Aubuchon and Peter R. Pestalozzi

**Doc. 23** - Motion to Dismiss Party Andrew Thomas Based on Prosecutorial Immunity

**Doc. 26** - Motion to Dismiss Party Anna Hendershott and David Hendershott

**IT IS FURTHER ORDERED** that the Second Amended Complaint in **Mundell et al. V. Maricopa County et al. (CV11-1921)** is **DISMISSED** with leave to amend by November 21, 2011.

**IT IS FURTHER ORDERED** that all Plaintiffs, except the Wolfswinkel Plaintiffs, are granted leave to file amended complaints. Amended complaints shall be filed by November 21, 2011.

**IT IS FURTHER ORDERED** that Defendants shall file their answers or responsive pleadings by December 15, 2011. If Defendants choose to file further motions to dismiss, each Defendant shall respond to all of Plaintiffs' complaints collectively in one motion. If further motions to dismiss are filed, Plaintiffs shall file their responses by January 13, 2012. Each Plaintiff shall similarly respond to all arguments raised in Defendants' motions collectively in one responsive brief. Defendants' reply briefs shall be filed by January 27, 2012. Any motion to file overlength briefs must be accompanied by the proposed brief, which will be examined to determine if the additional length is fully justified.

**IT IS FURTHER ORDERED** that all future pleadings be filed in the lead case, No. CV10-2756-PHX-NVW, with a notation to the specific case to which it relates in the caption.

DATED this 28th day of October, 2011.

_____
Neil V. Wake
United States District Judge