1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Gary Donahoe and Cherie Donahoe,        No. CV10-2756-PHX-NVW
    husband and wife,

10                          Plaintiffs,      **CONSOLIDATED WITH:**

11  vs.

12  Sheriff Joseph Arpaio and Ava Arpaio,
    husband and wife; Andrew Thomas and
13  Anne Thomas, husband and wife; Lisa
    Aubuchon and Peter R. Pestalozzi, wife and
14  husband; Deputy Chief David Hendershott
    and Anna Hendershott, husband and wife;
15  Peter Spaw and Jane Doe Spaw, husband
    and wife; Maricopa County, a municipal
16  entity; Jon Does I-X; Jane Does I-X; Black
    Corporations I-V; and White Partnerships I-
17  V,

18                          Defendants.

19

20  Susan Schuerman,                         CV10-2757-PHX-NVW

21                          Plaintiff,

22  vs.

23  Sheriff Joseph Arpaio and Ava Arpaio,
    husband and wife; et al.,
24
                            Defendants.
25

26

27

28

| | |
|---|---|
| Sandra Wilson and Paul Wilson, husband and wife, | CV10-2758-PHX-NVW |
| Plaintiffs, | |
| vs. | |
| Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; et al., | |
| Defendants. | |
| Conley D. Wolfswinkel, a single man; Brandon D. Wolswinkel, a single man; Ashton A. Wolfswinkel, a single man; Vanderbilt Farms, LLC, an Arizona limited liability company; ABCDW, LLC, an Arizona limited liability company; Stone Canyon, LLC, an Arizona limited liability company; Vistoso Partners, LLC, an Arizona limited liability company; and W Harquahala, LLC, an Arizona limited liability company; | CV11-0116-PHX-NVW |
| Plaintiffs, | |
| vs. | |
| Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; et al., | |
| Defendants. | |
| Mary Rose Wilcox and Earl Wilcox, wife and husband, | CV11-0473-PHX-NVW |
| Plaintiffs, | |
| vs. | |
| Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; et al., | |
| Defendants. | |

1
2    Donald T. Stapley, Jr. and Kathleen          CV11-0902-PHX-NVW
     Stapley, husband and wife,
3
                   Plaintiffs,
4
     vs.
5
     Sheriff Joseph Arpaio and Ava Arpaio,
6    husband and wife; et al.,
7                  Defendants.
     Barbara Mundell,                              CV11-1921-PHX-NVW
8
                   Plaintiff,
9
     vs.                                           **ORDER**
10
     Maricopa County, body politic of the State
11   of Arizona; et al.;
12                 Defendants.
13
14                        **<u>TABLE OF CONTENTS</u>**
15   I.    SUMMARY OF COUNTS TO BE DISMISSED........................................... 1
16   II.   BACKGROUND FACTS ........................................................ 3
17       A.   Wilcox Complaint............................................................ 4
18       B.   Mundell Complaint ......................................................... 8
19       C.   Donahoe Complaint ........................................................ 12
20       D.   Schuerman Complaint....................................................... 17
21       E.   Wilson Complaint .......................................................... 20
22       F.   Stapley Complaint.......................................................... 24
23   III.  LEGAL STANDARD FOR MOTIONS UNDER FED. R. CIV. P. (12)(B)(6) ....... 30
24   IV.   CIVIL RICO COMPLAINT ................................................... 30
25   V.    ANALYSIS OF RULE 12(B)(6) MOTIONS ..................................... 34
26       A.   Wrongful Institution of Civil Proceedings................................... 35
27         1.   Absolute Immunity for Federal Civil RICO Filing ......................... 35
28
                                  - iii -

2.    Non-Immunity Challenges ............................................................. 38

B.    Malicious Prosecution.......................................................................... 39

1.    Immunity as to Prosecutorial or Investigative Functions................. 40

2.    Non-Immunity Challenges ............................................................. 43

C.    Abuse of Process................................................................................... 44

D.    Intentional Infliction of Emotional Distress ........................................ 45

E.    Defamation............................................................................................. 46

F.    False Light Invasion of Privacy ........................................................... 49

G.    Intrusion Upon Seclusion...................................................................... 50

H.    False Arrest ........................................................................................... 51

I.    Violations of Arizona's Racketeering Statute....................................... 52

J.    Violations of the Arizona Constitution ................................................. 55

K.    Claims Under 42 U.S.C. § 1983 ........................................................... 55

1.    Qualified Immunity ........................................................................ 56

2.    Retaliation for Exercise of Free Speech Rights................................ 58

3.    Unlawful Search ............................................................................ 60

4.    Substantive Due Process................................................................. 63

5.    Retaliation for Exercise of Fifth and Fourteenth Amendment Rights ............ 64

6.    Equal Protection ............................................................................ 66

7.    Conspiracy to Violate Constitutional Rights................................... 67

8.    Unconstitutional Policies, Customs, Failure to Train, and Negligent Supervision ........................................................................ 68

VI.    MOTIONS UNDER FED. R. CIV. P. 8.......................................................... 70

VII.    DEFENDANT SPAW'S MOTION TO DISMISS ....................................... 71

VIII.    LEAVE TO AMEND ..................................................................................... 72

IX.    ORDER .......................................................................................................... 73

Pending before the Court are multiple motions to dismiss the amended complaints filed by Plaintiffs in this action: Defendant Maricopa County's Partial Motion to Dismiss Second Amended Complaints of Plaintiffs Stapley, Donahoe and Wilson (Doc. 270); Thomas Defendants' Consolidated Motion to Dismiss Claims in Plaintiffs' Amended Complaints Pursuant to Rule 12(b)(6), as the Claims are Barred by Absolute Prosecutorial Immunity (Doc. 271); Defendants Arpaios' Motion to Dismiss Pursuant to FRCivP 8, 10, and 12(b)(6) Applicable Collectively to the Newly Amended Complaints Filed by Plaintiffs Donahoe, Mundell, Schuerman, Stapley, Wilcox, and Wilson (Doc. 283); Defendants Lisa Aubuchon and Peter R. Pestalozzi's Motion to Dismiss Second Amended Complaints Pursuant to Rules 8(a)(2), 8(d)(1) (as to Plaintiffs Wilcox, Mundell and Stapley) and 12(b)(6), Federal Rules of Civil Procedure (as to Plaintiffs Wilcox, Mundell, Stapley, Wilson, Schuerman, and Donahoe) (Doc. 284); and Defendants Peter and Mary Spaw's Motion to Dismiss (Doc. 315).

The Court heard argument on the motions on February 10, 2012 (Doc. 335).  For the reasons stated below, the motions will be granted in part and denied in part.

## I.    SUMMARY OF COUNTS TO BE DISMISSED

In summary, the following claims of each complaint will be dismissed without leave to amend:

### A.    Wilcox Complaint

- **Count 5**: Violations of the Arizona Constitution except for free speech claim under Article II, § 6
- **Count 7**: as to claims for substantive due process, abuse of process, abuse of power, and equal protection only
- **Count 9**: 42 U.S.C. § 1983: Conspiracy to Violate Constitutional Rights

### B.    Mundell Complaint

- **Count 1**: Abuse of Process
- **Count 3**: False Light Invasion of Privacy

- **Count 6**: as to claims for privileges and immunities, abuse of process, and false light only; and defamation as to Aubuchon only

**C.    Donahoe Complaint**

- **Count 6**: as to claims for false light only
- **Count 7**:  as to claims for false light only
- **Count 8**:  Violation of 42 U.S.C. § 1983: Substantive Due Process
- **Count 11**:  Intrusion Upon Seclusion in Violation of Arizona Law
- **Count 13**: Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04

**D.    Schuerman Complaint**

- **Count 3**:  Abuse of Process in Violation of 42 U.S.C. § 1983 and Arizona Law
- **Count 4**: for claim for defamation as to Aubuchon only
- **Count 5**: for claim for defamation as to Aubuchon only
- **Count 9**:  Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04

**E.    Wilson Complaint**

- **Count 1:**  as to claims for abuse of process only
- **Count 3:**  as to claims for abuse of process only
- **Count 5:**  as to claims for false light only
- **Count 6:**  as to claims for false light only
- **Count 7**:  Violation of 42 U.S.C. § 1983: Substantive Due Process
- **Count 11**:  Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04.

**F.    Stapley Complaint**

- **Count 2**:  as to claims grounded directly on criminal prosecution only
- **Count 5**:  as to claims grounded directly on criminal prosecution only

- 2 -

- **Count 8**: as to claims for substantive due process, privileges and immunities, abuse of process, and abuse of power only
- **Count 11**:  Violation of 42 U.S.C. § 1983: Equal Protection
- **Count 12**:  Conspiracy to Violate 42 U.S.C. § 1983

In all other respects, Defendants' pending motions to dismiss (Docs. 270, 271, 283, 284, 315) will be denied.

## II.    BACKGROUND FACTS

In these consolidated cases, which arise from widely reported controversies between members of the Maricopa County Sheriff's Office and County Attorney's Office and members of the Maricopa County Board of Supervisors, Maricopa County staff, and judges of the Maricopa County Superior Court, multiple Plaintiffs allege various and overlapping claims against several Defendants.  At all relevant times, Wilcox and Stapley were members of the Maricopa County Board of Supervisors. Donahoe was the presiding criminal judge for the Maricopa County Superior Court.  Mundell was also a judge for the Maricopa County Superior Court. Wilson was Deputy County Manager and Schuerman was Stapley's Deputy Administrator.  Arpaio was the Maricopa County Sheriff and head of the Maricopa County Sheriff's Office and Hendershott was the Deputy Chief for the Sheriff's Office.  Thomas was the County Attorney for Maricopa County and Aubuchon was a Deputy County Attorney.  Spaw was the supervising attorney for non-party Deputy Attorney Rachel Alexander, who was involved in prosecuting the federal civil RICO action.[1]  The following facts, as alleged in the complaints, are accepted as true at this stage in the proceedings.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

---

[1] Spaw is a named Defendant in the Wilson and Donahoe complaints only.

- 3 -

1

## A.    Wilcox Complaint[2]

2    Mary Rose Wilcox was a member of the Maricopa County Board of Supervisors.

3 She alleges that Defendants conspired to use the power of the Maricopa County Sheriff's

4 Office and the Maricopa County Attorney's Office to retaliate against her for her actions

5 taken as a member of the Board of Supervisors, mainly related to the construction of a

6 new Criminal Court Tower in Maricopa County.  She alleges that Defendants attempted

7 to advance their own political agendas by targeting Wilcox for investigation, prosecution,

8 and harassment without probable cause.  Wilcox also claims Arpaio and Thomas used an

9 investigative division of the Sheriff's Office, the Maricopa Anti-Corruption Enforcement

10 ("MACE") team, to target, investigate, harass, and intimidate Wilcox.  Hendershott was

11 the investigative head of MACE, and Aubuchon was assigned by Thomas to give MACE

12 legal advice.

13    Wilcox claims Aubuchon and Hendershott, in association with the MACE unit,

14 "began criminal investigations without probable cause, conducted fishing expeditions to

15 find evidence of crimes, and, finding none, falsified the law and evidence, and falsified

16 the application of the law to the evidence to justify an investigative report recommending

17 prosecution against…Wilcox."  (Doc. 239 at 6.)  Wilcox claims Defendants initiated a

18 baseless criminal investigation against her in 2008, culminating in obtaining two criminal

19 indictments against Wilcox, in December 2009 and January 2010, as well as a baseless

20 federal civil racketeering suit in 2009.  The criminal indictments were dismissed on

21 February 24, 2010, after a finding that Thomas was using his office to retaliate against

22 and gain political advantage over Wilcox, and Thomas and Arpaio misused the power of

23 the Sheriff's Office to target her for criminal investigation.

24    Wilcox also alleges that Defendants took other actions to harm, intimidate, and

25 humiliate her, including directing Sheriff's deputies to park outside Wilcox's home and

26

27 [2] Although the spouses to the individual litigants are also parties to this action, for ease of reference, this order will generally refer to Plaintiffs and Defendants in the singular.

28

business and sending undercover informants into their business to surreptitiously tape record them.

Wilcox raises nine causes of action: (1) Wrongful Institution of Civil Proceedings[3]; (2) Malicious Prosecution against Arpaio and Hendershott; (3) Malicious Prosecution against Thomas and Aubuchon; (4) Intentional Infliction of Emotional Distress; (5) Violations of the Arizona Constitution; (6) Negligent Supervision; (7) 42 U.S.C. § 1983: Free Speech, Law Enforcement Retaliatory Conduct, Abuse of Process, and Abuse of Power; (8) 42 U.S.C. § 1983: Unconstitutional Policies, Customs, and Failure to Train; and (9) 42 U.S.C. § 1983: Conspiracy to Violate Constitutional Rights. Arpaio[4] and Aubuchon have moved to dismiss Wilcox's complaint in its entirety for failure to comply with Fed. R. Civ. P. 8.  Summarily stated,[5] Defendants move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

### 1.    Wrongful Institution of Civil Proceedings

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

---

[3] Unless otherwise noted, the cause of action is alleged against Defendants Thomas, Aubuchon, Arpaio, and Hendershott.  Spaw is only a named defendant in the Donahoe and Wilson actions.  Maricopa County has only partially moved to dismiss the Donahoe, Wilson, and Stapley complaints based on immunity for the judicial acts of county officers; it has also moved to dismiss the conspiracy claims.

[4] Hendershott did not file a separate motion to dismiss; however, he joined in Arpaio's motion.  Accordingly, for simplicity, the Court's reference to Arpaio's motion to dismiss also includes Hendershott, even though he will not often be specifically named since he did not make any arguments independent of Arpaio.  There are also various other joinders that are disposed of by the dispositions herein for the primary motions.

[5] The following summaries are intended to provide a general overview of the major challenges under Fed. R. Civ. P. 12(b)(6) which each Defendant has made with respect to each Plaintiff's particular count for relief.  Defendant's specific challenges are simplified and condensed. The Court has attempted to be comprehensive, but recognizes that due to the overlapping nature of many of the claims and the challenges to those claims, all specific challenges raised may not be included here.  The summaries will generally not address the Fed. R. Civ. P. 8 challenges to the complaints.

Arpaio moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.   Alternatively, she claims it fails to state a claim because no "favorable termination" has been pled.

### 2.    Malicious Prosecution against Arpaio and Hendershott

Arpaio moves to dismiss this count on the basis that it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

### 3.    Malicious Prosecution against Thomas and Aubuchon

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim because no "favorable termination" has been pled.

### 4.    Intentional Infliction of Emotional Distress

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity. Alternatively, Aubuchon moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

### 5.     Violations of the Arizona Constitution

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this claim on the basis that there is no cause of action for bringing a civil rights claim under the Arizona constitution.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims that Wilcox has not presented separate arguments for her state and federal claims, and is therefore unable to allege simultaneous claims.  Alternatively, she claims the factual allegations are insufficient to state any claim.

### 6.     Negligent Supervision against Thomas and Arpaio

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

### 7.     42 U.S.C. § 1983: Free Speech, Law Enforcement Retaliatory Conduct, Abuse of Process, and Abuse of Power

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count (with respect to the First Amendment) because there are no facts in the count related to speech or association.

