WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Donahoe and Cherie Donahoe, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; et al.,<br><br>Defendants. | CV10-02756-PHX-NVW<br><br>**CONSOLIDATED WITH:** |
| Donald T. Stapley, Jr. and Kathleen Stapley, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Sheriff Joseph Arpaio and Ava Arpaio, husband and wife; et al.,<br><br>Defendants. | CV11-00902-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants Lisa Aubuchon and Andrew Thomas's Joint Motion to Exclude Plaintiff Expert Terry Goddard (Doc. 1044). For the following reasons, Defendants' motion will be granted in part and denied in part.

**I.  BACKGROUND**

The factual allegations underlying this action have been stated sufficiently. *See Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1048 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, Nos. 12-16145, 12-16146, 2013 WL 4266907 (9th Cir. Aug. 16, 2013).

Although Plaintiff Stapley initially included twelve counts in his Second Amended Complaint, his claims have been narrowed by this Court's April 9, 2012 Order, 869 F. Supp. 2d at 1079 (Doc. 338), and by Plaintiff at oral argument.

**A.     The remaining claims against Defendants Thomas and Aubuchon**

At oral argument, Stapley narrowed his claims, state and federal, against Thomas and Aubuchon to (1) wrongful institution of civil proceedings in the racketeering action, (2) retaliatory investigation, (3) false arrest, and (4) unlawful search. As to these Defendants, therefore, Plaintiff's claims for malicious prosecution, intentional infliction of emotional distress, and unconstitutional policies, customs, failure to train, and negligent supervision are all withdrawn.

1.     Wrongful institution of civil proceedings

First, Stapley claims Thomas and Aubuchon are liable for wrongfully filing a federal racketeering action against him. *See id.* at 1054. To prove wrongful institution of civil proceedings, Plaintiff must demonstrate Defendants (1) instituted a civil action, (2) motivated by malice, (3) begun or maintained without probable cause, and which (4) terminated in Plaintiff's favor and (5) damaged him. *Id.* at 1057 (citing *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416–17, 758 P.2d 1313, 1318–19 (1988)).

2.     Retaliatory investigation

Second, Stapley alleges Thomas and Aubuchon investigated him in retaliation for "various statements made against [them] in the course of the political feud between the Board of Supervisors and the County Attorney and Sheriff's Offices." *Id.* at 1069. Consequently, Plaintiff alleges the investigations violated his "First Amendment right not to be investigated as a result of . . . valid free speech activity." Oral Arg. Tr. 112:24–113:2, 117:25–118:5.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[T]o demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions the defendant deterred or chilled the plaintiff's

political speech and such deterrence was a substantial or motivating factor in the defendant's conduct.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (alterations omitted) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff must prove Defendants' "acts would chill or silence a person of ordinary firmness from future First Amendment activities," but he need not demonstrate that "his speech was actually inhibited or suppressed." *Id.* (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1300). Plaintiff "must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'" *Id.* at 917 (quoting *Hartman*, 547 U.S. at 260).

At the oral argument on October 4, 2013, Stapley withdrew any claim of actionable conduct regarding the manner in which the investigation was done. The other parties are entitled to rely on that narrowing of claims, and the Court holds Stapley to it.

### 3. False arrest

Third, Stapley claims Aubuchon encouraged and participated in his September 21, 2009 arrest, which he asserts lacked probable cause and a warrant. Stapley thus claims Aubuchon is liable for false arrest. *See Donahoe*, 869 F. Supp. 2d at 1065.

To prove false arrest, Plaintiff must demonstrate "detention . . . without his consent and without lawful authority." *Id.* at 1064 (quoting *Reams v. City of Tucson*, 145 Ariz. 340, 343, 701 P.2d 598, 601 (Ct. App. 1985)). "The essential element necessary to constitute either false arrest or imprisonment is unlawful detention. . . . A detention that occurs pursuant to legal authority, such as an arrest based on probable cause, is not an unlawful detention." *Al-Asadi v. City of Phoenix*, No. CV-09-47-PHX-DGC, 2010 WL 3419728, at *3 (D. Ariz. Aug. 27, 2010) (internal quotation marks omitted) (quoting *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975)).

