1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

9    Gary Donahoe, et al.,                      No. CV-10-02756-PHX-NVW

10                    Plaintiffs,               **CONSOLIDATED WITH:**

11   v.

12   Joseph M Arpaio, et al.,

13                    Defendants.
     _____
14   Donald T. Stapley, Jr., et al.,           No. CV-11-00902-PHX-NVW

15                    Plaintiffs,               **ORDER**

16   v.

17   Joseph M Arpaio, et al.,

18                    Defendants.

19

20          Before the Court is Plaintiff's Motion for Partial Summary Judgment Against

21   Andrew Thomas (Doc. 1028).  After Plaintiff Stapley filed his motion, this Court ordered

22   him to brief whether bar discipline proceedings could establish collateral estoppel in a

23   subsequent civil action (Doc. 1033).

24          Defendant Thomas was disbarred in part for his participation in investigating and

25   prosecuting Stapley.  Stapley asserts the disbarment order "conclusively establish[es] that

26   Thomas, in violation of 42 U.S.C. § 1983, retaliated against [him] for exercising his First

27   Amendment rights.  The Disbarment Order also establishes Thomas' liability on

28   Supervisor Stapley's § 1983 and state law claims for wrongful institution of civil

1    proceedings for his pursuit of the RICO Lawsuit."  Doc. 1028 at 2.  Stapley argues that

2    collateral estoppel precludes Thomas from relitigating the factual issues underlying these

3    claims and that summary judgment is warranted.

4          "Collateral estoppel, or issue preclusion, binds a party to a decision on an issue

5    litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was

6    actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity

7    and motive to litigate the issue, (3) a valid and final decision on the merits was entered,

8    (4) resolution of the issue was essential to the decision, and (5) there is common identity

9    of the parties."  *Campbell v. SZL Properties, Ltd.*, 204 Ariz. 221, 223, 62 P.3d 966, 968

10   (Ct. App. 2003).

11         Because Stapley was not a party to Thomas's disbarment proceeding and cannot

12   establish common identity, he relies on the doctrine of nonmutual offensive collateral

13   estoppel.  Doc. 1132 at 2.

14         There is some uncertainty as to whether Arizona law on nonmutual offensive

15   collateral estoppel is, in fact, uncertain.  *See Am. Family Mut. Ins. Co. v. Clancy*, 512 F.

16   App'x 674, 676 (9th Cir. 2013) (observing in dicta that "the law concerning offensive

17   collateral estoppel in Arizona is unsettled"); *Davis v. Metro Prods., Inc.*, 885 F.2d 515,

18   519 (9th Cir. 1989).

19         The anxiety is largely baseless.  The great weight of Arizona authority prohibits

20   private litigants from using the doctrine to seek affirmative relief.  *See Standage*

21   *Ventures, Inc. v. State*, 114 Ariz. 480, 484, 562 P.2d 360, 364 (1977) ("[A] party who is

22   not bound by the judgment of an earlier lawsuit cannot take the initiative to invoke the

23   judgment of the first suit, [i].e., rely on it offensively, to establish a necessary element of

24   his case in a latter suit against one of the parties involved in the first litigation."); *see also*

25   *Clancy*, 512 F. App'x at 676 (noting in dicta that *Standard Ventures, Inc.* is Arizona's

26   "final word on offensive collateral estoppel" and prohibits its use).

27         The Arizona Supreme Court has precluded a judge from relitigating findings

28   supporting an out-of-state misdemeanor conviction when the Commission on Judicial

1    Conduct subsequently commenced disciplinary proceedings against him.  *In the Matter of*

2    *Marquardt*, 161 Ariz. 206, 213, 778 P.2d 241, 248 (1989).  But "[j]udicial disciplinary

3    proceedings, like attorney disciplinary proceedings, are neither criminal nor civil, but are

4    *sui generis*," and the "the goal of judicial discipline is not to punish the judge but to

5    protect the public and the judiciary's integrity."  *Id.* at 214, 778 P.2d at 249.

6          *Marquardt* did not include a private litigant who relied on earlier findings to

7    establish affirmative relief.  Further, only one subsequent Arizona appellate decision has

8    referenced *Marquardt*'s application of collateral estoppel.  *See Picaso v. Tucson Unified*

9    *Sch. Dist.*, 214 Ariz. 462, 467, 154 P.3d 364, 369 (Ct. App. 2007) (determining that

10   *Marquardt* provided no guidance on whether guilty pleas should be given preclusive

11   effect), *vacated*, 217 Ariz. 178, 171 P.3d 1219 (2007).  Indeed, post-*Marquardt* cases

12   analyzing nonmutual collateral estoppel have not interpreted *Marquardt* to allow private

13   litigants to use it offensively.

14         To the contrary, the state court of appeals subsequently reaffirmed that Arizona

15   does not generally allow nonmutual offensive collateral estoppel.  *See Campbell*, 204

16   Ariz. at 223, 62 P.3d at 968 ("If the first four elements of collateral estoppel are present,

17   Arizona permits defensive, but not offensive use of the doctrine.").

18         Any existing confusion arises from *Wetzel v. Arizona State Real Estate Dep't*, 151

19   Ariz. 330, 727 P.2d 825 (Ct. App. 1986).  There, the court of appeals approved the state

20   Department of Real Estate's offensive use of factual matters established in a previous

21   disbarment hearing to revoke Manfred Wetzel's real estate license.  *Id.* at 332–33, 727

22   P.2d at 827–28.  The court noted that its decision "depart[ed] from prior case law," *id.* at

23   333, 727 P.2d at 828, but considered it "appropriate under the circumstances" presented.

24   *Id.* at 334, 727 P.2d at 829; *see also id.* at 333, 727 P.2d at 828 ("[T]he factual situation

25   here calls for approval of the offensive use of the doctrine.").

26         The circumstances in *Wetzel*, however, involved one public licensing proceeding

27   benefiting from the factual findings underlying another, in which both sought to protect

28   the public from Wetzel's dishonesty, *cf. id.* at 332, 727 P.2d at 827, and in which the

1   "procedural safeguards [were] comparable . . . ."  *Id.* at 334, 727 P.2d at 829.  Indeed,

2   narrowly read, the court of appeals need not have invoked *nonmutual* collateral estoppel

3   at all, given the commonality of interest between the two state agencies.  *Wetzel*, like

4   *Marquardt*, involved particular circumstances in which there was no risk of windfall to a

5   private litigant.

6           Thus, to the extent *Wetzel* endorsed the broader proposition that nonmutual

7   offensive collateral estoppel applies generally—rather than specifically between state

8   disciplinary agencies—it is dictum that contradicts the weight of Arizona authority.

9           Ultimately, there is no factually similar authority for allowing nonmutual

10  offensive collateral estoppel where private litigants seek affirmative recovery.  Even if

11  the Court were to accept the premise that there is no controlling Arizona case law,

12  however, weighty policy considerations militate against such an aggressive expansion of

13  collateral estoppel.  Attorney disciplinary proceedings are intended to protect the public.

14  Giving those proceedings preclusive effect in subsequent litigation would significantly

15  burden the bar disciplinary process.  The state must be free to protect the community

16  unencumbered by collateral monetary windfalls for third parties.

17          IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary

18  Judgment Against Andrew Thomas (Doc. 1028) is denied.

19          Dated this 24th day of October, 2013.

20

21

22  _____

23          Neil V. Wake
        United States District Judge

24

25

26

27

28