Arpaio moves to dismiss this count (with respect to the equal protection claim) because there are no facts in the count alleged related to equal protection and it is only conclusorily alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she claims insufficient factual allegations to state a claim for

due process violations.  Alternatively, she claims the equal protection claim fails because the "class of one" theory does not apply.  Alternatively, she claims it fails to state a claim for abuse of process because no "favorable termination" has been pled.

### 8.    42 U.S.C. § 1983: Unconstitutional Policies, Customs, and Failure to Train against Thomas and Arpaio

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count as to the claim for failure to train on the basis that the claim is vague and conclusory and fails to specify facts regarding deputy training was insufficient or caused a constitutional violation.

### 9.    42 U.S.C. § 1983: Conspiracy to Violate Constitutional Rights

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the claim is vague and conclusory and fails to specify each defendant's role in the alleged conspiracy.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, Aubuchon claims that no conspiracy action can lie because the county cannot conspire with itself.

### B.    Mundell Complaint

Barbara Mundell was a judge for the Maricopa County Superior Court; she retired from this position in 2009.  After Stapley was initially criminally indicted, Mundell appointed retired Judge Kenneth Fields to preside over his criminal trial.  Mundell alleges that in retaliation for this appointment, Defendants took improper action against her.  Hendershott attempted to gain access to Mundell's emails and threatened litigation if his request was denied.  Aubuchon sought an ex parte meeting with Mundell regarding Judge

Fields' appointment. Defendants issued press releases implying Mundell's involvement in the litigation related to the investigation of the Board of Supervisors and the Court Tower project was improper.  Beginning in April 2009 and lasting for approximately fourteen months, the Sheriff's Office conducted surveillance of Mundell's home. Further, Hendershott filed a judicial ethics complaint against Mundell on November 30, 2009, claiming that Mundell (1) conspired with the Maricopa County Public Defenders' office to bring a lawsuit regarding the jail visitation hours and conceal the public record communications requested by the Sheriff's Office, (2) solicited Judge Fields to file a bar complaint against Thomas, (3) failed to explain her reasons for appointing retired Judge Fields to preside over the Stapley litigation, and (4) admonished Aubuchon for questioning Mundell's decision to appoint Judge Fields.

Mundell was also a named defendant in the federal civil RICO lawsuit underlying these consolidated cases.  Mundell claims Hendershott conducted the investigation that led to the filing of the suit, Aubuchon drafted and signed the complaint, and Arpaio and Thomas were named as Plaintiffs.  Mundell claims the RICO suit was filed even though Defendants knew, and were advised by experienced attorneys, that there was no evidence to support a RICO complaint.  Thomas issued a press release on December 8, 2009, stating that Mundell and the rest of the defendants in the RICO suit were under criminal investigation "for hindering prosecution and for other offenses."  (Doc. 242 at 10.) Arpaio, Thomas, Hendershott, and Aubuchon planned to search Mundell's office and home and obtain a criminal indictment against her; this plan was leaked to the press and apparently did not occur.  The RICO complaint was dismissed by Arpaio and Thomas on March 11, 2010; at that time, Arpaio and Thomas held a press conference and falsely stated that they had withdrew the case because the Department of Justice had agreed to take over the investigation.  Mundell claims Defendants made various other public statements claiming Mundell had acted improperly.  Mundell claims that she was offered twenty-four hour security by Maricopa County in response to Hendershott's behavior related to the RICO suit.

Mundell raises seven causes of action: (1) Abuse of Process; (2) Malicious Prosecution; (3) False Light Invasion of Privacy; (4) Defamation against Arpaio, Thomas, and Hendershott; (5) Intentional Infliction of Emotional Distress; (6) Violations of 42 U.S.C. § 1983: Claims Against Defendants in Individual Capacities; (7) Violations of 42 U.S.C. § 1983: Supervisory Defendant in Individual capacity against Arpaio and Thomas.  Aubuchon has moved to dismiss Mundell's complaint in its entirety for failure to comply with Fed. R. Civ. P. 8.  Summarily stated, Defendants move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

### 1.     Abuse of Process

Thomas move sto dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that nothing more than persistence in the litigation has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

### 2.     Malicious Prosecution

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

### 3.     False Light Invasion of Privacy

Arpaio moves to dismiss this count on the basis that a false light claim is not available to public officials.

- 10 -

### 4. Defamation against Arpaio, Thomas, and Hendershott

Arpaio moves to dismiss this count on the basis that the published statements were opinion and protected by the First Amendment, and not made with actual malice. Alternatively, Arpaio claims he is entitled to absolute judicial immunity for these statements since they relate to judicial proceedings.

### 5. Intentional Infliction of Emotional Distress

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous to state a claim.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous to state a claim.

### 6. Violations of 42 U.S.C. § 1983: Claims Against Defendants in Individual Capacities

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count (reading it as a substantive due process claim) on the basis that the conduct at issue here is not sufficiently outrageous and that no sufficient interest has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she claims insufficient factual allegations to state a claim for due process violations.  Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.  Finally, with respect to the defamation count, Aubuchon claims that her statements were all contained in the

- 11 -

criminal and RICO filings and are thus absolutely immune, and that Aubuchon did not publish any of the statements.

> **7.     Violations of 42 U.S.C. § 1983: Supervisory Defendant in Individual capacity against Arpaio and Thomas**

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

## C.     Donahoe Complaint

Gary Donahoe was a judge for the Maricopa County Superior Court.  He served as the Presiding Criminal Judge of the Maricopa County Superior Court from January 16, 2009, to March 31, 2010.  In February 2009, Donahoe presided over a dispute between the Maricopa County Board of Supervisors and the Maricopa County Attorney's Office related to the Board of Supervisors' decision to assign cases away from the County Attorney's Office to independent counsel.  In that action, Donahoe:

> (1) denied the MCAO's motion to re-assign the case to an out-of-county judge; (2) denied the MCAO's motion to disqualify the BOS's independently retained counsel; (3) quashed a grand jury subpoena obtained by the MCAO to investigate the Court Tower Project; and (4) disqualified the MCAO from investigating the Court Tower Project based on the MCAO's conflict of interest.

(Doc. 243 at 6.)  He also had a hearing on orders to show cause why an officer of the Sheriff's Office should not be held in contempt for failing to obey a court order regarding the timely transportation of prisoners to criminal hearings at the Maricopa County Superior Court.  Finally, Donahoe held a Maricopa County detention officer in contempt for perusing a criminal defense attorney's file in Court.  Donahoe claims that Defendants retaliated against him for these rulings he made in his capacity as Superior Court Judge by naming him as a defendant in the federal civil RICO lawsuit filed by Defendants and selecting an individual who had previously threatened Donahoe's life to serve the summons and complaint.

Donahoe raises thirteen causes of action: (1) Malicious Prosecution and Abuse of Process in Violation of 42 U.S.C. § 1983; (2) Malicious Prosecution and Abuse of

Process in Violation of Arizona Law; (3) Violations of 42 U.S.C. § 1983: Supervisor Liability against Spaw; (4) Malicious Prosecution in Violation of 42 U.S.C. § 1983 and Arizona Law against Arpaio and Hendershott; (5) Retaliation for the Exercise of First Amendment Rights in Violation of 42 U.S.C. § 1983; (6) Defamation and False Light in Violation of 42 U.S.C. § 1983 against Thomas and Arpaio; (7) Defamation and False Light in Violation of Arizona Law against Thomas, Arpaio, and Maricopa County; (8) Violation of 42 U.S.C. § 1983: Substantive Due Process; (9) Violation of 42 U.S.C. § 1983: Municipal Liability against Maricopa County; (10) Defamation/False Light in Violation of Arizona Law against Thomas; (11) Intrusion Upon Seclusion in Violation of Arizona Law; (12) Intentional Infliction of Emotional Distress; and (13) Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04.   Summarily stated, Defendants move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

> **1.     Malicious Prosecution and Abuse of Process in Violation of 42 U.S.C. § 1983**

Spaw has moved to dismiss this claim on the basis that it is barred by absolute prosecutorial immunity or, in the alternative, it is time-barred by the applicable statute of limitations.

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count as to malicious prosecution on the basis that it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.  Arpaio moves to dismiss this count as to abuse of process on the basis that nothing more than persistence in the litigation has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

2. **Malicious Prosecution and Abuse of Process in Violation of Arizona Law**

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count as to malicious prosecution on the basis that it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.  Arpaio moves to dismiss this count as to abuse of process on the basis that nothing more than persistence in the litigation has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

3. **Violations of 42 U.S.C. § 1983: Supervisor Liability against Spaw**

Spaw has moved to dismiss this claim on the basis that it is barred by absolute prosecutorial immunity or, in the alternative, it is time-barred by the applicable statute of limitations.

4. **Malicious Prosecution in Violation of 42 U.S.C. § 1983 and Arizona Law against Arpaio and Hendershott**

Arpaio moves to dismiss this count on the basis that it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

5. **Retaliation for the Exercise of First Amendment Rights in Violation of 42 U.S.C. § 1983**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

- 14 -

Arpaio moves to dismiss this count on the basis that Donahoe's First Amendment rights were not implicated by issuing rulings, which is the act for which he claims retaliation.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.

### 6. Defamation and False Light in Violation of 42 U.S.C. § 1983 against Thomas and Arpaio

Arpaio moves to dismiss the false light action on the basis that Plaintiff was a public official and the publication related to the performance of his public duties.

Arpaio moves to dismiss the defamation action on the basis that the published statements were opinion and protected by the First Amendment, and not made with actual malice. Alternatively, Arpaio claims he is entitled to absolute judicial immunity for these statements since they relate to judicial proceedings.

### 7. Defamation and False Light in Violation of Arizona Law against Thomas, Arpaio, and Maricopa County

Arpaio moves to dismiss the defamation action on the basis that the published statements were opinion and protected by the First Amendment, and not made with actual malice. Alternatively, Arpaio claims he is entitled to absolute judicial immunity for these statements since they relate to judicial proceedings.

### 8. Violation of 42 U.S.C. § 1983: Substantive Due Process

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the conduct at issue here is not sufficiently outrageous and that no sufficient interest has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial

immunity.    Alternatively, Aubuchon claims the conduct alleged is not sufficiently outrageous to state a claim.

> **9.    Violation of 42 U.S.C. § 1983: Municipal Liability against Maricopa County**

Maricopa County has not moved to dismiss this count.

> **10.    Defamation/False Light in Violation of Arizona Law against Thomas**

Thomas has not moved to dismiss this count.

> **11.    Intrusion Upon Seclusion in Violation of Arizona Law**

Aubuchon moves to dismiss this count on the basis that the decision to hire the process server does not implicate a private place or private affairs because there was no actual invasion of any place.

> **12.    Intentional Infliction of Emotional Distress**

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.    Alternatively, Aubuchon moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

> **13.    Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

1    Arpaio moves to dismiss this count on the basis that it is not sufficiently alleged
2    that the predicate acts were committed for financial gain and failure to allege the
3    necessary continuity.

4    Aubuchon moves to dismiss this count on the basis that it is based on the the civil
5    RICO action, and as such the claim is barred by absolute prosecutorial immunity.
6    Alternatively, she moves to dismiss this count on the basis that it is not sufficiently
7    alleged that the predicate acts were committed for financial gain.

8    **D.    Schuerman Complaint**

9    Susan Schuerman was Stapley's executive assistant with the Maricopa County
10   Board of Supervisors.   She alleges that Defendants targeted and harassed her in an
11   attempt to "pressure her into providing information, or creating false evidence,
12   [Defendants] could use against Stapley."  (Doc. 244 at 6.)  Schuerman alleges that on
13   December 2, 2009, deputies of the Sheriff's Office served her with a grand jury subpoena
14   commanding her to provide testimony regarding the charges against Stapley.   The
15   deputies also requested an interview with Schuerman, which she declined. Schuerman
16   claims deputies, including Hendershott, repeatedly attempted to interview her and
17   threatened her if she failed to cooperate in the investigation of Stapley.  In retaliation for
18   her refusal to submit to an interview, a criminal investigation was instituted against
19   Schuerman.   Related to the investigation, Schuerman was served with a warrant, not
20   supported by probable cause, authorizing a search of her office and files on February 26,
21   2009.  Schuerman also alleges that Defendants directed undercover officers to park their
22   cars on Schuerman's street and follow her in an attempt to intimidate Schuerman into
23   cooperating with the Stapley investigation.

24   Schuerman raises nine causes of action: (1) Retaliation for the Exercise of Fifth
25   and Fourteenth Amendment Rights in Violation of 42 U.S.C. § 1983; (2) § 1983 Fourth
26   Amendment Violation; (3) Abuse of Process in Violation of 42 U.S.C. § 1983 and
27   Arizona Law; (4) Defamation/False Light in Violation of 42 U.S.C. § 1983; (5)
28   Defamation and False Light in Violation of Arizona Law; (6) Violations of 42 U.S.C. §

1983: Municipal Liability against Maricopa County; (7) Defamation/False Light in Violation of Arizona Law against Thomas; (8) Intentional Infliction of Emotional Distress; and (9) Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04. Summarily stated, Defendants move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

### 1. Retaliation for the Exercise of Fifth and Fourteenth Amendment Rights in Violation of 42 U.S.C. § 1983

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that her self-incrimination rights were never implicated.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity. Alternatively, Aubuchon claims qualified immunity for her actions related to the search warrant. Alternatively, she claims insufficient factual allegations to state a claim for due process violations.

### 2. § 1983 Fourth Amendment Violation

Arpaio moves to dismiss this count on the basis that there are insufficient allegations as to what allegedly false facts Arpaio submitted in the affidavit for probable cause to support the search warrant.

Aubuchon moves to dismiss this count on the basis that her actions are protected by qualified immunity. Alternatively, she claims insufficient factual allegations to state a claim for Fourth Amendment violations.

### 3. Abuse of Process in Violation of 42 U.S.C. § 1983 and Arizona Law

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that nothing more than persistence in the litigation has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

### 4.    Defamation/False Light in Violation of 42 U.S.C. § 1983

Arpaio moves to dismiss the false light action on the basis that Plaintiff was a public official and the publication related to the performance of her public duties.  Arpaio moves to dismiss this count as to defamation on the basis that there is no allegation of a false statement.

Aubuchon moves to dismiss this count on the basis that Plaintiff was a public official and the publication related to the performance of her public duties, and for failing to identify any statements made by Aubuchon.

### 5.    Defamation and False Light in Violation of Arizona Law

Arpaio moves to dismiss the false light action on the basis that Plaintiff was a public official and the publication related to the performance of his public duties.

Arpaio moves to dismiss the defamation action on the basis that the published statements were opinion and protected by the First Amendment, and not made with actual malice.  Alternatively, Arpaio claims he is entitled to absolute judicial immunity for these statements since they relate to judicial proceedings.

Aubuchon moves to dismiss this count on the basis that Plaintiff was a public official and the publication related to the performance of her public duties, and for failing to identify any statements made by Aubuchon.