Similarly, to succeed on a § 1983 claim for false arrest, Plaintiff must demonstrate a lack of probable cause or of other sufficient justification. *See id.* at *9 (quoting *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)); *Lacey*, 693 F.3d at 918.

### 4. Unlawful search

Finally, Stapley alleges Thomas and Aubuchon approved or ratified a search warrant of his office, *see* Doc. 246 ¶ 306, which was "knowingly not based on probable cause." *Donahoe*, 869 F. Supp. 2d at 1071. Further, he "claims that Aubuchon acted dishonestly with regard to the probable cause basis for seeking the warrant," *id.* at 1072, and that she "knew there was no probable cause for the search warrant and knew of and intended for the detectives presenting the warrant to the judicial officer to supply false and misleading information." Doc. 246 ¶ 308.

As this Court noted in its April 9, 2012 Order (Doc. 338), "Stapley's claim for Fourth Amendment violations is not well pled, challenged, or defended . . . ." *Id.* at 1071. Stapley appears to claim that at least Aubuchon engaged in judicial deception to obtain the search warrant.

"It is clearly established that judicial deception may not be employed to obtain a search warrant. . . . To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. . . . The court determines the materiality of alleged false statements or omissions." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (internal citations omitted).

### B. Expert witness

Stapley has retained former Arizona Attorney General Terry Goddard as an expert witness to offer "objective and independent analysis" of Thomas and Aubuchon's investigation and prosecution. Doc. 1044-1 at 2. Mr. Goddard summarizes his opinions on page 15 of his report:

> The actions of Andrew Thomas and Lisa Aubuchon in investigating and prosecuting Donald Stapley were not in accordance with accepted standards for prosecutorial procedure. Not only did they:
> 1. ignore the statute of limitations,
> 2. string together a very large number of unsustainable charges,
> 3. charge as felonies crimes which the Legislature had determined should be misdemeanors,
> 4. include Mr. Stapley in a civil RICO complaint which

      maliciously repeated theories of a criminal conspiracy to build the Court Tower (which a judge had ruled could not be prosecuted by the MCAO due to its conflict of interest),
5.  repeatedly ignore the procedures traditionally followed by the County Attorney's Offices before charging defendants, specifically the use of case charging reviews,

they repeatedly ignored the advice of senior advisors within the County Attorney's Office to use the services of private investigators. They also made every effort to take the case out of the courtroom and play it in the media to inflict maximum personal damage to Mr. Stapley. Individually and taken together, the actions of Mr. Thomas and Ms. Aubuchon were reprehensible and do not approach even the lowest standards for prosecutorial integrity.

   Based on my experience, and review of the legal record and other reports of the investigation and prosecution of Donald Stapley, it is my opinion that Andrew Thomas and Lisa Aubuchon violated their ethical duties as lawyers, as officers of the court, and as prosecuting attorneys in order to pursue their personal and political vendetta against Mr. Stapley. In so doing, they discredited the Maricopa County Attorney's Office and made a mockery of the role of the prosecutor in the criminal justice system.

Defendants object and move to exclude Mr. Goddard's testimony. Doc. 1044 at 1–2. As discussed below, Mr. Goddard's opinions are permeated with foundation in the criminal prosecutions, for which Thomas and Aubuchon have absolute immunity. Mr. Goddard's testimony therefore is inadmissible except to the extent specifically permitted in this Order. The testimony is admissible only insofar as it is separated from the criminal prosecutions, adequately disclosed with fair prior opportunity for discovery, helpful to the jury, and with probative value not outweighed by risk of prejudice or confusion.