### 6.    Violations of 42 U.S.C. § 1983: Municipal Liability against Maricopa County

Maricopa County has not moved to dismiss this count.

1

2

**7.      Defamation/False Light in Violation of Arizona Law against Thomas**

3

Thomas has not moved to dismiss this count.

4

**8.      Intentional Infliction of Emotional Distress**

5

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

6

7

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

8

9

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.   Alternatively, Aubuchon moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

10

11

12

**9.      Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04**

13

14

Thomas moves to dismiss this count on the basis that it is based, in part, on the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

15

16

Arpaio moves to dismiss this count on the basis that it is not sufficiently alleged that the predicate acts were committed for financial gain and failure to allege the necessary continuity.

17

18

19

Aubuchon moves to dismiss this count on the basis that it is based on the the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity. Alternatively, she moves to dismiss this count on the basis that it is not sufficiently alleged that the predicate acts were committed for financial gain.

20

21

22

23

**E.      Wilson Complaint**

24

Sandra Wilson was the Deputy County Manager of Maricopa County.  Wilson alleges that Defendants targeted her for making recommendations to the Board of Supervisors on how to balance Maricopa County's budget with respect to the allocation of funds for the Court Tower Project and budget cuts for other County agencies.  Wilson

25

26

27

28

1    claims Defendants retaliated against her for these recommendations by naming her as a

2    defendant in the federal civil RICO lawsuit filed by Defendants.

3          Wilson raises eleven causes of action: (1) Malicious Prosecution and Abuse of

4    Process in Violation of 42 U.S.C. § 1983; (2) Violations of 42 U.S.C. § 1983: Supervisor

5    Liability against Spaw; (3) Malicious Prosecution and Abuse of Process in Violation of

6    Arizona Law (4) Retaliation for the Exercise of First Amendment Rights in Violation of

7    42 U.S.C. § 1983; (5) Defamation and False Light in Violation of 42 U.S.C. § 1983

8    against Thomas and Arpaio; (6) Defamation and False Light in Violation of Arizona Law

9    against Thomas, Arpaio, and Maricopa County; (7) Violation of 42 U.S.C. § 1983:

10   Substantive Due Process; (8) Violation of 42 U.S.C. § 1983: Municipal Liability against

11   Maricopa County; (9) Defamation/False Light in Violation of Arizona Law against

12   Thomas; (10) Intentional Infliction of Emotional Distress; and (11) Violations of

13   Arizona's Racketeering Statute, A.R.S. § 13-2314.04.   Summarily stated, Defendants

14   move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

15          **1.     Malicious Prosecution and Abuse of Process in Violation of 42
             U.S.C. § 1983**
16
17          Spaw has moved to dismiss this claim on the basis that it is barred by absolute

18   prosecutorial immunity or, in the alternative, it is time-barred by the applicable statute of

19   limitations.

20          Thomas moves to dismiss this count on the basis that it is based on the filing of the

21   civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

22          Arpaio moves to dismiss this count on the basis that it fails to state a claim for

23   malicious prosecution because no "favorable termination" has been pled.

24          Aubuchon moves to dismiss this count on the basis that it is based on the filing of

25   the civil RICO action, and as such the claim is barred by absolute prosecutorial

26   immunity.   Alternatively, she claims it fails to state a claim for malicious prosecution

27   because no "favorable termination" has been pled.

28

2. **Violations of 42 U.S.C. § 1983: Supervisor Liability against Spaw**

Spaw has moved to dismiss this claim on the basis that it is barred by absolute prosecutorial immunity or, in the alternative, it is time-barred by the applicable statute of limitations.

3. **Malicious Prosecution and Abuse of Process in Violation of Arizona Law**

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count as to malicious prosecution on the basis that it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.  Arpaio moves to dismiss this count as to abuse of process on the basis that nothing more than persistence in the litigation has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity. Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

4. **Retaliation for the Exercise of First Amendment Rights in Violation of 42 U.S.C. § 1983**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that Wilson's First Amendment rights were not implicated by her exercise of her official duties, which is the act for which she claims retaliation.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.

**5.      Defamation and False Light in Violation of 42 U.S.C. § 1983 against Thomas and Arpaio**

Arpaio moves to dismiss the false light action on the basis that Plaintiff was a public official and the publication related to the performance of his public duties.

**6.      Defamation and False Light in Violation of Arizona Law against Thomas, Arpaio, and Maricopa County**

Arpaio moves to dismiss the false light action on the basis that Plaintiff was a public official and the publication related to the performance of his public duties. Arpaio moves to dismiss the defamation action on the basis that the published statements were opinion and protected by the First Amendment, and not made with actual malice. Alternatively, Arpaio claims he is entitled to absolute judicial immunity for these statements since they relate to judicial proceedings.

**7.      Violation of 42 U.S.C. § 1983: Substantive Due Process**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the conduct at issue here is not sufficiently outrageous and that no sufficient interest has been alleged.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity. Alternatively, Aubuchon claims the conduct alleged is not sufficiently outrageous to state a claim.

**8.      Violation of 42 U.S.C. § 1983: Municipal Liability against Maricopa County**

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

**9.      Defamation/False Light in Violation of Arizona Law against Thomas**

Thomas has not moved to dismiss this count.

- 23 -

1

### 10.    Intentional Infliction of Emotional Distress

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, Aubuchon moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

### 11.    Violations of Arizona's Racketeering Statute, A.R.S. § 13-2314.04.

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that it is not sufficiently alleged that the predicate acts were committed for financial gain and failure to allege the necessary continuity.

Aubuchon moves to dismiss this count on the basis that it is based on the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity. Alternatively, she moves to dismiss this count on the basis that it is not sufficiently alleged that the predicate acts were committed for financial gain.

### F.    Stapley Complaint

Donald Stapley was a member of the Maricopa County Board of Supervisors.  He alleges that Defendants retaliated against him for actions he took in his official capacity with the Board of Supervisors.  Stapley claims that Defendants animus against him stems

from his challenges to Thomas' use of outside counsel in representing Maricopa County, criticism of Sheriff's Office personnel's trips to Central America financed by County funds, perceived interference with Thomas' anti-methamphetamine program, and general disagreements regarding budget issues between the Board of Supervisors and the Sheriff and County Attorney's offices.  In retaliation against Stapey for these criticisms and other political disagreements, Stapley asserts Defendants commenced investigations into Stapley's business affairs and ultimately obtained two criminal indictments against him. Stapley alleges that Defendants brought numerous time-barred and other unsupported charges against him in order to have a 118-count indictment for publicity purposes; the second indictment included only 27 charges.  In connection with the criminal charges, Stapley alleges Defendants planned and executed his public, warrantless arrest and arranged for the media to be present at the time it occurred.  Further, Stapley claims Defendants unlawfully searched his offices as part of their retaliatory investigation of him. Stapley was also named as a defendant in the federal civil RICO action.

Stapley raises twelve causes of action: (1) Wrongful Institution of Civil Proceedings; (2) Malicious Prosecution: Stapley I against Thomas and Aubuchon; (3) Malicious Prosecution: Stapley I against Arpaio and Hendershott; (4) False/Wrongful Arrest-Imprisonment against Arpaio, Hendershott, and Aubuchon; (5) Malicious Prosecution: Stapley II against Thomas and Aubuchon; (6) Malicious Prosecution: Stapley II against Arpaio and Hendershott; (7) Intentional Infliction of Emotional Distress; (8) Violations of 42 U.S.C. § 1983: Free Speech, Free Association, Law Enforcement Retaliatory Conduct, Abuse of Process, and Abuse of Power; (9) Violations of 42 U.S.C. § 1983: Unconstitutional Policies, Customs, Failure to Train and Negligent Supervision against Arpaio and Thomas; (10) Violation of 42 U.S.C. § 1983: Unlawful Search; (11) Violation of 42 U.S.C. § 1983: Equal Protection; and (12) Conspiracy to Violate 42 U.S.C. § 1983.   Arpaio and Aubuchon have moved to dismiss Wilcox's complaint in its entirety for failure to comply with Fed. R. Civ. P. 8.  Summarily stated,

Defendants move to dismiss the individual counts under Fed. R. Civ. P. 12(b)(6) as follows:

### 1.     Wrongful Institution of Civil Proceedings

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

Aubuchon moves to dismiss this count on the basis that it is based on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim because no "favorable termination" has been pled.

### 2.     Malicious Prosecution: Stapley I against Thomas and Aubuchon

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim because no "favorable termination" has been pled.

### 3.     Malicious Prosecution: Stapley I against Arpaio and Hendershott

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Arpaio moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

### 4. False/Wrongful Arrest-Imprisonment against Arpaio, Hendershott, and Aubuchon

Arpaio moves to dismiss this count on the basis that there is no allegation that the arrest was made without probable cause.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity.

### 5. Malicious Prosecution: Stapley II against Thomas and Aubuchon

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity. Alternatively, she claims it fails to state a claim because no "favorable termination" has been pled.

### 6. Malicious Prosecution: Stapley II against Arpaio and Hendershott

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Arpaio moves to dismiss this count on the basis that it fails to state a claim because no "favorable termination" has been pled.

### 7. Intentional Infliction of Emotional Distress

Maricopa County moves to dismiss this claim on the basis that it is barred by judicial immunity.

Thomas moves to dismiss this count completely on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, Aubuchon moves to dismiss this count on the basis that the alleged conduct is not sufficiently extreme or outrageous.

**8.     Violations of 42 U.S.C. § 1983: Free Speech, Free Association, Law Enforcement Retaliatory Conduct, Abuse of Process, and Abuse of Power**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count (reading it as a substantive due process claim) on the basis that the conduct at issue here is not sufficiently outrageous and that no sufficient interest has been alleged.

Arpaio moves to dismiss this count (with respect to the First Amendment) because there are no facts in the count related to speech or association.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment or the civil RICO suit, and as such is barred by absolute prosecutorial immunity.  Alternatively, she claims it fails to state a claim for malicious prosecution because no "favorable termination" has been pled.

**9.     Violations of 42 U.S.C. § 1983: Unconstitutional Policies, Customs, Failure to Train and Negligent Supervision against Arpaio and Thomas**

Thomas moves to dismiss this count on the basis that it is based in part on the criminal indictment and in part on the filing of the civil RICO action, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to as to the claim for failure to train on the basis that the claim is vague and conclusory and fails to specify facts regarding deputy training was insufficient or caused a constitutional violation.

Aubuchon moves to dismiss this count on the basis that she is absolutely immune from suit with regard to supervision and training claims related to the prosecutorial function.

### 10.    Violation of 42 U.S.C. § 1983: Unlawful Search

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that he does not allege what allegedly false facts Arpaio submitted in the affidavit for probable cause to support the search warrant.

Aubuchon moves to dismiss this count on the basis that her actions are protected by qualified immunity. Alternatively, she claims insufficient factual allegations to state a claim for Fourth Amendment violations.

### 11.    Violation of 42 U.S.C. § 1983: Equal Protection

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the "class of one" theory does not apply.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity. Alternatively, she claims the "class of one" theory does not apply.

### 12.    Conspiracy to Violate 42 U.S.C. § 1983

Maricopa County moves to dismiss this claim on the basis that the county cannot conspire with itself.

Thomas moves to dismiss this count on the basis that it is based, in part, on the criminal indictment, and as such the claim is barred by absolute prosecutorial immunity.

Arpaio moves to dismiss this count on the basis that the claim is vague and conclusory and fails to specify each defendant's role in the alleged conspiracy.

Aubuchon moves to dismiss this count on the basis that it is based on the criminal indictment, and as such is barred by absolute prosecutorial immunity. Alternatively, Aubuchon claims that no conspiracy action can lie because the county cannot conspire with itself.

## III. LEGAL STANDARD FOR MOTIONS UNDER FED. R. CIV. P. (12)(B)(6)

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins*, 568 F.3d at 1067. Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that allegations in a complaint are accepted as true does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## IV. CIVIL RICO COMPLAINT

To aid the substantive analysis that follows, the Court here briefly outlines the civil RICO action underlying many of Plaintiffs' complaints.

As stated above, Thomas brought separate criminal prosecutions against Wilcox, Stapley, and Donahoe. The first two were dismissed by the Superior Court, and Thomas

voluntarily dismissed the third.  On December 1, 2009, Arpaio and Thomas as plaintiffs and Thomas and Aubuchon as counsel for both filed an action in the United States District Court under the Racketeer Influenced and Corrupt Organizations Act (RICO) against the Maricopa County Board of Supervisors and its five members, Max Wilson, David Smith, Sandra Wilson, Wade Swanson, Superior Court Judges Mundell, Baca, Donahoe, and Fields, and attorneys Thomas Irvine, Edward Novak, and their firm Polsinelli Shughart P.C.  The filing of that action is at least part of the basis of the wrongful litigation, abuse of process, and related federal civil rights claims brought by Plaintiffs Stapley, Wilcox, Wilson, and Mundell.  (Superior Court Judges Fields and Baca also asserted claims but have settled their claims.)

Arpaio and Thomas brought the RICO action in their official capacities.  But the prayer for relief sought money damages for Arpaio against all defendants "in an amount triple the damages each has caused plaintiffs through their racketeering activity . . . and specifically sufficient damages to make whole plaintiff Arpaio, a consumer of legal services . . . ."  They also sought for both of them "[s]uch relief as is necessary to allow plaintiffs Arpaio and Thomas to enforce the criminal and civil laws of the State of Arizona without improper or corrupt hindrance by defendants."

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq.*, provides treble damages and other remedies for victims of racketeering activity, as defined by the statutes.  "To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Rezner v. Bayerische Hypo-Und Vereinsbank*, 630 F.3d 866, 873 (9th Cir. 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  A " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).  "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act indictable under certain enumerated federal criminal statutes.  Arpaio and Thomas alleged many grievances against the defendants.  While the

complaint is difficult to paraphrase, the main themes encompassed therein can be summarized as follows:

- hindering Arpaio and Thomas's criminal investigation of the planned new Court Tower, including by a sweep of County offices for possible surveillance devices planted there;
- voting $341 million to build the Court Tower;
- bribing the judges by planning amenities such as marble, travertine and wood flooring, and robbing rooms;
- instigating frivolous investigations and promoting bar complaints against Thomas and his deputies;
- Judge Mundell transferring cases to Judge Fields and Judge Daughton, who were biased against Thomas;
- numerous court rulings by Judges Mundell, Baca, Fields, and Daughton against Thomas;
- setting up a legal office to represent the County, independent of Thomas, because of Thomas' alleged conflict of interest on the Court Tower investigation of county officials;
- making or promoting bar complaints against Thomas and his deputies;
- Judge Donahoe falsely accused Thomas of a conflict of interest;
- the attorneys for the County on the Court Tower project took various positions in court proceedings and had a conflict of interest among their clients;
- County Manager Smith "impliedly threatened" to file a bar complaint against Thomas, which "constituted extortion," when asking for disclosure of various documents from Thomas;
- the Board of Supervisors denied Thomas' request for funding for special prosecutors;
- Wilcox, Stapley, Wilson and others filed a bar complaint against Thomas;

- all defendants conspired to do these things;

- all defendants were "an enterprise" within the meaning of RICO;

- all defendants committed the state law crimes of bribery, A.R.S. 13-1804, and extortion, A.R.S. 13-2601, *et seq.*; and

- Arpaio  suffered injury as a result of this pattern of racketeering activity in that he did not get the funding to which he was entitled for his investigation of the Court Tower.