## II.  LEGAL STANDARD

The party presenting the expert bears the burden of establishing admissibility by a preponderance of the evidence. *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1129 (D. Ariz. 2001) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

The Federal Rules of Evidence govern the admissibility of expert testimony:

  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

- 5 -

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This Rule aims both to assist the trier of fact's "search for truth by helping it to understand other evidence" and to preserve the trier of fact's power to decide the meaning of evidence. 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6262 (1997). It may be difficult to satisfy these two goals because "both the admission and exclusion of expert testimony can undermine the traditional powers of the trier of fact." *Id.* Expert testimony can add to the jury's knowledge or it can mislead it with unreliable assertions. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), set forth "the guideposts" for achieving this balance and properly determining admissibility under Rule 702, *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1354 (D. Ariz. 1996), *aff'd*, 114 F.3d 851 (9th Cir. 1997). *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), extended *Daubert* to all expert testimony. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Trial courts must act as "gatekeepers" for expert testimony and "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In its role as gatekeeper, however, the court does not "serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). Lower courts rely on "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . [to] attack[ ] shaky but admissible evidence." 509 U.S. at 596. The trial court has broad discretion to determine the admissibility of expert testimony, *Salem v. United States*, 370 U.S. 31, 35 (1962), and must exclude testimony supported only by speculation or unfounded conjecture. *Daubert*, 509 U.S. at 589–90.

In sum, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006).

## III. ANALYSIS

### A. Mr. Goddard's opinions are relevant in part and not relevant in part

Rule 702 requires testimony to be helpful to the trier of fact in understanding the evidence or determining a fact in issue. At a minimum, this requires that the testimony be relevant. *See Daubert*, 509 U.S. at 591. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. Notwithstanding its relevance, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403.

As noted above, Stapley now asserts the following claims against Thomas and Aubuchon: (1) wrongful institution of civil proceedings, (2) retaliatory investigation, (3) false arrest, and (4) unlawful search. Whether Mr. Goddard's testimony is admissible turns first on its relevance in light of these particular claims and the elements Plaintiff must prove.

#### 1. Mr. Goddard may not testify that the criminal prosecutions were wrongful

Mr. Goddard may not offer testimony irrelevant to Stapley's remaining causes of action. As indicated above, Thomas and Aubuchon have absolute immunity regarding the criminal prosecutions, and the claims arising from those prosecutions have been dismissed. *See Donahoe*, 869 F. Supp. 2d at 1079. The manner in which Thomas and Aubuchon prosecuted Stapley is no longer sufficiently probative of any fact of consequence, and therefore Mr. Goddard's evaluation of the criminal prosecutions is not relevant.

Stapley also contends that Thomas and Aubuchon wrongfully investigated him in retaliation for protected conduct. Though in theory evidence of wrongful later prosecution might bear on the earlier retaliatory investigation, the prejudice would be too

- 7 -

great to allow opinions of wrongful prosecution, which includes presentation to the grand jury. As presented, however, Mr. Goddard's testimony intermingles opinions as to the prosecutions and investigation. This taints his testimony and renders much of it inadmissible. Consequently, Mr. Goddard's testimony will be excluded except as specifically allowed below.

           2.      <u>Mr. Goddard may testify to prosecutors' usual investigative practices</u>

Although Mr. Goddard's testimony is largely inadmissible, he may offer opinions for the limited purpose of comparing Thomas's and Aubuchon's actions to usual investigative practices. Testimony that they fell short of these usual practices will be insufficient to establish liability on any of Stapley's causes of action. Nonetheless, such testimony is relevant at least to one remaining claim.

Mr. Goddard may testify to prosecutors' usual investigative practices and compare them to Thomas's and Aubuchon's conduct. Such testimony may assist the jury in concluding whether Thomas and Aubuchon's investigatory conduct so far departed from fair-minded and good faith investigation that it demonstrates malice.

In *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004), the plaintiff sued her insurance carrier for bad faith and sough to recover damages in tort. *Id.* at 1009. "The key to a bad faith claim under California law is whether or not the insurer's denial of coverage was reasonable. . . . The reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Id.* at 1009–10.

To support her claim, the plaintiff called an expert witness to testify that the defendant insurance company's letter terminating the plaintiff's benefits was "misleading, deceptive, and fell below industry standards." *Id.* at 1010. Over the defendant's objection, the Ninth Circuit upheld the trial court's decision to admit the testimony: "While [the expert]'s testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, [he] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith . . . ." *Id.* at 1016.