The federal RICO statute gives the Attorney General of the United States authority to bring enforcement actions, but it gives no special enforcement authority to state officers.  *See* 18 U.S.C. § 1961 *et seq.*  Arpaio and Thomas were required to ground their RICO action in the same standing and injury as other private parties.   The main "injury" alleged was that the County Board of Supervisors did not appropriate enough money to Arpaio and Thomas for their criminal investigation of the Court Tower, though much more was alleged as well.  But that is not an injury for which RICO provides a personal damage remedy or any remedy.  If it is a wrong, it is a wrong for which state law provides a remedy, and that remedy would be ordering appropriation of enough money, not a personal damages action against the Supervisors, their managers, and judges whose rulings favored the County.

Arpaio and Thomas also alleged that the purpose and effect of the defendants' actions was to hinder their criminal investigation into the Court Tower.   It cannot possibly be racketeering, or anything else actionable, to hire attorneys to present matters to the courts or for the judges to rule on the matters presented.   Filing a bar complaint in Arizona is absolutely immune from suit, by explicit rule of the Arizona Supreme Court and by case law predating that rule.  *See* Rule 48(*l*), Rules of the Arizona Supreme Court ("Communications . . . relating to lawyer misconduct, lack of professionalism or disability . . . shall be absolutely privileged conduct, and no civil action predicated thereon may be instituted against any complainant[.]"); *Drummond v. Stahl*, 127 Ariz. 122, 126 (Ct. App. 1980) (explaining that anyone who makes a complaint to the State Bar

1   for an attorney's unethical conduct is absolutely privileged from being subject to a civil

2   action for defamation).

3   **V.   ANALYSIS OF RULE 12(B)(6) MOTIONS**

4       Because there is significant overlap in Plaintiffs' claims against Arpaio,

5   Hendershott, Thomas, Aubuchon, and Maricopa County, the motions to dismiss by these

6   Defendants will be treated together in the following section.[6]   The Court will treat the

7   issues claim by claim, and address each issue in turn.[7]

8       As a threshold matter, the Court notes that many of Plaintiffs' claims relate to

9   actions taken incident to litigation—both civil and criminal proceedings—initiated

10  against them by Defendants.   The issue of whether any immunity prevents suit against

11  any of the Defendants at this stage is thus of central importance. *See Mueller v. Auker*,

12  576 F.3d 979, 992 (9th Cir. 2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))

13  (noting "absolute immunity . . . is effectively lost if a case is erroneously permitted to go

14  to trial"). Thomas and Aubuchon have moved to dismiss a significant number of the

15  claims raised against them on the basis of absolute prosecutorial immunity.  The County

16  also claims absolute immunity for the judicial acts of its officers. The extent to which

17  absolute immunity requires dismissal of any of Plaintiffs' claims necessitates two

18  separate categories of immunity analysis: first, whether the protections of absolute

19  prosecutorial immunity extend to Defendants' actions in filing the federal civil RICO suit

20  against Plaintiffs; and second, whether Plaintiffs have sufficiently alleged Defendants

21  undertook actionable, non-prosecutorial functions with respect to the criminal

---

22  [6] Only Wilson and Donahoe have named Spaw as a Defendant; although there is some

23  overlap in the substance of the claims against him and his responses thereto, his motion to

24  dismiss will be treated in a separate section.

25  [7] Some claims have been brought pursuant to both Arizona state law and 42 U.S.C.

26  § 1983.  In an effort to avoid repetition, and to structure the discussion presented here in a

    comprehensible manner, the Court has endeavored to treat most discrete issues

27  individually in the earlier sections of analysis, and then treat specific alleged

    constitutional violations raised under section 1983 in later sections of the Order.

28

proceedings against Wilcox, Donahoe, and Stapley.  Each will be discussed in turn with respect to Plaintiffs' claims for wrongful institution of civil proceedings for the federal civil RICO action and malicious prosecution for the criminal proceedings.

### A.     Wrongful Institution of Civil Proceedings[8]

Wilcox, Mundell, Donahoe, Wilson, and Stapley have brought claims for wrongful institution of civil proceedings based on the filing of the federal civil RICO action. Thomas, Aubuchon, and Maricopa County assert that the claims are premised on immune conduct and must accordingly be dismissed.  Aubuchon also argues that Plaintiffs have failed to plead that the action terminated in their favor, and have accordingly failed to state a claim for relief for wrongful institution of civil proceedings.    Arpaio and Hendershott put forth the same argument as the basis for dismissal of the wrongful institution of civil proceeding claims.  Defendants' arguments fail for the reasons stated below.

### 1.     Absolute Immunity for Federal Civil RICO Filing

The Supreme Court has "been quite sparing" in its recognition of absolute immunity and has "refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (internal citations and marks omitted). Qualified immunity is the rule, and absolute immunity the exception, because qualified immunity is presumed to be sufficient to protect government officials in the exercise of their duties. *See id.*; *Forrester v. White*, 484 U.S. 219 (1988) (noting "the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity"); *see also L.A. Police Protective League v. Gates*, 907 F.2d 879, 888 (9th Cir. 1990).  This presumption "is even more true

---

[8] Mundell, Donahoe, and Wilson title their counts based on the federal civil RICO filing "malicious prosecution," whereas Wilcox and Stapley title their counts based on the federal civil RICO filing "wrongful institution of civil proceedings."  Because wrongful institution of civil proceedings is the civil analog of a malicious prosecution claim, the Court will treat all these claims together under the rubric of wrongful institution of civil proceedings.  *See* Restatement (Second) of Torts chs. 29-30 (1977).

1    [presently] because the current qualified immunity standard provides more protection for

2    public officials than did earlier formulations." *Cannell v. Or. Dep't of Justice,* 811 F.

3    Supp. 546, 552-53 (D. Or. 1993) (citing *Burns,* 500 U.S. at 495) ("Qualified immunity

4    today provides ample protection for all but the plainly incompetent or those who

5    knowingly violate the law.").  Government officials seeking the protection of absolute

6    rather than qualified immunity "bear the burden of showing that public policy requires an

7    exemption of that scope." *Butz v. Economeu*, 438 U.S. 478, 506 (1978).

8         Absolute immunity has generally been applied to protect only those actions by a

9    prosecutor that are "intimately associated with the judicial phase of the criminal

10   process[,]" as those are the "functions to which the reasons for absolute immunity apply

11   with full force." *Imbler v. Pachtman*, 424 U.S. 409, 430.  Defendants have not provided

12   persuasive authority to warrant the extension of absolute prosecutorial immunity to the

13   filing of the federal RICO lawsuit here, which is a civil action initiated by Defendants, far

14   removed from the judicial phase of the criminal process.  Although absolute immunity

15   has sometimes been applied to government attorneys for bringing civil enforcement

16   proceedings pursuant to their statutory duties, *see, e.g.*, *Butz*, 438 U.S. at 515-17, those

17   instances are limited to situations where the court can "draw[] an analogy between the

18   prosecutor who initiates criminal proceedings and the government attorney who performs

19   the functions of a prosecutor in civil proceedings."  *Canell*, 811 F. Supp. at 551 (citing

20   *Butz*, 438 U.S. at 515-17; *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984);

21   *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991)). Cases which have applied

22   absolute prosecutorial immunity to bar claims against government attorneys for their

23   activities related to the initiation of a civil proceeding have been limited to scenarios

24   where the government attorney's function is directly analogous to his or her function in a

25   criminal proceeding. *See id.* (collecting cases).

26         Defendants cite *Fry v. Melaragno*, 939 F.2d 832 (9th Cir. 1991), for the broad

27   proposition that absolute immunity should apply in all cases to litigation initiated by

28   government attorneys "regardless of whether the attorney is representing the plaintiff or

the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing." *Fry*, 939 F.2d at 837.  This broad statement in *Fry* was dictum and controlled by *Flood v. Harrington*, 532 F.2d 1248 (9th Cir. 1976), *see Cannell*, 811 F. Supp. at 551 n. 5, and does not create a binding rule effectively immunizing prosecutors for any litigation. No established authority entitles government attorneys to absolute immunity for the initiation of civil proceedings "without regard to the nature of the case or the role the attorney plays in that proceeding." *Id.*[9]

Rather, *Fry* involved a civil prosecution for failure to pay income taxes, which is analogous to a criminal prosecution.  939 F.2d 832.  The facts of this case are much more analogous to those in *Canell*, where absolute immunity did not extend to government attorneys who were not functioning in a traditionally prosecutorial role:

> The underlying litigation here bears little resemblance to a criminal prosecution. Nor can it be characterized as inherently governmental. The Department did not allege plaintiff violated any law or regulation, nor was the Department acting to protect the public health, safety, or welfare. The remedy sought was not a fine, injunction, or license revocation. Rather, the Department was acting as a common creditor attempting to collect a debt. There is nothing unique to distinguish that claim from those filed by businesses every day. The Department was not acting here as the state qua state, but as an ordinary litigant.

*Canell*, 811 F. Supp. at 552.  The same is true of Defendants here.  Defendants brought a federal civil RICO action against Plaintiffs with no basis of governmental enforcement

_____

[9] The Court has considered the other cases cited by Defendants to support the extension of absolute prosecutorial immunity to civil proceedings and nonetheless is not persuaded that an extension of absolute immunity here is justified.  The prosecutors' roles in those cases more closely resembled their traditional roles in criminal proceedings—thereby justifying the extension of immunity—more than the federal civil RICO action here. (*See, e.g.*, Doc. 271 at 10 (citing *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916 (9th Cir. 2004); *State v. Superior Court in and for Cnty. of Maricopa,* 186 Ariz. 294, 921 P.2d 697 (Ct. App. 1996); *Challenge, Inc. v. State ex rel. Corbin*, 138 Ariz. 200, 673 P.2d 944 (Ct. App. 1983); *Butz*, 438 U.S. 478; *Mulligan v. Grace*, 136 Ariz. 483, 666 P.2d 1092 (Ct. App. 1983)).)

under RICO itself.  That action was patently frivolous, but the lack of absolute immunity does not turn on the frivolousness of the action.  It turns on the lack of statutory authority to bring federal RICO actions as the enforcer of that statute, which leaves the public lawyer here in the same position as other state officers and private lawyers.  Accordingly, no absolute immunity protects Defendants' actions in filing the federal civil RICO lawsuit.[10]  The County's arguments that it is immune for the judicial acts of its officers therefore also fails.

Aubuchon has alternatively asserted qualified immunity for her actions related to the filing of the civil RICO action.  As will be discussed in more detail in the substantive analysis of claims brought pursuant to 42 U.S.C. § 1983,[11] qualified immunity protects a government official from suit where that official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Plaintiffs have sufficiently alleged that Aubuchon's actions taken incident to the filing of the civil RICO action constituted knowing violations of established constitutional rights and fall outside qualified immunity.[12]

### 2.    Non-Immunity Challenges

Aubuchon's and Arpaio's argument that Plaintiffs have not sufficiently pled that the civil RICO case ended in a "favorable termination" also fails.  In order to state a claim for wrongful institution of civil proceedings, a plaintiff must allege that the

---

[10] The foregoing analysis applies to Thomas's assertions that absolute immunity with respect to his actions related to the civil RICO action should bar Plaintiffs' other causes of action.  His arguments are unavailing.  Rather than repeating this conclusion under the analysis section for each discrete cause of action, the Court states here that because Thomas's actions related to the civil RICO action are not absolutely immune, his motion to deny Plaintiffs' other causes of action based on the assertion of absolute immunity will be denied.

[11] *See infra*, Part V(K)(1).

[12] *See, e.g.*, *supra*, Part IV.

1  defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun [or
2  maintained] without probable cause (4) terminated in plaintiff's favor and (5) damaged
3  plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416-17, 758 P.2d
4  1313, 1318-19 (1988).   Plaintiffs have alleged that the federal civil RICO lawsuit
5  terminated in their favor when it was withdrawn.  Defendants content that a voluntary
6  dismiss is not a favorable termination and therefore any claim for wrongful institution of
7  civil proceedings must fail (*see, e.g.*, Doc. 283 at 14).  However, a voluntary dismissal
8  can constitute a favorable termination where the "termination or dismissal indicates in
9  some fashion that the accused is innocent of wrongdoing." *Frey v. Stoneman*, 150 Ariz.
10  106, 110, 722 P.2d 274, 278 (1986).

11  Here, with respect to the federal civil RICO action, the voluntary dismissal came
12  after several indications that the complaint was meritless. Independent counsel had
13  reviewed the complaint and stated that there was no merit to the action.  The complaint
14  was initially dismissed by the judge for failing to state a plausible claim for relief.  As
15  detailed above, the complaint was meritless on its face.[13]  These facts are sufficient to
16  support Plaintiffs' claims that the civil RICO case was terminated in their favor.
17  Defendants' motions to dismiss Plaintiffs' claims related to the wrongful institution of
18  civil proceedings will be denied.

19  **B.   Malicious Prosecution**

20  Wilcox, Donahoe, and Stapley have all raised claims for malicious prosecution
21  based on criminal proceedings against them. Wilcox bases her claim on the criminal
22  indictments obtained against her in December 2009 and January 2010.  Donahoe has
23  brought claims for malicious prosecution against Arpaio and Hendershott for the criminal
24  complaint that was filed against him on December 9, 2009.  Stapley has multiple counts
25  for malicious prosecution directed at Thomas, Aubuchon, Arpaio, and Hendershott, for
26  both of the criminal indictments obtained against him in November 2008 and December

27  _____
[13] *See supra*, Part IV.
28

2009.  Thomas, Aubuchon, and Maricopa County assert that the claims are premised on immune conduct and must accordingly be dismissed.  Aubuchon also argues that Plaintiffs have failed to plead that the action terminated in their favor, and have accordingly failed to state a claim for relief for wrongful institution of civil proceedings. Arpaio and Hendershott put forth the same argument as the basis for dismissal of the malicious prosecution claims.  Defendants' arguments fail for the reasons stated below.

### 1.     Immunity as to Prosecutorial or Investigative Functions

"[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  *Burns*, 500 U.S. 478, 486 (1991). When determining whether a prosecutor is absolutely immune from suit for his conduct, the nature of the function performed is the touchstone of the analysis.  *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal citations omitted) (noting prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it").  Absolute immunity does not attach to all actions taken by a prosecutor merely by virtue of his title as prosecutor; rather, the protections of absolute immunity extend only to advocative, prosecutorial functions, not to actions better described as administrative or investigative.  *See Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor.")). Where a  prosecutor is not acting as "'an officer of the court,' but is instead engag[ing] in other . . . investigative or administrative tasks," he has no absolute immunity.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 43).  However, "the analysis of whether prosecutorial acts constitute advocacy or police-type investigative work is complicated by the fact that the Supreme Court has resisted any attempt to draw a bright-line between the two."  *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005).