Just as the *Hangarter* expert's testimony supported a jury finding that the defendants acted in bad faith, Mr. Goddard's comparisons support the inference that malice may have motivated Thomas or Aubuchon and thus are relevant to a remaining claim.

Mr. Goddard may also apprise the jury of the ethical duties and conflict-of-interest rules applicable to prosecutors, and he may testify as to whether Defendants' actions reflect a deviation from them. This includes testimony regarding prosecutors' ethical duties with respect to filing a civil action against an investigative target. At oral argument, counsel clarified the purpose of Mr. Goddard's testimony on this point: "It's not whether or not the RICO lawsuit was valid or invalid. It was whether it's ever appropriate [f]or a prosecutorial agency to have criminal charges outstanding and then simultaneously br[ing] a civil case." Oral Arg. Tr. 119:24–120:2. Plaintiff also questioned the "propriety of bringing a civil action [concurrently] with the criminal action," and stated "[t]here's no way a jury can know whether or not that's proper or not with[out] expert opinion." *Id.* at 139:4–139:8. Conflicts of interest and violations of ethical duties would not be sufficient for liability. Nonetheless, they could support a finding of malice. This testimony is sufficiently relevant to be admissible under Rule 702.

Moreover, because only these opinions are allowed, Mr. Goddard's testimony will be quite limited. As a result, its relevance is not substantially outweighed by the risk of unfair prejudice to Thomas or Aubuchon. These specific opinions were disclosed, and Thomas and Aubuchon have had adequate opportunity to depose Mr. Goddard concerning them.

        3.      <u>Mr. Goddard may not refer to prosecutors' "standard of care"</u>

Thomas and Aubuchon express a legitimate concern, however, that references to a "standard of care" could well mislead the jury. As indicated above, none of Stapley's remaining claims against Thomas or Aubuchon requires a showing of negligence. They therefore assert, "Repeated arguments that Aubuchon and Thomas violated a standard of

- 9 -

care wholly disconnected from any fact or legal theory in the case will cause confusion with the jury by allowing jurors to make a determination that the Defendants' actions were 'bad' without considering the actual counts and elements needed to prove these counts." Doc. 1087 at 6. That is correct. Although Mr. Goddard may compare Thomas's and Aubuchon's actions to usual investigative practices, he may not refer to those practices as representing a standard of care.

> 4. <u>Mr. Goddard may not testify to legal conclusions or Thomas's or Aubuchon's states of mind</u>

In his report, Mr. Goddard draws conclusions properly left to the jury and opines on Thomas's and Aubuchon's states of mind. *See, e.g.*, Doc. 1044-1 at 16 (stating the racketeering suit "maliciously repeated theories of a criminal conspiracy"); *id.* at 13 ("Thomas and Aubuchon were motivated by motives other than success in court."). Such testimony is inadmissible.

Expert testimony that states legal conclusions usurps the court's or the jury's role and is not helpful. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."). Federal Rule of Evidence "704(a) provides that expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' That said, 'an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'" *Hangarter*, 373 F.3d at 1016 (quoting *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), *amended sub nom. Mukhtar v. Cal. State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003)).

Moreover, testimony on mental states discernible by the jury is not helpful. *See United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (finding district court abused discretion by admitting expert testimony on issues within "the common knowledge of the average layperson") (internal quotation marks omitted).

Consequently, although Mr. Goddard may compare Thomas's and Aubuchon's

- 10 -

actions to usual investigative practices and state the reasons for them, he may not go further and suggest any resulting legal conclusions or the mental states that ought to be inferred. The jury is competent on its own to draw conclusions and evaluate motivations in light of the evidence presented, including Mr. Goddard's testimony regarding prosecutors' normal investigative practices and ethical requirements.

Mr. Goddard's opinions therefore are inadmissible except to the extent he testifies to prosecutors' usual investigative practices and compares Thomas's and Aubuchon's conduct to them. He may not offer any opinions regarding the criminal prosecutions, and he may not refer to any prosecutorial standard of care, offer legal conclusions, or testify about states of mind.