While it can be a difficult task to determine whether a particular act is better categorized as prosecutorial or investigative, case law does provide some indications of

where the lines between immune and non-immune actions can be drawn. It is well established that certain prosecutorial functions, such as the "decision to initiate a prosecution[,]" *Van de Kamp*, 129 S. Ct. at 860, are intimately associated with the judicial phase of the criminal process and thus entitled to absolute immunity. Further, absolute immunity attaches to "the types of activities . . . which . . . necessarily require legal knowledge and the exercise of related discretion." *Id.* at 862. However, "investigatory acts" such as "'evidence gathering and witness interviewing . . . [which are] normally performed by a detective or police officer" are not entitled to absolute immunity. *Cousins*, 568 F.3d at 1068 (citing *Buckley*, 509 U.S. at 273).

In *Buckley*, the Supreme Court stated that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274. The Court went on to note that while a lack of probable cause indicates a prosecutor is operating as an investigator instead of an advocate, the presence of probable cause does not automatically bring all of a prosecutor's subsequent actions within the umbrella of absolute immunity. Rather, the Court stated that "a determination of probable cause does not guarantee a prosecutor absolute immunity for liability for all actions taken afterwards. Even after that determination ... a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Id.* at 274 n.5. The Supreme Court has also definitively stated that a prosecutor is not entitled to absolute immunity for providing legal advice to police officers. *Burns*, 500 U.S. at 492-96.

In these motions to dismiss the Defendants charge the Court with drawing the boundary between absolutely immune prosecutorial actions and adjacent actions that are only qualifiedly immune. Some of the claims narrate the criminal prosecutions, but that is usually inextricably intertwined with allegations of qualifiedly immune investigatory conduct. That does not immunize the entire claim. The Court does not understand such allegations as seeking recovery for the prosecutions themselves and that would not be allowed. Rather, Plaintiffs have also alleged conduct beyond the protection of absolute immunity, particularly with respect to the investigative and advising actions taken in

conjunction with the MACE unit: the allegations against Defendants are that they were taking actions normally done by police officers, not prosecutors. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (no absolute immunity where prosecutor is essentially functioning as a police officer or a detective).

This consolidated matter well illustrates the practical reality that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995). The proper course of action is to deny the motions to dismiss for absolute immunity, subject to later determination based on the facts developed through discovery.[14] *Id.* This does not subject the Defendants to improper litigation for immune acts—the litigation and discovery must still encompass facts at the boundaries in order to adjudicate the boundaries. To the extent Plaintiffs, particularly Stapley, has squarely grounded any claim on prior criminal prosecution by Thomas and Aubuchon, those claims can and must be dismissed at this time. Those immune actions extend to the County as well; however, the County's arguments that it is immune for the judicial acts of its officers also fails in the criminal context to the extent that Plaintiffs have based their claims on non-prosecutorial conduct. Because each specific cause of action alleges at least some non-immune activity, none of the counts will be entirely dismissed.[15]

---

[14] As with the immunity analysis regarding Defendants' actions related to the civil RICO action, *see supra* n. 10, the analysis regarding Thomas's absolute immunity with respect to actions related to the criminal cases applies as well to the remainder of Plaintiffs' causes of action which Thomas moves to dismiss. Dismissal on the basis of absolute immunity is not warranted at this time, with the exception of the specific claims ground directly in the criminal prosecutions noted in this Order.

[15] Aubuchon has alternatively asserted qualified immunity for her actions related to the filing of the civil RICO action. As with the claims for wrongful institution of civil proceedings, Plaintiffs have sufficiently alleged that Aubuchon's actions, such as aspects of the criminal investigations, taken incident to the criminal indictments underlying the

1

## 2. Non-Immunity Challenges

Arpaio and Aubuchon have also raised non-immunity based challenges to the malicious prosectuion claims: namely, that Plaintiffs have failed to sufficiently allege that the criminal actions terminated in their favor.   Under Arizona law, "the elements of a malicious prosecution claim are: (1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages."   *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975). "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"   *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).   "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."   *Id.*

Defendants challenge the malicious prosecution claims on the basis that Plaintiffs have failed to plead a favorable termination of the actions against them.   Stapley claims his second indictment was dismissed by Thomas and sent to Gila County Attorney Daisy Flores for review, who declined to prosecute the case.   As with the analysis of the wrongful institution of civil proceedings claims, Plaintiffs have alleged facts to create a fair inference that the "termination or dismissal" of the criminal proceedings "indicates in some fashion that the accused is innocent of wrongdoing."   *Frey*, 150 Ariz. at 110, 722 P.2d at 278.

---

malicious prosecution claims constituted knowing violations of established constitutional rights and fall outside qualified immunity.

C.     Abuse of Process

All Plaintiffs have raised claims for abuse of process.[16]  In Arizona, "one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed, is subject to liability to the other for harm caused by the abuse of process."  *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (Ct. App. 1982).  "The elements of an abuse of process claim are '(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of proceedings.'"  *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257, 92 P.3d 882, 887 (Ct. App. 2004) (quoting *Nienstedt*, 133 Ariz. at 353, 651 P.2d at 881).  "A party can demonstrate the latter element by showing that the process has been used primarily to accomplish a purpose for which the process was not designed."  *Id.* (internal quotations omitted).  "Process" encompasses the entire range of procedures incident to litigation.  *Id.* at 258, 92 P.3d at 888.

Abuse of process is "a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the course of the process."  *Id.* (internal quotations omitted).  "There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  *Id.*  "Liability should result only when . . . the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."  *Id.* at 259, 92 P.3d at 889 (internal quotations omitted).   Plaintiffs allege that Defendants investigated, arrested, and prosecuted them solely for improper retaliatory purposes in their political battle and to harm Plaintiffs' reputations.  However, "[a]buse of process . . . is not commencing an action or causing process to issue without justification."  *Morn v. City of Phoenix*, 152 Ariz. 164, 167, 730 P.2d 873, 876 (Ct. App. 1986).  Even where, as alleged here,

---

[16] The allegations regarding abuse of process appear as follows: Wilcox (Count 7), Mundell (Count 1), Donahoe (Counts 1 and 2), Schuerman (Count 3), Wilson (Counts 1 and 3), and Stapley (Count 8).

litigation is motivated by "pure spite[,]" that is insufficient to state an abuse of process claim "where process is used only to accomplish the result for which it was created." *Id.* (internal quotations omitted).

Plaintiffs have alleged that their prosecutions, and in some cases, arrests, were improper, but, with the exception of Donahoe, they "have not alleged that any specific judicial process was employed for a purpose other than for what it was designed." *See Lovejoy v. Arpaio*, 2010 WL 466010, at 15 (D. Ariz. 2010). Donahoe and Wilson's claims for abuse of process are essentially duplicative of their malicious prosecution counts. Wilson's count will therefore be dismissed. However, to the extent Donahoe is alleging abuse of process for Defendants' actions related to hiring a process server to serve Donahoe with the federal RICO suit, whom they knew or should have known had been previously prosecuted for threatening to kill Donahoe, this is quintessentially the type of allegation that supports a claim for abuse of process.

### D.   Intentional Infliction of Emotional Distress

All Plaintiffs have raised claims for intentional infliction of emotional distress. A plaintiff must satisfy three elements to state that claim: "*first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third*, severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). To establish that the conduct was sufficiently "extreme" or "outrageous," a plaintiff must show that it was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (Ct. App. 1999).

Defendants assert conclusorily that none of the conduct alleged is sufficiently extreme or outrageous for intentional infliction of emotional distress. Plaintiffs in turn argue that the retaliatory actions against them, taken by officials vested with

governmental authority, are sufficiently outrageous to support the claims.  At this stage in the proceedings, taking the allegations in the complaints as true, Plaintiffs have stated enough to survive dismissal under Rule 12(b)(6).  The Court does not decide whether Plaintiffs will be able to establish at the summary judgment stage that the actions here were sufficiently outrageous.  However, the complaints contain allegations of unlawful conduct that would make "an average member of the community . . . exclaim, Outrageous!", particularly when considering that the alleged actions were taken by government officials.   *See Ford*, 153 Ariz. at 43, 734 P.2d  at 585 (citing Restatement (Second) of Torts § 46 cmt. d).   Further, Plaintiffs have sufficiently alleged that Defendants were acting in retaliation against them and with the intention of causing, or at least with reckless disregard of the risk of, emotional injury.  The Court notes that, at later stages in these proceedings, claims for intentional infliction of emotional distress will not be used to overcome any immunity grounds that would prohibit claims for the wrongful litigation; however, recognizing that retaining these claims will have no significant impact on the scope of discovery, the claims for intentional infliction of emotional distress will not be dismissed at this pleading stage.

### E.    Defamation

Mundell, Donahoe, Schuerman, and Wilson have all alleged claims for defamation.  In order to state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than plaintiff; and (3) that the statement tends to harm plaintiff's reputation.  *See Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989).  For public officials, the standard is higher: "[a] public figure plaintiff must show that the defendant acted with actual malice—that is, knowledge that [a statement] was false or reckless disregard of whether it was false or not." *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002).  For claims of defamation, actual malice is present when an allegedly defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  *New York Times v.*

*Sullivan*, 376 U.S. 254, 280 (1964); *see also Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 487, 724 P .2d 562, 573 (1986).  Circumstantial evidence alone can suffice to establish actual malice to survive a motion to dismiss.  *See Selby v. Savard*, 134 Ariz. 222, 225, 655 P.2d 342, 345 (1982) (citing *Herbert v. Lando*, 441 U.S. 153, 160 (1979)) ("Proof of the necessary state of mind [can] be in the form of objective circumstances from which the ultimate fact could be inferred.").

Statements of rhetorical hyperbole are not actionable as "[t]he law provides no redress for harsh name-calling."  *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002).  Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion, are actionable as defamation.  *See Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002) ("[S]tatements including provably false factual assertions which are made or implied in the context of an opinion are not absolutely protected from defamation liability under the First Amendment." (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990))).  To determine whether a statement can be reasonably interpreted as a factual assertion, a court "must examine the totality of the circumstances in which it was made."  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). "The issue of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court to decide."  *Rodriguez*, 314 F.3d at 985  (internal citations omitted).  Where the allegedly defamatory statement could "reasonably be construed as either fact or opinion, the issue should be resolved by a jury." *Id.* at 985-86 (internal citations and quotation marks omitted).

The defamation claims cannot be dismissed on the ground that the allegedly defamatory statements are merely opinion.  Considering that (1) most of the allegedly defamatory statements were made in Defendants' press releases, who represented the highest levels of the Sheriff's office and County Attorney's office responsible for investigating and prosecuting unlawful conduct, and (2) the statements regarded the viability of various legal charges, the sufficiency of evidence as to criminal and civil charges against Plaintiffs, and other allegations of wrongdoing and unlawful conduct

against Plaintiffs, the Court concludes that an average person could see the allegedly defamatory statements as implying facts.  *See Underwager*, 39 F.3d at 366 (noting Court should consider allegedly defamatory statement both "in its broad context [including] the general tenor of the entire work, the subject of the statements, the setting, and the format of the work," and in its "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation").  Relatedly, Plaintiffs' claims for defamation sufficiently allege that the statements were made with knowledge that they were false or with reckless disregard of whether the statements were false or not.

The Court also declines to grant Arpaio's motion on the basis that he is entitled to absolute judicial immunity for the allegedly defamatory statements since they were made in the context of litigation.  While statements about filing the civil RICO complaint and republication of the allegations of the complaint are absolutely privileged as germane to the litigation, viewing the allegations together, Plaintiffs have alleged that the statements here went beyond the judicial immunity privilege.  On review of the defamation claims, some of the allegations of defamation are sufficient whereas others, viewed in isolation, may be insufficient.  However, rather than isolate individual paragraphs within each defamation count, the claims will not be dismissed because at least some of the allegedly defamatory statements are sufficient to support the claims and overcome judicial immunity.  Because all of these claims are interrelated, denying the motions to dismiss in this respect does not enhance the scope of discovery or the burden of this litigation; Defendants will be able to further address any specific insufficiencies at summary judgment.[17]

---

[17] Aubuchon notes that Schuerman has maintained a claim of defamation against her in Counts 4 and 5 (Doc. 284 at 22).  The allegations in Schuerman's complaint do not support a claim of defamation against Aubuchon; accordingly, her motion to dismiss will be granted as to these two counts.  Aubuchon also notes that Mundell does not name Aubuchon in her defamation count, but seeks to dismiss count six as to the defamation claim on the basis that the facts do not sufficiently tie Aubuchon to the defamatory

1

**F.     False Light Invasion of Privacy**

2         Donahoe, Mundell, Schuerman and Wilson have all alleged claims for false light

3  invasion of privacy.  Arpaio moves to dismiss these counts on the basis that the Plaintiffs

4  were all public officials and accordingly, the tort is not available to them.  Aubuchon

5  also moves to dismiss Schuerman and Mundell's counts on the basis that the claims do

6  not sufficiently tie Aubuchon to the allegedly unlawful conduct.

7         In order to state a claim for false light invasion of privacy, a plaintiff must allege

8  that the false light in which the plaintiff was placed would be "highly offensive to a

9  reasonable person" and that the defendant "published [the matter] with knowledge of the

10 falsity or reckless disregard for the truth."  *Godbehere v. Phoenix News., Inc.,* 162 Ariz.

11 335, 783 P.2d 781, 786 (1989).  "A plaintiff may bring a false light invasion of privacy

12 action even though the publication is not defamatory, and even though the actual facts

13 stated are true."  *Id.* at 787.  Special rules apply where the false light publication regards a

14 public official: where the publication "presents the public official's private life in a false

15 light, he or she can sue under the false light tort, although actual malice must be shown."

16 *Id.* at 789.  However, "a plaintiff cannot sue for false light invasion of privacy if he or she

17 is a public official *and* the publication relates to performance of his or her public life or

18 duties."  *Id.* (emphasis in original).

19        Whether an individual may fairly be categorized as a public official depends on

20 the degree to which the "'government employee [has] or appear[s] to the public to have[]

21 substantial responsibility for or control over the conduct of governmental affairs.'"  *Id.*

22 (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)).  Here, Mundell and Donahoe can

23 fairly be named public officials, and the alleged false light related, broadly, to the

24 performance of their public duties as judges.[18]  *Id.* ("[P]laintiffs have no right of privacy

25

26 statements; the Court agrees, and will grant Aubuchon's motion in this respect as well.

27 [18] Although the transcript from the proceedings is not entirely clear on this point, it
appears Mundell withdrew her claim for false light at the February 10 oral argument on
28 the pending motions to dismiss (Doc. 335).   Plaintiffs Donahoe, Wilson, and

1    with respect to the manner in which they perform their official duties"). The Court

2    therefore agrees that Donahoe and Mundell are precluded from stating claims for false

3    light invasion of privacy. The Court need not decide whether Wilson should be

4    considered a public official in a false light claim analysis; because Wilson failed to

5    respond to Defendants' motion to dismiss her false light claim, the Court considers her

6    silence acquiescence to the motions being granted on this issue. *See* LRCiv 7.2(i).