### B. Mr. Goddard is sufficiently qualified

Rule 702 requires that the witness be "qualified as an expert by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. Because the Rule "contemplates a *broad conception* of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required. *Hangarter*, 373 F.3d at 1015–16 (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). *See, e.g.*, *Bd. of Regents of the Univ. and State Colls. of Ariz. v. Cannon*, 86 Ariz. 176, 179, 342 P.2d 207, 209–210 (1959) (real estate broker with no formal education in appraisal qualified to give valuation opinion based on experience with sales of real property).

Moreover, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's notes. A lack of particularized expertise goes to the weight of the testimony, not its admissibility. *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993).

Mr. Goddard has practiced law since 1976. He served as a prosecutor for ten years, first in the Special Prosecutions Section of the Criminal Division of the Arizona Attorney General's Office and subsequently as Arizona Attorney General. *See* Doc. 1044-1 at 2. Since leaving office, Mr. Goddard has served as a Fellow at both Columbia

1  Law School and Harvard Law School.  *Id.* at 3.  He has also prepared a Continuing Legal
2  Education seminar "on ethical challenges facing public lawyers," *id.*, and he currently
3  "advis[es] clients in connection with government investigation and prosecution."  Doc.
4  1053 at 4.  Mr. Goddard possesses the qualifications to offer expert testimony as to
5  prosecutors' normal investigative practices.

6  Mr. Goddard has no direct experience with federal racketeering cases.  However,
7  his general experience in litigation and with the work of public prosecutors meets the
8  "minimal foundation" to give opinions on this application of their work.  An important
9  part of the opinion is the predicate offenses of Arizona criminal law, on which he is well
10 qualified.

11 **C.     Mr. Goddard's opinions are sufficiently reliable**

12 Finally, Rule 702 requires testimony to be reliable.  The following nonexclusive
13 factors go to reliability: (1) whether the expert's method, theory, or technique is generally
14 accepted within the relevant scientific community; (2) whether the method, theory, or
15 technique can be (and has been) tested; (3) whether the method, theory, or technique has
16 been subjected to peer review and publication; and (4) the known or potential rate of
17 error of the method, theory, or technique.  *Daubert*, 509 U.S. at 592–94.

18 "A trial court not only has broad latitude in determining whether an expert's
19 testimony is reliable," however, "but also in deciding *how* to determine the testimony's
20 reliability."  *Elsayed Mukhtar*, 299 F.3d at 1064.  Indeed, the factors explicitly identified
21 in *Daubert* for evaluating reliability may be inapplicable where an expert's nonscientific
22 testimony turns not on a particular methodology but on personal experiences and
23 knowledge.  Instead, the court may satisfy itself "by probing the extent" of both.  *See*
24 *Hangarter*, 373 F.3d at 1017–18.

25 Here, Stapley offers Mr. Goddard's nonscientific opinions.  His opinion turns on
26 personal experiences and knowledge rather than on any particular methodology.  His
27 relevant professional experience is extensive.  As Attorney General from 2003 through
28 2011, Mr. Goddard served as the "final approving authority" for almost all charges his

office presented to state grand juries, including twenty prosecutions of public officials. *See* Doc. 1044-1 at 2. As a result, he has sufficient experience and knowledge to offer expert testimony on prosecutors' normal investigative procedures.

Thomas and Aubuchon challenge the sufficiency of the materials Mr. Goddard considered and his alleged bias against them.

          1.    <u>Mr. Goddard's limited review of the underlying materials is not ground for exclusion</u>

Mr. Goddard has considered the decision in the disbarment proceedings against Thomas and Aubuchon, deposition testimony of Thomas and Aubuchon, statements and news releases issued by the County Attorney's Office, and letters and articles authored by Thomas, among other documents. *See id.* at 19–20. Mr. Goddard states he then analyzed facts culled from those materials "against a backdrop of [his] own experience in law enforcement and the professional standards, practices, principles, and protocols recognized by Arizona law enforcement officials and employed in the criminal justice system . . . ." *Id.* at 4.