7    Accordingly, Defendants' motions to dismiss will be granted as to Mundell, Donahoe,

8    and Wilson's counts for false light.

9         With respect to Schuerman's claim for false light, Arpaio's conclusory statement

10   that Schuerman is also a public official lacks merit.  Schuerman was "Stapley's

11   secretary" (Doc. 307 at 22); an individual does not become a public official merely by

12   virtue of being employed by the government.   Addressing Aubuchon's motion,

13   Schuerman has sufficiently alleged that Defendants acted in concert to have published

14   false statements that Schuerman was under criminal investigation, thus placing

15   Schuerman in a false light.  Accordingly, Schuerman's claim for false light will not be

16   dismissed.

17        **G.    Intrusion Upon Seclusion**

18        Donahoe has raised a claim for intrusion upon seclusion in violation of Arizona

19   law.  Donahoe alleges Defendants' decision to hire a process server to serve Donahoe

20   with the federal RICO suit, whom they knew or should have known had been previously

21   prosecuted for threatening to kill Donahoe, as well as Defendants' "publishing on the

22   internet Judge Donahoe's unlisted home address" (Doc. 243 at 20), as the bases for this

23   claim.  However, Donahoe concedes in his response to the motions to dismiss that the

24   facts underlying this claim are insufficient to state a claim for intrusion upon seclusion

25   (Doc. 307 at 23) ("Donahoe concedes that these facts are not well-suited to an intrusion

26

27   Schuerman's Joint Response provides a defense of only Schuerman's claim for false light
     (Doc. 307 at 21-22).

28

1   upon seclusion claim.").   Donahoe requests leave to amend his complaint to replead this

2   cause of action under a "better label."  (*Id.*)

3          The Court was clear in its prior order that it expected Plaintiffs to take care in the

4   amendment of their complaints to properly plead all of their causes of action and that

5   failure to comply with the Court's instructions in that order may lead to dismissal of

6   claims (Doc. 230 at 21).  Donahoe has failed to plead this claim as an intrusion upon his

7   seclusion, despite ample opportunity to plead his potential claims under tenable legal

8   theories.  However, as discussed above,[19] the facts underlying Donahoe's intrusion upon

9   seclusion claim also support Donahoe's claim for abuse of process.  To the extent this

10  cause of action is mislabeled, relief for the allegedly wrongful conduct underlying this

11  cause of action is available under an abuse of process claim.  The claim for intrusion

12  upon seclusion will be dismissed.

13          **H.     False Arrest[20]**

14          Stapley has brought a claim for false arrest based on his September 21, 2009

15  arrest.  "False arrest, a species of false imprisonment, is the detention of a person without

16  his consent and without lawful authority."  *Reams v. City of Tucson*, 145 Ariz. 340, 343,

17  701 P.2d 598, 601 (Ct. App. 1985) (citing *Slade v. City of Phoenix*, 112 Ariz. 298, 300,

18  541 P.2d 550, 552 (1975)).  "If the arrest or imprisonment has occurred pursuant to valid

19  legal process, the fact that the action was procured maliciously and without probable

20  cause does not constitute false arrest or false imprisonment; the proper remedy under

21  such circumstances is an action for malicious prosecution."  *See Slade*, 112 Ariz. at 300,

22  541 P.2d at 552 (internal citations omitted).  However, "[a] plaintiff establishes a prima

23  facie case [of false arrest] by showing that he was arrested by the defendant without a

24  warrant, and the burden then devolves upon the defendant to establish that the arrest was

25  ───────────────────────

26  [19] *See supra* Part V(C).

27  [20] Stapley's Fourth Claim for Relief is labeled "False/Wrongful Arrest-Imprisonment"
     (Doc. 246 at 30); the Court treats this as a false arrest claim.

28

1    founded upon probable cause."  *Reams*, 145 Ariz. at 343, 701 P.2d at 601 (citing
2    *Whitlock v. Boyer*, 77 Ariz. 334, 271 P.2d 484 (1954)).

3         Stapley has specifically alleged that his arrest was made without probable cause
4    and without a warrant (Doc. 246 at 30).  Accordingly, the burden shifts to Defendants to
5    establish that there was probable cause to support Stapley's arrest and that his detention
6    was therefore lawful.   Arpaio's motion to dismiss Stapley's false arrest count relies on
7    the conclusory allegation that there was probable cause to support the arrest and the
8    wrongful assertion, in the false arrest context, that an "arrest without a warrant is not
9    prima facie evidence of false arrest."  (Doc. 283 at 21); *see also Dubner v. City and Cnty.*
10   *of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) ("Although the plaintiff bears the
11   burden of proof on the issue of unlawful arrest, she can make a prima facie case simply
12   by showing that the arrest was conducted without a valid warrant. At that point, the
13   burden shifts to the defendant to provide some evidence that the arresting officers had
14   probable cause for a warrantless arrest.  The plaintiff still has the ultimate burden of
15   proof, but the burden of production falls on the defendant.").  Arpaio's reply in support of
16   his motion fails to respond to Stapley's authority supporting his claim for false arrest and
17   does not provide evidence that there was probable cause for Stapley's warrantless arrest
18   (Doc. 321 at 18-19); his motion will be denied.  Aubuchon's motion to dismiss this count
19   is based on the premise that Stapley "admits that the order to arrest him came from
20   someone other than Aubuchon" and that "any charging decision made by Aubuchon
21   incident to the arrest is absolutely immune."  (Doc. 284 at 13.)  At this stage, considering
22   Stapley's allegations regarding Aubuchon's non-prosecutorial involvement with the
23   MACE unit and the interweaving nature of all of these actions, Stapley has sufficiently
24   alleged Aubuchon's involvement in his arrest to overcome a motion to dismiss.  The
25   motions to dismiss Stapley's claim for false arrest will therefore be denied.

26         **I.    Violations of Arizona's Racketeering Statute**
27         Arpaio, Thomas, and Aubuchon move to dismiss Donahoe's Count 13,
28   Schuerman's Count 9, and Wilson's Count 11, which have all alleged claims for

violations of Arizona's racketeering statute, A.R.S § 13-2314.04.  Thomas and Aubuchon claim that the basis for these counts is the filing of the federal civil RICO case, for which they have absolute immunity.[21]  Arpaio and Aubuchon argue that these counts fail to state a claim for which relief may be granted because they do not properly allege that the predicate acts cited as the basis for the RICO action were committed for financial gain.[22]

As is relevant here, the Arizona racketeering statute "requires (1) an act (2) 'that would be punishable by imprisonment for more than one year under the laws of this state . . . regardless of whether the act is charged or indicted,' (3) 'involv[ing]' any one of a number of enumerated offenses (4) 'committed for financial gain.'" *State, ex rel. Horne v. Campos*, 226 Ariz. 424, 250 P.3d 201, 208 (Ct. App. 2011).  Under A.R.S. § 13-2314.04(T)(3), the requisite "pattern of racketeering activity" is defined as either:

> (a) At least two acts of racketeering as defined in section 12-2301, subsection D, paragraph 4, subdivision (b), item (iv), (v), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xvi), (xviii), (xix), (xx), (xxvi) that meet the following requirements:
>
> (i) The last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering.
>
> (ii) The acts of racketeering that are alleged as the basis of the claim were related to each other or to a common organizing principle, including the affairs of an enterprise.  Acts of racketeering are related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics.
>
> (iii) The acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous.

---

[21]  Because, as discussed above in Part V(A)(1), there is no absolute immunity for the filing of the federal civil RICO case, Thomas and Aubuchon's motion to dismiss the racketeering counts on that basis will be denied.

[22]  Arpaio also argues in his motion to dismiss that the predicate acts alleged are unconstitutional; however, he withdrew that argument in his reply (Doc. 321).

1    Here, Plaintiffs allege as the predicate acts of the alleged racketeering scheme:
2    theft by extortion, bribery of a public servant, offer to exert improper influence on public
3    officer or employee for consideration in violation of A.R.S. §§ 13-1804(A)(5) and (7),
4    13-2602(A), and 13-2606; and obstructing criminal investigations or prosecutions in
5    violation of A.R.S. § 13-2409 (*see* Doc. 243 at 23).  Plaintiffs claim that Defendants
6    attempted to induce Schuerman to falsely testify against Stapley by threatening to
7    criminally investigate and prosecute her is she did not cooperate.  They further allege that
8    the Sheriff's office obstructed investigations by threatening Deputy Frank Munnell with
9    physical harm is he cooperated with an investigation into the Sheriff's Office by the
10   Department of Justice.

11   The Court agrees that Plaintiffs have failed to state a plausible claim for relief
12   under Arizona's racketeering statute.  Plaintiffs allege that the MACE unit was operated
13   for financial gain because, for example:

14           (1) the MACE Unit was used to heighten the appearance of
15           public corruption permitting Sheriff Arpaio to raise money
             for the Sheriff's Command Association Fund, which provided
16           financing for Thomas' and Sheriff Arpaio's election
             campaigns; (2) the same perception helped Thomas and
17           Sheriff Arpaio raise money from private donors for their
             political campaigns; and (3) one of the MACE Unit's
18           objectives was to attempt to force the BOS to eliminate the
             Court Tower Project and divert funds dedicated to it to the
19           MCSO and MCAO's budgets, which was the critical factor
             necessary for Thomas and Sheriff Arpaio to exercise their
20           power.

21   (Doc. 245 at 19-20.)  These allegations are simply too attenuated from the purposes of the
22   RICO statute to constitute actions committed for financial gain.  That there was an
23   indirect and attenuated financial benefit of campaign fundraising from the actions taken
24   by the MACE unit does not make the operation one that was committed for financial
25   gain.  Rather, as evidenced by the complaints themselves, Plaintiffs allege the MACE
26   unit operated for the purpose of investigating and prosecuting purported political enemies
27   of Arpaio and Thomas, such as Plaintiffs.[23]  To allow such activity to constitute

28   _____
     [23] Plaintiffs also claim, representatively, that the "stated purpose" for which the MACE

racketeering would stretch the statute beyond its plain meaning and in a way that is contrary to the rule of lenity in interpreting criminal statutes.  Accordingly, Defendants' motions to dismiss Plaintiffs' claims for racketeering under Arizona law will be granted.

### J.      Violations of the Arizona Constitution

Wilcox's fifth claim for relief is a general catch-all count labeled "Violations of the Arizona Constitution."  Within this count, Wilcox cites to over sixty paragraphs in her complaint as the factual basis for the count.  She claims that Defendants' conduct outlined in the complaint violates all of the following constitutional provisions: due process rights under Article II, § 4, free speech rights under Article II, § 6, privacy rights under Article II, § 8, and the right to equal privileges and immunities under Article II, § 13 (Doc. 239 at 29-30).  These state constitutional analogs to the federal claims, discussed later, will be dismissed for the same reasons as the federal analogs will be dismissed.  The sole exception is the free speech claim under Article II, § 6, which will not be dismissed for the same reason the federal retaliation for exercise of First Amendment claims will not be dismissed.  Accordingly, this count will be dismissed as to all claims except free speech under Article II, § 6.

### K.      Claims Under 42 U.S.C. § 1983

To state a claim for a violation of 42 U.S.C. § 1983, a plaintiff "'must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'"  *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Plaintiffs have, in some cases, lumped together multiple bases for their claims under 42 U.S.C. § 1983 under one catch-all heading.  Often, these claims are overlapping with the causes of action alleged in other counts (such as claims for abuse of process and malicious prosecution).  These claims have been addressed above and will not be treated separately here.  In other cases, Plaintiffs have alleged general claims

Unit was established was "fighting government corruption[.]"  (Doc. 243 at 5.)

without a clear legal basis, such as "law enforcement retaliatory conduct." The Court finds some of these labels are not intended as separate causes of action; to the extent they are so intended, Plaintiffs have failed to state a claim for relief. However, to the extent the claims under § 1983 can be grouped under identifiable legal theories for established constitutional violations, they will be addressed below.

### 1.    Qualified Immunity

As a threshold matter, the Court addresses Arpaio's and Aubuchon's arguments that they are entitled to qualified immunity for the conduct at issue here. "Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices." *Butler*, 281 F.3d at 1024 (citing *Harlow*, 457 U.S. at 818). Qualified immunity extends to protect a government official from suit where that official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal citations and quotation marks omitted). In evaluating a claim to qualified immunity, the Court first determines whether the plaintiff has shown that defendant's conduct constituted a violation of plaintiff's constitutional rights. *See Sonoda v. Cabrera*, 255 F.3d 1035, 1040 (9th Cir. 2001). Where a plaintiff sufficiently alleges that the government official committed a constitutional violation, the court then determines whether the violated right was clearly established and whether a reasonable public official could have believed that his alleged conduct was lawful. *See id.*

In moving to dismiss the claims against them on the basis of qualified immunity, Defendants rely on generalized assertions that Plaintiffs have failed to plead their claims sufficiently to overcome qualified immunity and that Defendants "at no time . . . violated Plaintiff[s'] statutory or constitutional rights and at all relevant times [Defendants'] conduct was reasonable and not violative of clearly established law." (Doc. 284 at 9; *see also* Doc. 283 at 17 (arguing allegations against Arpaio are conclusory, Plaintiffs have established no constitutional violation, and "a reasonable government officer in Arpaio's position could have believed his actions to be lawful, in light of clearly established law

and the information he possessed at the time").)   As discussed throughout this order, Plaintiffs have sufficiently alleged that Defendants' conduct violated various, well-established constitutional rights.  Plaintiffs allege that they were subject to searches and arrests that Defendants knew were not supported by probable cause and that they were subject to retaliatory abuses of government power; such conduct is clearly violative of well-established rights.  *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) ("[A]s the Fourth Amendment prohibits warrantless searches generally, so too does it prohibit a search conducted pursuant to an ill-begotten or otherwise invalid warrant."); *see also Butler*, 281 F.3d at 1024 ("[N]o reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant."); *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008) (noting well established prohibition on government officials abusing authority for personal motives and specifically that "arresting someone in retaliation for their exercise of free speech rights [is] violative" of clearly established law).

The claims concerning the civil RICO action clearly fall outside qualified immunity.  The allegations in these cases are aided by the underlying RICO complaint filed against Plaintiffs, which was groundless on its face.  No colorable violation of the predicate offenses of bribery and extortion under Arizona law was alleged.  The claims and the remedy had nothing to do with the federal RICO statute.  As noted above, the claims for making or threatening to make bar complaints against Thomas were doubly frivolous as such action is absolutely immune from suit.[24]

Due to the overlapping nature of the claims presented here and the asymmetry of information between Plaintiffs and Defendants regarding which Defendants actually took, ordered, supervised, or approved certain actions, the Court cannot now dismiss any claims on the basis of qualified immunity.  While the Court does not prejudge whether some of Plaintiffs' claims may ultimately fail under a qualified immunity analysis after

---

[24] *See supra*, Part IV.

discovery in this matter, Plaintiffs have pleaded sufficient facts and allegations to overcome qualified immunity at this stage.   Defendants will not be prejudiced by allowing these claims to proceed since they will already be subject to discovery in this matter, which helps overcome the concern that defendant receive "a ruling on qualified immunity early in the proceedings so that the costs and expenses of trial are avoided[.]" *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) (internal citations omitted).