Thomas and Aubuchon assert that, in forming his opinion, Mr. Goddard relied "almost exclusively on the summaries and conclusions of others" and not on "[t]he underlying investigations, subpoenas, search warrants, and reports at the heart of this matter . . . ." Doc. 1044 at 13–14; *see also* Doc. 1087 at 7. Additionally, they highlight that Mr. Goddard did not review the racketeering complaint. Doc. 1044 at 13.

This does not require excluding the limited opinion Mr. Goddard may give. It may, however, undermine the persuasiveness of his opinions that he took as true one set of disputed underlying facts or that he did not consider some facts. *See Hangarter*, 373 F.3d at 1022 n.14 ("Although Defendants during voir dire argued that [the plaintiff's expert witness]'s selection of documents to review went to the reliability of his 'methodology' as an expert, the district court correctly surmised that questions regarding the nature of [the expert]'s evidence went more to the 'weight' of his testimony—an issue properly explored during direct and cross-examination.").

### 2. Mr. Goddard will not be excluded because of bias

Thomas and Aubuchon further contend that Mr. Goddard's testimony is unreliable because he is biased. They summarize his alleged bias thus:

> His Attorney General's Office investigated Thomas and Aubuchon, and they investigated him and the Attorney General's Office. Aubuchon has sued him. He was a central player in the Dowling dispute, which also involved Stapley. He is a close personal friend of a central target of the underlying Court Tower Dispute. Goddard has also been a long time opponent of Thomas on several levels, and has made numerous efforts to bring Thomas down . . . .

For exclusion on this ground, Thomas and Aubuchon rely largely on *Johnston v. United States*, 597 F. Supp. 374 (D. Kan. 1984), and *Procter & Gamble Co. v. Haugen*, 184 F.R.D. 410 (D. Utah 1999). *See* Doc. 1087 at 9–10.

In *Haugen*, the defendant sought to disqualify the plaintiff's expert witness because the expert had previously "informally consulted" the defendant. 184 F.R.D. at 411, 413. After noting "[i]t should be a rare situation where such a result is imposed," *id.* at 413, the court inquired largely into the extent to which confidential information had passed between the defendant and the plaintiff's expert and rejected disqualification. *Id.* at 413–14.

In *Johnston*, the district court as the trier of fact "determine[d] which expert witnesses [were] more credible and trustworthy than others." 597 F. Supp. at 415. "The findings [were] unreliably assessed and professed by the most partisan, unfair sorts [the] Court ha[d] ever observed." *Id.* Though using some potentially misleading language, *see id.* at 410 (stating one expert's "testimony [was] stricken" and the other's was "ignore[d]"), the court rejected rather than excluded the relevant expert testimony. *Id.* at 411 ("[The] testimony must be seen as lacking in credibility due to this obvious bias.").

These and other cases do not overcome the "general rule" that "bias is not a permissible reason for the exclusion of expert testimony." *United States v. Thompson*, No. 05-50801, 2007 WL 2044725, at *2 (9th Cir. July 16, 2007) (citing *United States v. Abonce–Barrera*, 257 F.3d 959, 965 (9th Cir. 2001)). "Assessing the potential bias of an

- 14 -

1  expert witness, as distinguished from his or her specialized training or knowledge or the
2  validity of the scientific underpinning for the expert's opinion, is a task that is 'properly
3  left to the jury.'"  *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, No. 09-1758, 2010 WL
4  2898251, at *59 (1st Cir. July 26, 2010) (quoting *United States v. Carbone*, 798 F.2d 21,
5  25 (1st Cir. 1986)).  Mr. Goddard's alleged bias does not require exclusion of his
6  testimony.

7  IT THEREFORE ORDERED that Defendants' Joint Motion to Exclude Plaintiff
8  Expert Terry Goddard (Doc. 1044) is granted except that Mr. Goddard may testify to
9  prosecutors' usual investigative practices and ethical duties, and he may compare Thomas
10  and Aubuchon's investigation to them.  He may not offer any opinions regarding the
11  criminal prosecutions, and he may not refer to any prosecutorial standard of care, offer
12  legal conclusions, or testify about Defendants' states of mind.

13  Dated October 11, 2013.

_____
Neil V. Wake
United States District Judge