### 2.     Retaliation for Exercise of Free Speech Rights

Wilcox, Donahoe, Wilson, and Stapley have raised claims for retaliation for the exercise of their First Amendment rights.  The substance of Plaintiffs' arguments is that they were investigated, criminally prosecuted, named as defendants in the federal civil RICO action and/or otherwise harassed in retaliation for the exercise of their First Amendment rights.  Specifically, Donahoe claims that he was retaliated against for the judicial rulings he made in connection with the underlying Court Tower litigation and Wilson claims she was retaliated against for statements made regarding budget recommendations and allocations of funds.   Wilcox and Stapley claim they were retaliated against for various statements made against Defendants in the course of the political feud between the Board of Supervisors and the County Attorney and Sheriff's Offices.   (*See, e.g.*, Doc. 239 ¶¶ 30-31 (Wilcox "spoke out publicly against the immigration sweeps and accused Arpaio, Hendershott, and the MCSO of racial profiling during the sweeps" and these "public statements antagonized Arpaio, who, together with Hendershott, the MCSO, Thomas, and the MCAO, began a retaliation campaign against [Wilcox]"); Doc. 246 ¶ 33-34; 37-40, 45 (Stapley "made specific inquiries concerning expenditures to many County departments including MCSO and MCAO"; "Arpaio's MCSO and Thomas' MCAO took great exception to any MCBOS' [*sic*] efforts that might affect those departments and directed their disagreements toward [Stapley]"; listing other instances of critical speech by Stapley against Defendants for which he claims retaliation).)

1    In order to state a claim for retaliatory prosecution under 42 U.S.C. § 1983, a
2  plaintiff must allege "first that [Defendants] took action that would chill or silence a
3  person of ordinary firmness from future First Amendment activities" and second "that
4  [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants']
5  action." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008) (citing
6  *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)) (internal citations
7  omitted).  Further, "when a plaintiff claims prosecution in retaliation for an exercise of a
8  First Amendment right, the plaintiff must plead and prove that the defendant lacked
9  probable cause." *Id.* at 901 (citing *Hartman v. Moore*, 547 U.S. 250, 265 (2006) ("[A]
10 retaliatory motive on the part of an official urging prosecution combined with an absence
11 of probable cause supporting the prosecutor's decision to go forward are reasonable
12 grounds to suspend the presumption of regularity behind the charging decision . . . and
13 enough for a prima facie inference that the unconstitutionally motivated inducement
14 infected the prosecutor's decision to bring the charge.")).  For claims that are not
15 premised solely on retaliatory prosecution, a plaintiff's "failure to plead and prove [an
16 absence of] probable cause" is not "dispositive." *Id.*

17    Aubuchon's motion to dismiss these retaliation claims relies on the faulty premise
18 that she is entitled to immunity for her actions; as established above, immunity will not
19 bar any claims against Aubuchon at this stage for her actions related to the filing of the
20 civil RICO complaint or any investigative functions taken in her role as prosecutor.[25]
21 Aubuchon's recitation of the elements of a claim for retaliation for exercise of free
22 speech rights and conclusory claim that Plaintiffs have failed to "plead the requisite
23 elements" or "otherwise fail[ed] to tie any non-immune acts to Aubuchon" (Doc. 307) is
24 insufficient to warrant dismissal; the complaints, as detailed above, allege enough facts to
25 state a claim for retaliation and sufficiently claim that the retaliatory schemes were
26 conducted jointly by Defendants.

27

28

[25] *See supra*, Part V(A), (B).

- 59 -

1    Arpaio argues that Plaintiffs do not have First Amendment rights in speech made
2    in the exercise of their official public duties: namely, Donahoe's rulings and Wilson's
3    recommendations to the Board of Supervisors regarding budget issues.  Arpaio does not
4    extend this logic to the allegations of retaliation for exercise of free speech rights made
5    by Stapley or Wilcox, but instead advocates dismissal of their counts on the basis that
6    nothing in the specific counts clearly relates to any free speech claim.  Arpaio may be
7    able to produce some authority to support his theory that "a Court's discharge of its duty
8    to make rulings is not a judge's exercise of his First Amendment rights" or that "a county
9    officer's discharge of her duties is not the exercise of her First Amendment rights," but he
10   has not done so in these pleadings (*see* Doc. 283 at 22).  Absent any authority for the
11   contention that a public official does not have free speech rights in statements made in
12   the discharge of her duties, the Court will not dismiss the motions on that basis.[26]  *See*
13   *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing
14   and not supported by citations to the record or to case authority are generally deemed
15   waived.").

16   With respect to Arpaio's claims regarding the sufficiency of the Wilcox and
17   Stapley counts for retaliation, the allegations, read as a whole and with the benefit of the
18   cross-referenced paragraphs in the specific counts for retaliation, are sufficient to survive
19   dismissal on those grounds.  Therefore, the motions to dismiss the claims for retaliation
20   for exercise of First Amendment rights will be denied.

21   ### 3.    Unlawful Search
22   Schuerman and Stapley[27] have both raised claims for violations of their Fourth
23   Amendment rights stemming from the allegedly unlawful searches of Schuerman's and
24   Stapley's offices.[28]

---

25   [26] This ruling does not foreclose the possibility that Defendants may be able to obtain
26   summary judgment on these grounds if later briefing provides authority for Arpaio's
27   position.

28   [27] Wilcox states in her response that she is "not asserting a claim based on the Fourth

1

### a.    Schuerman

2    With respect to Schuerman's claim, Aubuchon asserts entitlement to either

3    absolute immunity for making probable cause determinations or qualified immunity

4    because the warrant application was not so lacking in indicia of probable cause to make

5    her determination of probable cause unreasonable, as evidenced by a magistrate judge

6    issuing the warrant and agreeing probable cause existed.  Additionally, Aubuchon states

7    that Schuerman has failed to included sufficient facts to state a claim for relief.  Finally,

8    Aubuchon and Arpaio claim that Schuerman fails to connect their actions to the

9    violations of her Fourth Amendment rights.  (Doc. 283 at 20 (stating Schuerman failed to

10    "plead facts showing an affirmative link between Arpaio and the unpled falsities of the

11    affidavit leading to the disputed search").)

12    At this stage, Schuerman has sufficiently stated a claim for Fourth Amendment

13    violations related to the search.  Aubuchon is not entitled to absolute immunity for her

14    investigative actions related to ordering a search warrant pursuant to investigations of

15    Schuerman for potential criminal activities where there was no probable cause, which

16    claim is sufficiently alleged here.  Nor is Aubuchon entitled to qualified immunity since

17    Schuerman has alleged that Aubuchon directed the search warrant affidavit to be sworn

18    and executed, despite knowing it contained false and misleading information and was not

19    supported by any demonstration of probable cause.

20    Schuerman has also sufficiently tied her claims to Aubuchon and Arpaio.

21    Schuerman has alleged that the search warrant affidavit contained no facts to support the

22

23    Amendment, and any language in the [complaint] to the contrary was inadvertently
included."  (Doc. 309 at 15.)  Wilson and Donahoe also appear to have inadvertently

24    included language claiming Fourth Amendment violations, as they fail to respond to the
motions to dismiss these claims (*compare* Doc. 243 at 30 and Doc. 245 at 33 *with* Doc.

25    307 at 15).

26    [28] Schuerman's complaint alleges her office was searched on February 26, 2009 (Doc.

27    244 at 8); Stapley's complaint alleges his office was searched on February 27, 2009 (Doc.
246 at 18).

28

assertion in the warrant that Schuerman was suspected of illegally conspiring with Stapley, and that Aubuchon and Hendershott directed the search warrant affidavit to be sworn and executed knowing the search warrant affidavit did not demonstrate probable cause to believe Schuerman had in fact so illegally conspired. *See KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) ("The fact that a judge . . . had approved the warrant does not make [an officer's] reliance on it reasonable."). As to Arpaio, in the context of these consolidated cases, where Plaintiffs have alleged a concerted effort by Defendants to deprive them of their constitutional rights, and where Plaintiffs at this stage in the proceedings do not have access to information to affirmatively allege which actions were taken by or at the direction of which actors, it is enough to plead Arpaio's involvement as exercising control or direction over his subordinates' actions, which has been alleged here. (Doc. 244 at 70 ("Arpaio and Thomas directed and approved of Hendershott's and Aubuchon's conduct.").)

### b.    Stapley

As to Stapley's complaint, Arpaio asserts that Stapley has failed to say what facts in the affidavit supporting the search warrant were false and that he has failed to allege that Arpaio knew of, directed, or presented the false or misleading information to the judge who issued the search warrant. Aubuchon argues Stapley's claims as to her fail because she is not mentioned in the cross-referenced paragraphs detailing the allegedly unlawful search of Stapley's office and that the other references to her are insufficient to provide a basis for a Fourth Amendment claim.

Although Stapley's claim for Fourth Amendment violations is not well pled, challenged, or defended, the Court will not dismiss it at this time. Stapley relies on the fact that the Court has already allowed the Wolfsinkel complaint to go forward on allegations of Fourth Amendment violations where the search was conducted pursuant to an identical warrant. While this is not alone sufficient, Stapley has alleged specifically that the search warrant was knowingly not based on probable cause. Taking the facts alleged in Stapley's favor, an inference can be drawn that "false statements or omissions

that were material to the finding of probable cause" were deliberately made.  *KRL*, 384 F.3d at 1117.  Further, while the references in Stapley's claim for relief regarding the allegedly unlawful search to the incorporated paragraphs in his complaint detailing the allegedly unlawful search do not mention Aubuchon, within the count for relief itself Stapley claims that Aubuchon acted dishonestly with regard to the probable cause basis for seeking the warrant.  As discussed in the Schuerman analysis above, Aubuchon is not immune for her investigative functions, and Stapley has sufficiently alleged that Aubuchon's activities here were non-prosecutorial.  Additionally, with respect to Arpaio, it is sufficient at this stage to state a claim by alleging that Arpaio directed a search warrant knowingly unsupported by probable cause to be executed.

For these reasons, the motions to dismiss Schuerman's and Stapley's claims for Fourth Amendment violations will be denied.

### 4.    Substantive Due Process

Mundell, Donahoe, Schuerman, and Wilson have all alleged claims for violations of their substantive due process rights, some in separate counts and some made in passing reference in catch-all counts under 42 U.S.C. § 1983.  These claims fail to the extent they seek independent relief.

"Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citations and quotation marks omitted).  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (noting "claim to be free from prosecution except on the basis of probable cause is markedly different" from interests protected by substantive due process).  While Plaintiffs have alleged conduct that is sufficiently outrageous to survive a motion to dismiss with respect to intentional infliction of emotional distress, Plaintiffs' claims here do not implicate any substantive due process right to the extent that it would

be support an independent claim for relief.  *See, e.g.*, *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) (internal citations omitted) (no substantive due process right to be free from prosecution without probable cause).

Further, Plaintiffs have alleged other specific constitutional violations, and "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior," that framework is a more appropriate analysis for claims than "the more generalized notion of substantive due process." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Allowing an independent claim for substantive due process would be duplicative here because Plaintiffs have alleged cognizable claims based on the same conduct under other constitutional theories. Accordingly, Plaintiffs' substantive due process claims will be dismissed.

### 5.   Retaliation for Exercise of Fifth and Fourteenth Amendment Rights

Schuerman has raised a claim for retaliation for the exercise of her Fifth and Fourteenth Amendment Rights relating to various encounters with Defendants and their subordinates.  Specifically, Schuerman alleges that Defendants retaliated against her for refusing to submit to interviews with Sheriff's deputies without her counsel present or otherwise give Defendants information about Stapley by (1) threatening her with criminal investigation, (2) causing statements to be published asserting that Schuerman was the subject of a criminal investigation; (3) searching her offices; (4) parking undercover police cars near Schuerman's home for approximately six months; and (5) sending marked and unmarked police cars to follow Schuerman.

Aubuchon conclusorily asserts that Schuerman has not provided sufficient factual basis or tied Aubuchon sufficiently to her claims.  Arpaio states this claim should be dismissed because Schuerman never exercised her Fifth Amendment rights, and therefore has no retaliation claim.  In his response, Arpaio also states that to the extent Schuerman is claiming her Fifth Amendment right to counsel at the grand jury phase was violated, she has not shown that she was retaliated against for getting a lawyer.  These challenges

are insufficient to warrant dismissal of the claim.  Schuerman has sufficiently alleged the involvement of the named Defendants.  She has sufficiently alleged that her refusal to cooperate in the criminal investigation of Stapley, including by obtaining a lawyer and declining to be interviewed without her lawyer present after she had been "called on to testify in any type of proceeding to answer questions which might serve to incriminate [her] in any future prosecution[,]" *United States v. Segal*, 549 F.2d 1293, 1299 (9th Cir. 1977) (internal citations omitted), were the activities which prompted the retaliation against her.  Further, Schuerman's allegations paint a picture of a broad and persistent pattern of very serious harassment that, as alleged, is not legitimate law enforcement conduct.  The Court concludes these allegations are sufficient to state a claim for violation of Schuerman's rights.

The extent to which other Plaintiffs mention the Fifth or Fourteenth Amendments in passing and intend that as a basis for additional and independent relief under theories other than, for example, abuse of process or substantive due process, is unclear.[29]  If so intended, any additional claims have not been clearly alleged; generic allegations that Defendants' conduct amounts to violations of due process rights, abuse of power, or deprivation of privileges and immunities are insufficient.  Particularly, claims alleging deprivation of privileges and immunities are not tenable here.  *See, e.g.*, *McDonald v. City of Chicago*, --- U.S. ---, 130 S. Ct. 3020 (2010).  Any potential claims on legal theories not specifically addressed in this order have not been adequately raised, challenged, or defended.   Further, these generically alleged claims would merely be an overlay on the rest of Plaintiffs' substantive allegations and the sufficiently pled counts which seek relief for discrete, identifiable claims.  This reasoning applies specifically, but not exclusively, to Mundell's sixth cause of action for violations of 42 U.S.C. § 1983

---

[29] The Court addresses Plaintiffs' abuse of process and substantive due process claims elsewhere.

against Defendants in their individual capacities, which will be dismissed as to claims for privileges and immunities.[30]

### 6.      Equal Protection

Plaintiffs have attempted to state claims for violations of their equal protection claims under a "class of one" theory.  The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  However, the Ninth Circuit recently expounded on the viability of "class of one" equal protection claims in *Towery v. Brewer*, --- F.3d ---, 2012 WL 627787 (9th Cir. 2012).  There, the court noted that the "class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Id.* at \*9 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008)).  Where the allegedly unlawful treatment arises from discretionary decisionmaking,

> the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.*  "Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory . . . the existence of discretion, standing alone, cannot be an Equal Protection violation."  *Id.*

---

[30] Mundell's sixth cause of action will also be dismissed with respect to the abuse of process and false light claims for the reasons stated in the substantive analysis of those categories of claims. *See supra*, Parts IV(C), (F).

Here, Plaintiffs' equal protection claims arise mainly from allegedly unlawful decisions by Defendants in the investigation and prosecution of criminal charges and institution of civil proceedings against Plaintiffs.  Because these decisions are all discretionary ones, no class of one equal protection claim can be stated.  Additionally, dismissing Plaintiffs' claims for violations of their equal protection rights does not detract from any potential recovery for Plaintiffs, as the equal protection claims are premised on claims for other alleged constitutional violations which will not be dismissed.

### 7.      Conspiracy to Violate Constitutional Rights

Wilcox and Stapley have alleged claims for conspiracy to violate constitutional rights. Defendants have variously moved to dismiss these counts on the basis that (1) Plaintiffs have made merely conclusory allegations of conspiracy and have failed to allege specific facts regarding which actor agreed to do what; (2) the conspiracy claims are based on conduct which is protected by absolute prosecutorial immunity; and (3) Plaintiffs cannot maintain a conspiracy claim because, under the intracorporate conspiracy doctrine, the County and its employees cannot conspire with each other.

The Court need not decide whether Plaintiffs have alleged specific facts to support the existence of an agreement between Defendants to deprive Plaintiffs of their rights because Plaintiffs' conspiracy claims are appropriately dismissed under the intracorporate conspiracy doctrine, which bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional rights.  *See, e.g.*, *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 785 (M.D.N.C. 2011) ("[A] municipality generally cannot conspire with itself under the intracorporate conspiracy . . . doctrine[.]")

While the Ninth Circuit has not yet determined whether this doctrine applies to civil rights claims, *see Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993) (acknowledging circuit split regarding adoption of intracorporate conspiracy doctrine and "declin[ing] to resolve this conflict"), at least one district court within the circuit has accepted the principle and applied it to bar claims in a similar context.  *See*

*Avalos v. Baca*, 517 F.Supp.2d 1156, 1170 (C.D. Cal. 2007) ("[S]ince a municipal entity cannot conspire with itself, plaintiff's claim against defendants in their official capacity fails.").   The Eleventh Circuit has also applied the doctrine to bar conspiracy claims against law enforcement officials for conduct that, though allegedly unlawful, was related to their official duties of "prosecut[ing] violations of the law."  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (noting the "subject of [the law enforcement officers'] alleged conspiracy-prosecution of Plaintiff . . . by making a false bribery charge-involves job-related functions well within Defendants' scope of employment as police officers").   Wilcox cannot plead around this rule by naming Defendants in their individual capacities and not naming the County in her conspiracy count; the reasoning underlying the intracorporate conspiracy doctrine remains to bar her claims because Defendants were allegedly using the powers of their county offices to commit the acts underlying Plaintiffs' claims for conspiracy.  *See Celestin v. City of New York*, 581 F. Supp. 2d. 420, 434 (E.D.N.Y. 2008) ("[W]here the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand." (internal citations omitted)).[31]

Of final note, the overlay provided by a claim of conspiracy adds little or nothing to Wilcox or Stapley's complaints.  The counts for conspiracy will be dismissed.

### 8. Unconstitutional Policies, Customs, Failure to Train, and Negligent Supervision

Wilcox and Stapley have raised claims under section 1983 for unconstitutional policies, customs, and failure to train.  Wilcox has also raised a claim for negligent supervision against Thomas and Arpaio.  Thomas's motion to dismiss is premised only on immunity grounds which, as discussed above, does not protect all the conduct alleged

---

[31]  Because the conspiracy counts will be dismissed on the basis of the intracorporate conspiracy theory, the Court need not address the County's potential liability for a conspiracy among its employees under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

1   to support this cause of action and accordingly does not warrant dismissal of these

2   counts.  Arpaio has only moved to dismiss the claims for failure to train.

3       "[A] municipality's failure to train an employee who has caused a constitutional

4   violation can be the basis for § 1983 liability where the failure to train amounts to

5   deliberate indifference to the rights of persons with whom the employee comes into

6   contact."  *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City*

7   *of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  A claim for failure to train hinges on

8   whether a "training program is adequate and, if it is not, whether such inadequate training

9   can justifiably be said to represent municipal policy."  *Id.*  "[T]he existence of a pattern of

10  tortious conduct by inadequately trained employees may tend to show that the lack of

11  proper training, rather than a one-time negligent administration of [a training] program or

12  factors peculiar to the officer involved in a particular incident, is the 'moving force'

13  behind the plaintiff's injury."  *Id.*  (citing *Bd. of Cnty. Comm's v. Brown*, 520 U.S. 397,

14  407 (1997)).  Allegations that a municipality's policymakers continue to apply "an

15  approach that they know or should know has failed to prevent tortious conduct by

16  employees" may suffice to "establish the conscious disregard for the consequences of

17  their action—the 'deliberate indifference'—necessary to trigger municipal liability."  *Id.*

18  (citations omitted).

19      Wilcox specifically alleges that Arpaio and Thomas acted with deliberate

20  indifference to her rights by failing to train their subordinates in "the appropriate, lawful,

21  and constitutional policies, procedures, and protocols for investigating, processing,

22  handling, and managing civil and criminal investigations and prosecutions under their

23  control."  (Doc. 239 at 34.)  The numerous constitutional violations allegedly undertaken

24  by Thomas and Arpaio and their subordinates, as alleged by the multiple Plaintiffs, is

25  sufficiently egregious and voluminous to raise at least a fair inference that there was a

26  failure to train.  *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir.

27  2010) ("To impose liability on a local government for failure to adequately train its

28  employees, the government's omission must amount to 'deliberate indifference' to a

constitutional right. This standard is met when 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" (quoting *Canton*, 489 U.S. at 390)).  Accordingly, these counts will not be dismissed.

## VI.    MOTIONS UNDER FED. R. CIV. P. 8

In addition to their motions under Rule 12(b)(6), Arpaio and Aubuchon have also moved to dismiss the Wilcox and Stapley complaints for violating Fed. R. Civ. P. 8. Aubuchon also moves to dismiss Mundell's complaint for violating Fed. R. Civ. P. 8. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint having the factual elements of a cause of action present but scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a).  *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).  A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading.  *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996).  "Something labeled a complaint . . . yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."  *Id.* at 1180.  A complaint that is "argumentative, prolix, replete with redundancy . . . [and] consists largely of immaterial background information" is subject to dismissal.  *Id.* at 1177.

Defendants claim Plaintiffs' complaints fail to properly put them on notice of the claims against them, mainly because the complaints do not sufficiently tie specific wrongful conduct to specific causes of action.  The Court disagrees.  On the whole, Plaintiffs' complaints have corrected the earlier deficiencies that resulted in their prior dismissal under Rule 8.  To the extent that specific claims within certain Plaintiffs' complaints continue to be impermissibly vague, any potential Rule 8 concerns are

1    resolved by the dismissal of those claims under Rule 12(b)(6) as delineated above.

2    Accordingly, Defendants' request that the Wilcox, Mundell, and Stapley complaints be

3    dismissed for failure to comply with Rule 8 will be denied.

4    **VII.    DEFENDANT SPAW'S MOTION TO DISMISS**

5           Spaw has moved to dismiss the claims against him by Donahoe and Wilson for

6    (1) malicious prosecution and abuse of process in violation of 42 U.S.C. § 1983 and

7    (2) violations of 42 U.S.C. § 1983 – Supervisor Liability (Counts One and Three of the

8    Donahoe complaint and Counts One and Two of the Wilson complaint).  Spaw contends

9    that the claims against him are based on the filing of the civil RICO lawsuit, and are thus

10   protected by absolute prosecutorial immunity.  He further claims that the causes of action

11   against him are time-barred by the statute of limitations.

12          Spaw's arguments fail.  As discussed above, absolute immunity does not extend to

13   the filing of the federal civil RICO action that is the subject of this litigation, and

14   therefore does not provide a basis for Spaw's dismissal.[32]   Spaw's argument that

15   Plaintiffs waived the right to seek available remedies for any alleged bad faith filing of

16   the underlying RICO is also unavailing.  Spaw cites 28 U.S.C. § 1927 and Rule 11 of the

17   Federal Rules of Civil Procedure and argues that these provisions provide a remedy for a

18   party aggrieved by an improperly filed lawsuit.  Because Plaintiffs could have "sought

19   the recovery of their attorneys' fees and the imposition of sanctions  upon the plaintiffs in

20   the underlying action" (Doc. 315 at 14) under 28 U.S.C. § 1927 and Rule 11, Spaw

21   claims that they are foreclosed from pursuing this action.  However, nothing in 28 U.S.C.

22   § 1927 or Rule 11 supports this proposition, and Spaw has not provided any other

23   authority for this claim.   Rather, the weight of the authority establishes that the

24   availability of sanctions does not bar any substantive litigation.  *See, e.g.*, 2 MOORE'S

25   FEDERAL PRACTICE § 11.27 (2011 ed.) (noting that the "imposition or denial of sanctions

26

27   ───────────────

     [32] *See* Part V(A)(1).

28

1    under Rule 11 is not res judicata nor a collateral estoppel bar to litigation of the same or

2    related issues in a subsequent action").

3          Finally, Spaw's contention that the shorter one year statute of limitations for

4    Arizona state malicious prosecution and abuse of process claims is foreclosed in *Owens*

5    *v. Okure*, 488 U.S. 235 (1989), where the Supreme Court held that "where a State has one

6    or more statutes of limitations for certain enumerated intentional torts, and a residual

7    statute for all other personal injury actions … the residual or general personal injury

8    statute of limitations applies" for actions brought under 42 U.S.C. § 1983.  *Id.* at 236.

9    The Ninth Circuit also recently ruled directly on this issue in *Bonneau v. Centennial Sch.*

10   *Dist.*, -- F.3d --, 2012 WL 7554 (9th Cir. Jan. 11, 2012), holding that a longer, general

11   personal injury statute of limitations applied to a tort claim under 42 U.S.C. § 1983, even

12   though under state law, the claim would be subject to a specific one-year statute of

13   limitations.  As Spaw essentially concedes in his reply (Doc. 330 at 7), under controlling

14   authority, Arizona's two-year statute of limitations for general personal injury claims,

15   A.R.S. § 12-542, applies here.  Accordingly, Plaintiffs' claims are not time-barred.  For

16   these reasons, Spaw's motion to dismiss (Doc. 315) will be denied.

17   **VIII.  LEAVE TO AMEND**

18         Although leave to amend should be freely given "when justice so requires," Fed.

19   R. Civ. P. 15(a)(2), the Court has "especially broad" discretion to deny leave to amend

20   where the plaintiff already has had one or more opportunities to amend a complaint.

21   *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).  "Leave to

22   amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v.*

23   *Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  "Futility of amendment

24   can, by itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59

25   F.3d 815, 845 (9th Cir. 1995).

26         Plaintiffs have already been given the opportunity to file amended complaints to

27   properly plead any causes of action they have against Defendants.  Some are on their

28   third complaints.  Plaintiffs were given explicit instructions regarding the Court's

expectations of the pleadings in this matter and were afforded the opportunity to present oral argument on their claims during the initial round of motions to dismiss (Doc. 230). As the Court noted then, this consolidated matter will be processed in an efficient and timely matter.  Some of these actions are nearly a year and a half old without answers having been filed.  To the extent Plaintiffs have again failed to sufficiently state a claim for relief for any specific cause of action, the opportunity to do so is at this stage foreclosed.  For these reasons, further leave to amend will not be granted.  *See McHenry*, 84 F.3d at 1177 (affirming dismissal with prejudice of prolix, argumentative, and redundant amended complaint that did not comply with Rule 8(a)); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of amended complaint that was "equally as verbose, confusing, and conclusory as the initial complaint"); *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (affirming dismissal without leave to amend of second complaint that was "so verbose, confused and redundant that its true substance, if any, [was] well disguised").

**IX.   ORDER**

For the reasons stated above,

IT IS THEREFORE ORDERED that Defendant Maricopa County's Partial Motion to Dismiss Second Amended Complaints of Plaintiffs Stapley, Donahoe and Wilson **(Doc. 270)** is granted in part and denied in part.

IT IS FURTHER ORDERED that the Thomas Defendants' Consolidated Motion to Dismiss Claims in Plaintiffs' Amended Complaints Pursuant to Rule 12(b)(6), as the Claims are Barred by Absolute Prosecutorial Immunity **(Doc. 271)** is granted in part and denied in part.

IT IS FURTHER ORDERED that Defendants Arpaios' Motion to Dismiss Pursuant to FRCivP 8, 10, and 12(b)(6) Applicable Collectively to the Newly Amended Complaints Filed by Plaintiffs Donahoe, Mundell, Schuerman, Stapley, Wilcox, and Wilson **(Doc. 283)** is granted in part and denied in part.

IT IS FURTHER ORDERED that Defendants Lisa Aubuchon and Peter R. Pestalozzi's Motion to Dismiss Second Amended Complaints Pursuant to Rules 8(a)(2), 8(d)(1) (as to Plaintiffs Wilcox, Mundell and Stapley) and 12(b)(6), Federal Rules of Civil Procedure (as to Plaintiffs Wilcox, Mundell, Stapley, Wilson, Schuerman, and Donahoe) **(Doc. 284)** is granted in part and denied in part.

IT IS FURTHER ORDERED that Defendants Peter and Mary Spaw's Motion to Dismiss **(Doc. 315)** is denied.

IT IS FURTHER ORDERED that the following counts in the **Wilcox** complaint are dismissed: Count 5 as to all claims except for free speech claim under Article II, § 6; Count 7 as to claims for substantive due process, abuse of process, abuse of power, and equal protection only; and Count 9 in its entirety.

IT IS FURTHER ORDERED that the following counts in the **Mundell** complaint are dismissed: Count 1 in its entirety; Count 3 in its entirety; and Count 6 as to claims for privileges and immunities, abuse of process, and false light only, as well as defamation as to Aubuchon only.

IT IS FURTHER ORDERED that the following counts in the **Donahoe** complaint are dismissed: Count 6 as to claims for false light only; Count 7 as to claims for false light only; Count 8 in its entirety; Count 11 in its entirety; and Count 13 in its entirety.

IT IS FURTHER ORDERED that the following counts in the **Schuerman** complaint are dismissed: Count 3 in its entirety; Count 4 for defamation as to Aubuchon only; Count 5 for defamation as to Aubuchon only; and Count 9 in its entirety.

IT IS FURTHER ORDERED that the following counts in the **Wilson** complaint are dismissed: Count 1 as to claims for abuse of process only; Count 3 as to claims for abuse of process only; Count 5 as to claims for false light only; Count 6 as to claims for false light only; Count 7 in its entirety; and Count 11 in its entirety.

IT IS FURTHER ORDERED that the following counts in the **Stapley** complaint are dismissed: Count 2 as to claims grounded directly on criminal prosecution only**;** Count 5 as to claims grounded directly on criminal prosecution only**;** Count 8 as to

claims for substantive due process, privileges and immunities, abuse of process, and abuse of power only; Count 11 in its entirety; and Count 12 in its entirety.

Dated this 9th day of April, 2012.

Neil V. Wake
United States District Judge